UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LINDA LAROCQUE,<br><br>                        Plaintiff,<br><br>v.<br><br>THE KROGER CO., a foreign corporation doing business in Washington state; and, FRED MEYER STORES, INC., a foreign corporation doing business in Washington state, a/k/a TACOMA-STEVENS FRED MEYER; GATEKEEPER SYSTEMS, INC., a foreign corporation doing business in Washington state<br><br>                        Defendants. | NO. 3:25-cv-05380<br><br>PLAINTIFF LINDA LAROCQUE'S OPPOSITION TO DEFENDANTS THE KROGER CO. AND FRED MEYER STORES, INC.'S MOTION FOR SUMMARY JUDGMENT<br><br>ORAL ARGUMENT REQUESTED<br><br>NOTED: MAY 4, 2026 |

## I.    INTRODUCTION

On May 6, 2023, Plaintiff Linda LaRocque and her husband visited the Tacoma-Stevens Fred Meyer store ("the Store") to purchase a magnesium supplement. Ms. LaRocque, who had recently undergone knee surgery, was pushing a shopping cart. The cart bore no warning that it could automatically lock at the exit. After determining the Store did not have magnesium supplement, the LaRocques proceeded to exit. As Ms. LaRocque exited, the cart suddenly and without warning locked, causing her to strike

PLTF'S OPP TO FRED MEYER DEFS' MSJ - 1 of 28
[4871-5472-8598]

her recently operated knee against the back of the cart and sustain significant injury.

Unbeknownst to Ms. LaRocque, the Store's carts were equipped with an anti-theft locking system designed to engage at the exits if customers do not follow a "correct" path. That path, however, is not disclosed or visible to customers. Ms. LaRocque was exiting with an empty cart—a circumstance that frequently triggers the locking mechanism, as customers reasonably do not anticipate that a theft-prevention device will activate when nothing is being removed from the store. In fact, Gatekeeper systems, the manufacturer, has developed technology called SmartExit to prevent what are called empty-cart activations, but that safer (and more expensive) option was not implemented at the Store. Empty cart activations mimic the scenario of a thief loading up a cart and attempting to exit the store without passing through the checkout register.

In its motion, Fred Meyer contends that the locking mechanism does not present a dangerous condition and that Ms. LaRocque cannot establish notice because there are no prior complaints involving "intended" activations. That argument misstates both the record and the law.[1]

Even under a limited discovery scope, restricted to Washington incidents from 2020 to the present and only Fred Meyer stores, not all Kroger Stores, Fred Meyer produced 70 reports of shopping cart-related injuries, the majority occurring at store exits. The pre-incident reports establish that Fred Meyer had actual knowledge of the dangerous condition posed by its cart-locking system. *See Davis v. Globe Mach. Mfg. Co., Inc.*, 684 P.2d 692, 698 (Wash. 1984) (evidence of similar prior accidents is admissible to show a

---

[1] Notably, Fred Meyer filed its motion on March 11, 2026, one week after the Court ordered Fred Meyer to produce Washington incident reports by March 18, 2026. (ECF No. 54). Ultimately, on March 18 (after its motion was filed), Fred Meyer produced 70 incident reports involving injuries caused by the locking mechanism at Washington Fred Meyer stores. Accordingly, Fred Meyer's position taken in its motion was undermined by the wrongfully withheld incident reports. At a minimum, the reports demonstrate that a genuine issues of material fact concerning knowledge a dangerous condition precludes summary judgment.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

dangerous condition and notice where the accidents are substantially similar). As such, Fred Meyer's argument concerning the system operating as intended ignores that a system can function as designed *and* still be unreasonably dangerous.

Here, the overwhelming evidence establishes the Store's wheel locking system was unreasonably dangerous. *See* Restatement (Second) of Torts § 343 (1965) (describing a "dangerous condition" as one that "involves an unreasonable risk of harm."); *see also Wardhaugh v. Weisfield's Inc.*, 264 P.2d 870, 873-74 (Wash. 1953) (holding that a ramp which functioned as intended was a dangerous condition because shoppers might fail to notice the ramp that was the same color as the surrounding floor).

The reports themselves are striking given how many customers required medical attention after unexpectedly being injured when exiting Fred Meyer stores, particularly when one realizes that Fred Meyer did *nothing* to address this dangerous condition:

- August 14, 2021: "pushing small cart back when it locked, hit customer in shin… tore skin and began to bleed."
- August 3, 2022: "As I passed into the door way the cart locked up. I was thrown against the cart by my walking momentum. I slammed into the handle bar twisting my back throwing my head forward… I will need to go to a doctor tomorrow as it is late."
- August 13, 2022: "with the new cart lock system, as she walked out the door, the cart locked and hit her in the left ankle."
- December 31, 2022: "ALE side entrance. Pushed the cart. Cart locked up and twisted a bit, leg rammed into it."
- February 6, 2023: "Walking out the store, basket locked on me don't know why. I tried to force it back pain [and] left ankle pain."

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

- February 12, 2023: "Cart locked up" at "garden door / entrance – exit" and "daughter hit her knee on something and her mouth on cart."

- April 28, 2023: "Cart locked on me going out of store... When cart locked it jarred my shoulder that I had previously injured. Lady said it was to prevent theft. Seriously?"

- May 4, 2023: "Main door – leaving store – cart locked up – forcing my body to slam against the front cart – my right knee slammed causing the cart to tip on the side... My right knee immediately swelled up causing immediate pain, bruising and swelling. I went to walk-in clinic Sat., May 6th"

- May 5, 2023: cart locked at store exit, injuring customer's shoulder.

(Declaration of Robert C. Wilke in Support of Ms. LaRocque's Opp. to MSJ, "Wilke Decl.," Ex. 9, Fred Meyer Washington Incident Reports).

Because, at a minimum, genuine disputes of material fact exist as to both the dangerousness of the condition and Defendants' notice, Fred Meyer's motion for summary judgment should be denied. Alternatively, even if the Court were to find the hazard open and obvious, material questions of fact remain regarding the adequacy and effectiveness of any warnings. For that independent reason as well, Fred Meyer is not entitled to summary judgment.

## II. BACKGROUND

### A. Ms. LaRocque Was Injured When a Fred Meyer Shopping Cart Abruptly Locked After She Attempted to Exit the Store Without Purchasing Any Items

On May 6, 2023, Plaintiff Linda LaRocque and her husband went shopping at Tacoma-Stevens Fred Meyer to purchase a magnesium supplement. (Wilke Decl., Ex. 1, LaRocque Dep. at 48:11-24). Ms. LaRocque used one of the Fred Meyer shopping carts while shopping. (*Id.*). The cart did not contain any warning about potentially locking at the

PLTF'S OPP TO FRED MEYER DEFS' MSJ - 4 of 28
[4871-5472-8598]

exit. (*Id.* at 56:7-16, 58:14-24). After discovering Fred Meyer did not have that supplement, she proceeded to exit the store without making a purchase. (*Id.* at 48:20-24). Unbeknownst to Ms. LaRocque, the anti-theft locking mechanism installed on Fred Meyer's shopping carts had been programmed to activate at the exit unless a cart first passes through the checkout area. (Wilke Decl., Ex. 5, Kroger and Fred Meyer 30(b)(6) dep. at 146:16-147:1).

As Ms. LaRocque exited the store, the empty cart's anti-theft locking mechanism abruptly and unexpectedly engaged. (Wilke Decl., Ex. 1. at 51:13 – 54:17; 55:6 – 56:16). The sudden stop caused Ms. LaRocque's knee—on which surgery had been performed only months earlier—to collide with the cart. (*Id.* at 50:24 – 54:17). It is undisputed the impact displaced Ms. LaRocque's patella, necessitating two additional surgeries.

Fred Meyer did not create an incident report following Ms. LaRocque's injury. (Wilke Decl., Ex. 5 at 66:22 – 67:7). A Fred Meyer store employee unlocked the cart and told Ms. LaRocque that "this happens a couple times a day." (*Id.* at 52:4-24). The employee did not report the injury or create an incident report, and no contemporaneous incident report was produced in discovery. (Wilke Decl., Ex. 1 at 55:6 -11; Ex. 5 at 66:22-25).

B. **The Wheel Locking Warning Signs Are Missing from Some Carts and the Warning Signs Affixed to the Sliding Doors Are Obstructed**

There are two types of warning signs related to the anti-theft locking mechanism at the Tacoma Stevens Fred Meyer. The first are affixed to the sliding glass entrance/exit doors and state:

> Attention Shoppers! Shopping cart wheels may lock unexpectedly if removed from the store. Shopping cart wheels will lock if taken beyond parking lot.

The asset warning sign affixed to the sliding door is almost completely obscured when the doors are open for customers to enter or exit. (Wilke Decl., Ex. 7, Fred Meyer's Responses to Requests for Admission Nos. 1, 2).

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

Meanwhile, the warning sign affixed to *some* of the carts states:

> Shopping Carts may stop unexpectedly at exit doors and carts will stop if taken beyond the perimeter of the parking lot. !WARNING! **Asset Protection Device Installed.**

(Emphasis added). As such, the carts indicate that it is an asset protection device, which presumptively would only activate when assets, like merchandise, are in a cart.

As discussed below, Fred Meyer has no knowledge of whether a warning sign was affixed to the shopping cart Ms. LaRocque used. A site visit to Fred Meyer also confirmed that some of the shopping carts with the anti-theft system installed are missing warning signs. (*See* Declaration of Levi Dixon).[2]

## C. Between 2020 and February 2026, There Were 70 Reported Incidents of Customers Injured by the Anti-Theft Locking System at Fred Meyer Stores in Washington

During discovery, Ms. LaRocque requested all incident reports relating to injuries caused by the anti-theft cart locking mechanism at Fred Meyer Washington stores since 2020. In response, Fred Meyer produced 70 incident reports documenting *reported* injuries caused by the mechanism. These reports show that customers have suffered a wide range of injuries when the cart wheels suddenly lock, such as bruised and swollen shins and knees; bloodied nose; sprained wrists; a cracked rib; injuries to neck, back, and shoulder areas; the inability to lift an injured arm; and aggravations of preexisting injuries. (Wilke Decl., Ex. 9). Notably, vulnerable populations such as young children sitting in the carts, pregnant women, people with preexisting injuries, or elderly individuals seem to be more severely injured. (*Id.*). Significantly, nearly one-third of the injured customers who completed incident reports indicated they either received medical treatment or intended

---

[2] Ms. LaRocque deposed the store security guard on April 21, 2026, the day before this response was due. The security guard testified he found a pile of removed cart warning signs in the parking lot and notified the assistant store manager. Wilke Decl. at ¶ 15.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

to seek medical care as a result of their injuries caused by the cart locking up. (*Id.*).

Throughout the incident reports, customers frequently describe the locking mechanism as activating "unexpectedly." (Wilke Decl., Ex. 9). In many of the Incident Reports, injured customers report that the shopping carts did not have any warning signs affixed. (*Id.*).

Notably, the incident reports capture only those injuries that are reported to Fred Meyer store managers and documented in accordance with company policy. Incidents like Ms. LaRocque's therefore go unreported. (Wilke Decl., Ex. 5 at 72:5-24). Meanwhile, the incident reports capture injuries only at Fred Meyer—not other Kroger stores. (Wilke Decl., Ex. 9).

### D. Plaintiff's Human Factors Expert's Conclusions

Ms. LaRocque's human factors expert Levi Dixon, who inspected the Store, observed and documented that a number of shopping carts with the locking system installed did not have warning signs affixed. (*See* Declaration of Levi Dixon and attached report). Mr. Dixon also observed that the warning signs affixed to the sliding glass entrance/exit doors were completely or partially obscured when the doors were open. (*Id.*). Fred Meyer admits that the warning signage on the automatic doors is obstructed when the doors are open and that there are no other warning signs affixed to entrances.(Wilke Decl., Ex. 7, RFA responses; *see also* Ex. 2, photographs).

Even if visible, Mr. Dixon concludes that the obstructed signage would be insufficient to warn customers because the sign only states that shopping cart wheels *may* lock unexpectedly if removed from the store and that shopping cart wheels will lock if the cart is taken beyond the parking lot. (Declaration of Levi Dixon, Report at p. 9). However, nothing explains to customers that in order to deactivate the anti-theft locking mechanism

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

to leave the store safely, the cart must first pass through the checkout area.

Mr. Dixon concluded that,

> [T]he sudden and abrupt locking of the subject cart wheel(s) created a hazard that put customers like Ms. LaRocque at risk of harm due to striking and/or coming into the shopping cart. . . . . the Defendants knew and/or should have known that the overall locking system posed a risk of harm to customers, but the safety measures implemented to attempt to reduce the risk of harm it posed were unreliable.

(*Id.* at p. 4).

### E.    Fred Meyer's Bad Faith Conduct at its 30(b)(6) Deposition

Fred Meyer and Kroger's 30(b)(6) designee was unprepared to testify about over half of the 30(b)(6) deposition topics. (Wilke Decl., Ex. 5, 30(b)(6) dep at 26:7 - 47:22).

At about 25 minutes into the 30(b)(6) deposition, Fred Meyer Defendants' counsel insisted on taking a break to speak with the deponent despite a pending question and pending series of questions related to the designee's preparedness to testify about the deposition topics. (*Id.* at 26:17–32:3). Despite objection, Fred Meyer's counsel instructed the designee to turn off his camera and microphone so she could consult with the designee. (*Id.*). Ms. LaRocque's counsel made a record of the obstruction. (*Id.*). The only thing that the 30(b)(6) deponent did to prepare for the deposition was to speak with his counsel. (*See* Wilke Decl., Ex. 5).

Fred Meyer's counsel engaged in this same interference twice, forcing a break in the deposition despite a pending question. (*Id.* at 67:13-70:24). The designee confirmed that his counsel spoke with him following counsel's interference. (*Id.* at 71:17-23).

Fred Meyer Defendants testified that it has warning signs related to the anti-theft system because Fred Meyer wants its customer "to know if there is going to be an inconvenience in their – at the end of their shopping experience with the cart stopping." (*Id.* at 51:20 – 52:6). Fred Meyer testified it did not know if the warning signs exist to warn

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

customers to avoid potential harm to the customer. (*Id.* at 52:12-15). The designee testified he "does not think" the warning signs are designed to prevent customers from being injured. (*Id.* at 53:2-54:1). .

Fred Meyer Defendants testified that Fred Meyer did not know if the warning signs on the door were blocked from visibility or not. (*Id.* at 56:10-21). Fred Meyer also testified it did not know if Fred Meyer ever replaced lost, missing, or damaged warning signs that are affixed to carts. (*Id.* at 66:15-21; 175:7-11).

Fred Meyer Defendants' designee testified that Fred Meyer has no knowledge of when it first learned Ms. LaRocque was injured. (*Id.* at 66:22-25). Fred Meyer testified it did not know if Fred Meyer took any steps to identify the actual shopping cart that injured Ms. LaRocque following the incident. (*Id.* at 73:20-74:5). Fred Meyer does not know which specific shopping cart injured Ms. LaRocque and, importantly, whether that shopping cart had a warning sign affixed or not. (*Id.* at 74:6-75:2; 157:13 – 158:20).

The designee testified that Fred Meyer Defendants do not know whether the security guard working on the date of Ms. LaRocque's incident notified any Fred Meyer employee or manager that Ms. LaRocque was injured. (*Id.* at 75:10 – 77:10). The designee testified that he failed to speak with any manager or employee working on the date of Ms. LaRocque's incident. (*Id.* at 152:10-23). The designee also testified he did not speak with the security guard who was working on the date of the incident. (*Id.* at 158:21 – 159:14).

The designee testified that any customer can use a shopping cart, there is no policy on who may use a shopping cart. (*Id.* at 78:8-15). The designee also testified that its appropriate for a Fred Meyer customer to enter the store and exit the store without purchasing anything. (*Id.* at 146:20-147:1). The designee testified that the Tacoma

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

Stevens store has a mix of regular shopping carts and some with the anti-theft locking mechanism. (*Id.* at 63:2–24).

Ms. LaRocque asked the designee about the 70 incident reports Fred Meyer produced in discovery detailing incidents in which customers were injured by the anti-theft wheel locking system. (*Id.* at 78:25 - 141:2). The designee had not reviewed any of the incident reports prior to the deposition or spoken with anyone about any specific incident. (*Id.*). The designee could not dispute that the incident reports contain accurate and truthful information. (*Id.*).  The designee also could not identify any actions Fred Meyer Defendants took in response to customers being injured by the anti-theft wheel locking mechanism. (*Id.*).

**F.      Gatekeeper Testified it Offers a Product that Prevents Empty Cart Scenario Activations**

Gatekeeper testified it provided the cart warning placards and the warning signs affixed to the Store's sliding glass doors. (Wilke Decl., Ex. 3 at 23:24 – 24:8). Gatekeeper confirmed it manufactures several systems, including one system that only locks shopping cart wheels that are taken beyond a store parking lot and a system where wheels lock when a cart has not gone through the checkout stand and made a purchase, called the Purchek system. (*Id.* at 25:15 – 26:18). The Purchek system is installed at the Store. (*Id.* at 36:15-20).

Gatekeeper also installed its Video Classification product at the Store. (*Id.* at 56:24-57:3). Video Classification video records every activation of the wheel locks, and categorizes the wheel lock event as a pushout—an attempted theft—or an empty cart scenario. (*Id.* at 26:22-28:25; 42:21-43:13; 58:17-59:6). Gatekeeper confirmed it and Fred Meyer possess data regarding the percentage of cart activations that do not involve attempted theft. (*Id.* at 64:25- 66:6).

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

Notably, Gatekeeper testified it offers a product called SmartExit to customers with the Purchek system that will prevent carts from activating when a customer like Ms. LaRocque attempts to exit the store with an empty cart, a scenario that mimics an attempted theft because the cart does not travel the pathway through the checkout register. (*Id.* at 32:13-36:9; 55:21-25;). Gatekeeper testified the empty cart scenario is the "same pattern as a pushout. So the system sees it as that." (*Id.* at 34:15-18). Gatekeeper testified it offered SmartExit to "stop empty carts from locking." (*Id.* at 55:21-25).

Gatekeeper testified that Kroger has adopted the SmartExit at some of its stores, but at none of its Fred Meyer stores. (*Id.* at 32:13-36:9).

Gatekeeper testified that it offers replacement warning placards for warning signs that are no longer affixed to a cart due to damage or vandalism, but it had no record of the Store ordering a single replacement warning placard since the system was installed in 2017. (*Id.* at 46:2 -48:7; 61:18 – 62:20; 70:2-23). Gatekeeper testified it has no records of the Store requesting a single service work order from Gatekeeper related to maintaining or repairing the wheel locking device or warning signs related to shopping carts. (*Id.* at 67:20-68:15).

**G. Gatekeeper's Public Statements and Videos Confirm its SafeExit Product Was Available in 2022, and that Activated Carts Stop Suddenly**

Gatekeeper maintains a YouTube channel where it posts content related to its anti-theft products. Despite claims that when the anti-theft mechanism activates the carts do not suddenly stop, videos posted by Gatekeeper of the carts activating demonstrate that when the wheels lock the carts abruptly and suddenly stop and cannot be moved forward. (Wilke Decl., Ex. 11, Gatekeeper Video; *see also* Notice of Physical Filing). Gatekeeper testified its YouTube videos are "factual." (Wilke Decl., Ex. 3 at 22:6-23:3).

Moreover, Gatekeeper was aware that the empty cart scenario, in which a legitimate

PLTF'S OPP TO FRED MEYER DEFS' MSJ - 11 of 28
[4871-5472-8598]

customer attempts to leave the store without placing anything in their cart, was problematic because that scenario mimicked a cart push-out scenario and accounted for over half of cart activations. (Wilke Decl., Ex 10, May 6, 2022 Gatekeeper Video, *see* Notice of Physical Filing). As early as 2022, Gatekeeper provided a product called SmartExit that identifies empty carts and prevents the anti-theft activating when customers with empty carts exit the store. (*Id.*; Wilke Decl., Ex. 3 at 32:13-34:24).

Gatekeeper testified Kroger only recently purchased SmartExit and is implementing it at a handful of stores despite its earlier availability. (Wilke Decl., Ex. 3 at 35:3-24).

Ms. LaRocque learned for the first time at Gatekeeper's 30(b)(6) deposition that the Store purchased Gatekeeper's Video Classification System and installed it in 2019. (*Id.* at 56: 24-57:3). The Video Classification System video records every anti-theft cart activation which Gatekeeper then reviews and classifies as a push-out event or an empty cart activation (*Id.* at 26:22 - 28:16).

Neither Fred Meyer nor Gatekeeper provided this information in discovery. (Wilke Decl., Ex. Nos. 12, 13, emails to counsel). On April 15, 2026, Ms. LaRocque asked Gatekeeper to produce its Video Classification Logs identifying Ms. LaRocque's incident as an empty cart activation, as well as work orders related to the sale and installation of the Video Classification System, both of which are responsive to Ms. LaRocque's first discovery requests to Gatekeeper. (*Id.*).

On April 17, Ms. LaRocque asked Fred Meyer for a discovery conference to discuss why Fred Meyer had not produced any of the Video Classification wheel event logs despite being responsive to numerous requests; Fred Meyer's counsel responded it was not available for a conference until after the deadline for Ms. LaRocque to respond to the present motion. (Wilke Decl., Ex. 12).

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

Fred Meyer has not produced any Video Classification wheel event logs. Gatekeeper nevertheless reports that a significant percentage of anti-theft cart activations involve empty carts. (Wilke Decl. ¶ 13; Wilke Decl., Ex. 10, Gatekeeper Video Re: SmartExit.) Accordingly, customers are exposed to sudden and unexpected cart lockups despite having no items in their carts, creating an unreasonably dangerous condition.

## III. ARGUMENT

**A. Summary Judgment is Not Appropriate When There is Evidence the Wheel Locking System Presents an Unreasonable Risk of Harm to Customers, Fred Meyer Knew a Significant Number Customers Were Injured By the System, the Warning Signs Are Missing and Are Inadequate, and Fred Meyer Failed to Take Reasonable Steps to Protect Its Customers from the Empty Cart Activation Scenario**

Summary judgment is appropriate only when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. When evaluating a motion for summary judgment, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc*, 477 US 242 (1986).

In a premises liability action involving a business invitee, a property owner generally owes an affirmative duty to use ordinary care to keep the premises in a reasonably safe condition. *Tincani v. Inland Empire Zoological Soc'y*. 875 P.2d 621 (Wash. 1994). The duty to exercise reasonable care to protect invitees from harm is triggered upon the invitee's showing that the property owner had actual or constructive knowledge of the hazardous condition. *O'Donnell v. Zupan Enters., Inc.,* 28 P.3d 799 (Wash. Ct. App. 2001), *review denied,* 28 P.3d 799 (Wash. 2002).

Fred Meyer makes several arguments based on misrepresentations of the facts in this case and of the body of case law governing premises liability. Specifically, Fred Meyer argues that the wheel locking device is not a dangerous condition, and even if it were, it

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

had no actual or constructive notice of the dangerous condition. As discussed below, Washington authority supports the sheer number of customers injured by the wheel locking system is sufficient evidence to support the device is a dangerous condition. Fred Meyer's argument that it did not have actual or constructive notice of the danger presented by the wheel locking is disingenuous, particularly when Fred Meyer produced 70 incident reports but only *after* it had filed its motion for summary judgment and was ordered to produce those incident reports by this Court.

The pre-incident reports[3] establish that Fred Meyer had actual knowledge of the dangerous condition posed by its cart-locking system. *See Davis,* 684 P.2d at 698 (citing *Blood v. Allied Stores Corp.*, P.2d 742 (Wash. 1963)) (evidence of similar prior accidents is admissible to show a dangerous condition and notice where the accidents are substantially similar)). Fred Meyer simply ignores that a system can function as designed *and* still be unreasonably dangerous. *See* Restatement (Second) of Torts § 343 (1965) (describing a "dangerous condition" as one that "involves an unreasonable risk of harm."); *see also Wardhaugh v. Weisfield's Inc.*, 264 P.2d 870, 873 (Wash. 1953) (holding that a ramp which functioned as intended was a dangerous condition because shoppers might fail to notice the ramp that was the same color as the surrounding floor).

Even where there is no evidence of actual or constructive notice, Washington recognizes plaintiff need not prove actual or constructive notice if the nature of the business and its methods of operation make the existence of a hazardous condition reasonably foreseeable. *Pimentel v. Roundup Co.,* 666 P.2d 888, 893 (Wash. 1983); *see*

---

[3] Several incident reports dated before Ms. LaRocque's incident confirm the cart activations were due to an empty cart scenario. *See* Wilke Decl., Ex. 9, Bates Nos. 00367-372; 00463-467. If Fred Meyer had faithfully responded to Ms. LaRocque's discovery requests and produced the Video Classification wheel event logs when responses were due, the Court would be apprised of the total number of wheel activation events at the Store that were empty cart scenarios.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

also *Galassi,* 565 P.3d 116. Here, the  nature of the use of the shopping carts equipped with the wheel locking device—where customers simply take a cart provided by the store near the entrance and carts will lock if the customer does not travel through the checkout area—is such that the harm is reasonably foreseeable even without notice.

Lastly, Fred Meyer's argument that the danger presented by the wheel locking system is known and obvious due to warning signs also fails, but a finding that a condition is known or obvious does not automatically preclude liability. *Goodman v. Staples The Office Superstore, LLC,* 644 F.3d 817, 822–23 (9th Cir. 2011) ("'[I]f the proprietor should anticipate the harm from the condition despite its obviousness, he may be liable for physical injury caused by that condition. (internal citation omitted).  'If the business owner has reason to expect harm to the invitee because, for example, the invitee is likely to be distracted, then duty may require him to warn the invitee or take other steps to protect him.' (internal citation omitted) (citing Restatement (Second) of Torts § 343A, comment f (1965)).

Here, even if a Fred Meyer customer sees one of the warning signs, the warning signs do not warn the customer the cart will lock suddenly if the cart does not travel through the pathway to the checkout. The signs affixed to the cart suggest the carts will only lock if there are assets or store merchandise inside the cart, not if the cart is empty. The warning signs do not provide sufficient information to warn the customer that the cart will lock if they do not purchase an item or go through the checkout register.

As such, summary judgment should be denied

**B.      The Anti-Theft Locking System Constitutes a Dangerous Condition that Posed an Unreasonable Risk of Harm**

Shopping carts equipped with anti-theft locking mechanisms that activate when customers cross an invisible barrier constitute a dangerous condition. *See Kellett v.*

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

*Assembled Products Corp.*, C12-622 RAJ, 2013 WL 3242526, at *3 (W.D. Wash. June 25, 2013) (concluding Albertson's had a duty to protect its customers from dangers presented by shopping carts because a "shopping cart owned and furnished by [Albertson's] for public use constitutes a 'condition on the land' giving rise to the existence of a duty of keeping premises reasonably safe.")

Fred Meyer's own incident reports confirm numerous injuries caused by carts locking as customers pass through the exit area. (Wilke Decl., Ex. 9.) Such evidence is admissible to show a dangerous condition where the prior incidents are substantially similar. *See Davis*, 684 P.2d at 698 ("[e]vidence of other accidents may be admissible to establish a dangerous condition… where there are substantial similarities between the prior accidents and the accident in issue"); *Turner v. City of Tacoma,* 435 P.2d 927, 931 (Wash. 1967) ("Evidence of prior accidents under substantially similar circumstances should, however, be admitted for the purpose of proving that the existence of the fire escape constituted a dangerous condition.") Here, repeated incidents in the same location—many involving leg injuries like Ms. LaRocque's—underscore that the carts present a dangerous condition to customers exiting Fred Meyer stores.

Fred Meyer's position is further undermined by its own warning signs. Installing warnings about the system is itself evidence that the mechanism poses a risk to customers, particularly when the warning signs are supposed to be on both the carts and the door to the store.

The human-factors evidence points the same way. Ms. LaRocque's expert, Levi Dixon, explains that customers reasonably expect a shopping cart to roll freely toward the exit. (*See* Dixon Decl.). They do not anticipate an abrupt stop without warning. Fred Meyer's incident reports confirm this expectation: they repeatedly describe carts "unexpectedly"

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

locking at the exit. (Wilke Decl., Ex. 9.) As Dixon explains, programming a cart to lock suddenly at the exit transforms an ordinary cart into a nonobvious hazard. (*See* Dixon Decl.).

Fred Meyer's contrary argument that the anti-theft locking is not a dangerous condition because it was working exactly as intended and without malfunction fails. (Dkt. No. 59 at 5.) Fred Meyer cites a smattering of out-of-state authority to support its misguided arguments. However, when the cases that Fred Meyer cites are scrutinized they demonstrate that Fred Meyer's summation of the law is wrong:

First, Fred Meyer argues that *Cox v. Wal-Mart Stores, East, L.P.*, 755 F.3d 231 (1st Cir. 2014) supports that "the court held that features such as thresholds, curbs, and steps are not unreasonably dangerous because they are conditions that customers normally expect to encounter... [and] that such conditions are not hazardous as a matter of law unless there is evidence of a defect or unusual danger." But the case does not say this. Instead, it says the opposite, "We conclude that the district court erred in extending Mississippi's so-called 'categorical exemption' to defective thresholds." Moreover, the case actually supports Ms. LaRocque's position, "[t]he fact that the alleged defective condition changed suddenly and without warning-unlike cracked or uneven concrete, or visible changes in texture and elevation-is sufficient for a reasonable jury to conclude that it creates an unreasonable or unusually dangerous condition." *Id.* at 235.

In another misapprehension or blatant misrepresentation of authority, Fred Meyer cites *Oberstein v. Mayfair Super Markets, Inc.*, 298 A.D.2d 446, 748 N.Y.S.2d 271 (N.Y. App. Div. 2002), falsely stating that a "federal court" held "that a shopping cart, without evidence of a defect, is not unreasonably dangerous as a matter of law." First, this decision was a New York state decision, not a federal case. Second, and more importantly, the two

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

paragraph slip opinion Fred Meyer cites confirms that the case involved a "shopping cart railing" upon which the plaintiff's foot became entangled. *Id.* The decision does not stand for the proposition that a shopping cart is not an unreasonably dangerous condition as a matter of law because it is talking about a railing. Furthermore, Ms. LaRocque's claims are based on the wheel locking system attached to the shopping cart, not just the cart itself.

In another apparent misrepresentation, Fred Meyer incorrectly cites to *Wiltse v. Albertson's Inc.*, 805 P.2d 793 (Wash. 1991) for the proposition that usual, expected, or ordinary features of a property, "such as a shopping cart", are not unreasonably dangerous as a matter of law. (Mot. at 5). *Wiltse* involved a self-service grocery store where a customer fell in water that came from a hole in the roof of the defendant's store. At issue was whether the trial court erred in instructing the jury that the plaintiff had the burden of proving actual or constructive notice of the water existing at defendants' grocery store. *Id.* The Washington Supreme Court upheld the trial court's instruction, and noted that there "was no evidence that the leak in the roof was a result of Albertson's negligence nor that it came from the self-service operation of Albertson's." *Id.* at 794. The Court held that they "will not abandon principles of negligence and make 'self service' stores liable whether they were aware or should have been aware of a dangerous condition." *Id.* The case does not stand for the proposition that shopping carts equipped with wheel-locking systems are ordinary features of a premises that are not unreasonably dangerous as a matter of law. To the contrary, the majority does not analyze shopping carts at all. The only reference appears in the dissent, which uses a shopping cart in a hypothetical to illustrate that a customer may be distracted while navigating a store while pushing a cart and thus the totality of circumstances must be viewed in determining whether a dangerous condition exists. *Id.* at 799.

In another attempt to support its misguided arguments, Fred Meyer cites to *Tinder*

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

*v. Nordstrom, Inc.*, 929 P.2d 1209 (Wash. Ct. App. 1997) for its position that it cannot be held liable "without evidence of a defect or negligent conduct." (Mot. at p. 9). First, *Tinder* is a common carrier negligence case in which the plaintiff relied on *res ipsa loquitur* as her method of proof of Nordstrom's negligence arising out of the alleged malfunction Nordstrom's escalator. *Id.* The Court of Appeals held that there was insufficient evidence of negligence presented by the plaintiff because the mere occurrence of an accident does not necessarily infer negligence. *Id.* at 1212. Ms. LaRocque is not asserting claims of negligence based on *res ipsa loquitur*, nor is she asserting Fred Meyer owed her duties as a common carrier.

Here, Ms. LaRocque's claims are based on the wheel locking system, which can suddenly and unexpectedly lock when a customer is not stealing merchandise and simply attempting to exit the store with an empty cart. Given the significant number of customers injured by the wheel locking system, many of whom were injured when attempting to exit a Fred Meyer store with an empty cart, sufficient evidence exists from which a jury could determine the wheel locking system is an unreasonable dangerous condition. Fred Meyer's motion should be denied.

C. **Fred Meyer Had Actual Notice of the Dangerous Condition Caused by the Wheel Locking System**

A property owner has a duty to protect invitees from dangerous conditions that the owner knows about or should know about through the exercise of reasonable care. *Galassi*, 565 P.3d 116. Notice can be actual or constructive. *Id.* Here, the evidence demonstrates that Fred Meyer had both actual and constructive notice that its anti-theft locking system was causing injuries to customers.

Fred Meyer had actual notice of the dangerous condition created by the anti-theft locking system as demonstrated by the 70 incident reports documenting injuries caused

PLTF'S OPP TO FRED MEYER DEFS' MSJ - 19 of 28
[4871-5472-8598]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

by the anti-theft locking system at its Washington stores since 2020. Twenty of these reports were prepared prior to Ms. Larocque's injuries. (Wilke Decl., Ex. 9). These reports describe numerous instances when shopping carts suddenly locked as customers approached or passed through the exit area and document that warning signs did not exist on the shopping cart. (*Id.*).

The injuries documented in these reports were not minor or trivial. (Wilke Decl., Ex. 9). Customers reported injuries such as bruised and swollen knees and shins, sprained wrists, cracked ribs, immobility in neck/shoulder, aggravation of preexisting injuries, inability to lift an arm, and other injuries requiring medical treatment. Nearly one-third of the customers who submitted incident reports indicated that they either received or intended to seek medical care. (*Id.*).

These incident reports demonstrate that Fred Meyer had actual notice of the dangerous condition because incident reporters repeatedly alerted Fred Meyer to the dangers posed by its anti-theft wheel locking system. Each incident report provided Fred Meyer with an opportunity to evaluate whether the system posed a risk to customers and whether changes to the system's design, programming, or warning signage were necessary. Despite these reported incidents, Fred Meyer consciously chose to operate the same system without implementing adequate safeguards to prevent future injuries, such as installing the SmartExit system that would avoid the empty cart scenario. .

At a minimum, the incident reports establish that Fred Meyer had constructive notice that the system posed a risk of injury. When numerous customers report that carts unexpectedly lock near store exits and cause injuries, reasonable care requires a store owner to investigate the cause of those incidents and take steps to reduce the risk of harm to invitees. Moreover, the Tacoma Stevens location purchased the Video Classification

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

System video in which Gatekeeper reviews and classifies every activation as a push-out event or an empty cart activation (Wilke Decl., Ex. 3 at 26:2 – 28:16; 56:24 – 57:3). This specific Fred Meyer is aware of how many cart activations are caused by blameless customers who leave the store with an empty cart, and yet failed to purchase the product, SmartExit that would prevent subjecting these customers to the dangers posed by an empty cart activation. (*Id.*).

Even if Fred Meyer did not have actual or constructive notice, under Washington law, a plaintiff may establish liability without proving evidence of actual or constructive notice when the defendant's methods of operation make the unsafe condition reasonably foreseeable. In *Galassi*, the Washington Supreme Court recently reaffirmed this principle, explaining that a plaintiff may establish notice by showing that "the nature of the proprietor's business and its methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable." 565 P.3d at 119.

The Court held that a jury could find it reasonably foreseeable that customers in a self-service retail store might improperly replace bulky merchandise on high shelves, creating a risk that the merchandise could fall and injure someone. *Id.* Here, Fred Meyer's own methods of operation created the risk that injured Ms. LaRocque. An empty cart scenario mimics a cart push-out theft. Fred Meyer programmed its anti-theft system to abruptly lock shopping carts as customers exit the store—an area that every customer must pass through. However, Fred Meyer did not install the SmartExit system designed to prevent the empty cart scenario that injured Ms. LaRocque. Just as it was foreseeable in *Galassi* that customers interacting with merchandise might create hazardous conditions, it is foreseeable that customers could be injured when an anti-theft locking mechanism abruptly stops the cart or that not all customers will first pass through the checkout area

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

to deactivate the anti-theft lock before exiting with an empty cart.

Importantly, whether the reasonable foreseeability exception applies is a question of fact for the jury. *Galassi*, 565 P.3d at 127. A reasonable jury could conclude that Fred Meyer's operational choice to program the wheel locks to activate at the door when a customer does not go through the checkout made customer injuries foreseeable. The existence of dozens of incident reports alone creates a genuine dispute of material fact regarding whether Fred Meyer had notice of the dangerous condition created by the anti-theft locking system. Accordingly, summary judgment cannot be granted on the basis that Fred Meyer lacked notice of the dangerous condition.

Fred Meyer also argues, without any authority, that it is shielded from liability because some cities—not Tacoma where the Store is located—require grocers to prevent the removal of carts from the outer-boundaries of the store property and anti-theft locking mechanisms can be one way that stores demonstrate compliance. (Dkt. No. 59 pg. 6-8). The purpose of the ordinances Fred Meyer cites is to prevent the loss of shopping carts themselves—not to deter retail theft. (*See* Dkt. No. 59 pg. 6-8). Moreover, Gatekeeper testified it sells a locking mechanism product where shopping carts only lock if they are taken off the store property, meaning beyond the parking lot. (Wilke Decl., Ex. 3 at 25:15 – 26:12). Lastly, the Fred Meyer store where Ms. LaRocque was injured is located in Tacoma. Tacoma does not have an ordinance requiring stores to install or use shopping cart locking systems.

**D.** **Even if Known or Obvious like Fred Meyer Contends, Fred Meyer Remains Potentially Liable Because It Failed to Mitigate the Risk of Harm that the Anti-Theft System Posed**

Fred Meyer's argument regarding the anti-theft locking being known or obvious ignores the facts of this case. Ms. LaRocque's shopping cart did not even have a warning

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

sign, and this was the case for numerous carts at the Store. (*See* Levi Dixon Report, Ex. 7, RFA Responses; Ex. 1, LaRocque dep. at 56:7-16; 58:14-24). The warning signs on the door are fully or partially obscured, meaning customers cannot see or read the warning language. (Wilke Decl., Ex. 7; Ex. 2, photographs; Levi Dixon Report). If the shopping cart does not have a warning sign affixed, and the sign on the door is obstructed, the customer would not have a warning of a known or obvious harm.

Fred Meyer's 30(b)(6) witness testified that the warning signs were not even to warn customers of potential injuries from the anti-theft locking store. As such, given Fred Meyer's own position, its alleged known or obvious defense fails.

Even when visible, the warning signs do not adequately explain how customers can avoid triggering the locking mechanism. The signage does not inform customers that the cart must pass through the checkout area before exiting the store to prevent the wheels from locking. Without that information, customers have no meaningful ability to avoid activating the anti-theft wheel locking system.

Even if the Court finds that the anti-theft locking when customers exit the Store through the wrong invisible pathway constitutes a known or obvious danger, Fred Meyer cannot prevail on summary judgment. Here, Fred Meyers has not and cannot show that the danger was known to Ms. LaRocque, so it must argue that the danger was obvious to Ms. LaRocque. It cannot meet this burden, but even if could, it is not dispositive. *See Suriano v. Sears, Roebuck & Co.,* 72 P.3d 1097, 1100 (Wash. Ct. App.) (the trial court instructed the jury that the store was not liable for an open and obvious danger—unless the owner should anticipate the harm despite such knowledge or obviousness).

As discussed under Restatement (Second) of Torts § 343A,

> A possessor of land is not liable to ... invitees for physical harm caused to them by any activity or condition on the land whose danger is known or

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

obvious to them, <u>unless the possessor should anticipate the harm despite such knowledge or obviousness.</u>

(emphasis added); *see Tincani,* 875 P.2d at 631 (adopting the standard).

[R]eason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he [or she] will not discover what is obvious, or will forget what he [or she] has discovered, or fail to protect … against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable [person] in [that] position the advantages of doing so would outweigh the apparent risk.

*Id.*

Here, Fred Meyer's warning signs are insufficient to warn customers of the danger posed by the locking mechanism. This is proven time-and-time again by the numerous incident reports where customers are injured, and the store employee puts down below that there are warning signs on the carts and at the store. Fred Meyer knew these warning signs were insufficient to avoid injuries.

Even if the signage was fully visible or provided adequate notice, customers exiting the store have little reaction time to prevent injury once the mechanism activates. (*See* Declaration of Levi Dixon and attached report).  When the wheels lock abruptly, the momentum of the cart and the customer continues forward, creating a substantial risk that the customer will collide with the cart. (*Id.*). Customers exercising reasonable care cannot protect themselves from collision with the cart once the locking mechanism has activated. (*Id.*).

Ms. LaRocque was a frequent visitor to the Store, but never had experienced a locking shopping cart before, which only further demonstrates that she would not have recognized the harm as being known or obvious because of her numerous prior experiences navigating the store with a cart but without incident.

PLTF'S OPP TO FRED MEYER DEFS' MSJ - 24 of 28
[4871-5472-8598]

Fred Meyer knew about the risk to customers caused by the empty cart scenario before Ms. LaRocque's injury. The empty cart scenario is such a significant problem that at least as early as 2022 the Store purchased the Video Classification System video in which Gatekeeper reviews and classifies every activation as a push-out event or an empty cart activation, giving notice to Fred Meyer of the danger to customers of the empty cart activation scenario  (Wilke Decl., Ex. 10).

Because of the empty cart scenario, Gatekeeper created a product that detects empty carts and prevents empty carts from activating.  That new product is evidence that the warning signs themselves are inadequate to prevent innocent customers from activating the anti-theft locking mechanism and avoid injury.

Notably, Kroger is now finally using the SmartExit system to prevent empty cart activations at some of its stores. (Wilke Decl., Ex. 3 at 32:13 – 35:24).  If Fred Meyer had installed that system when it first became available in 2022, Ms. LaRocque would not have been injured in May 2023.

*Jimenez v. Walmart Inc.,* 2023 WL 2017977, at *4 (W.D. Wash. Feb. 15, 2023), is instructive. There, Judge Tsuchida denied Walmart's motion for summary judgment despite evidence that it placed traction mats and cautionary signage before the plaintiff slipped and fell on the wet floor. The court reasoned that such measures—while relevant—did not, as a matter of law, discharge Walmart's duty to protect invitees from a potentially dangerous, slippery condition.

The same principle applies here. Even assuming Fred Meyer provided some form of warning, that fact does not establish that it satisfied its duty or eliminate liability as a matter of law. At most, it bears on the fact-intensive inquiry of whether the condition was open and obvious and whether reasonable care was exercised—issues that remain for the jury.

[4871-5472-8598]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

Lastly, Fred Meyer also contends that it warned Ms. LaRocque of the alleged dangerous condition, suggesting this is meaningfully distinct from whether the hazard was open and obvious. It cites no authority to support that proposition, and its argument is somewhat incoherent. (Mot. at 12-13). Under Washington law, the adequacy of a warning bears directly on whether a condition is open or obvious, and then the above-referenced analysis is employed. As such, no separate defense arises, particularly not one that warrants dismissal of Ms. LaRocque's claims against Fred Meyer.

Fred Meyer's motion for summary judgment should be denied.

### IV.    CONCLUSION

At a minimum, the evidence establishes a genuine dispute of material fact regarding whether programming the cart locking mechanism to activate at the store's exit when a customer does not pass through the checkout constitutes an unreasonably dangerous condition, particularly where Fred Meyer is aware of the empty cart scenario and the fact the warning signs do not warn customers of the empty cart scenario. The volume of incident reports, the expert's report, the numerous documented injuries suffered by customers, and Fred Meyer's inadequate warnings all support the conclusion that the system was a dangerous condition that posed a foreseeable risk of harm. Furthermore, Fred Meyer had notice that the condition existed and failed to adequately mitigate the risk of customer's being injured by the abruptly locking carts at the exit doors when the cart does not pass through checkout.

Because there are material disputes of fact about all the above issues, summary judgment should be denied.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

Counsel certifies that this memorandum contains 7,918 words, in compliance with the Local Civil Rules.

Dated this 22nd day of March, 2026.

GORDON THOMAS HONEYWELL LLP

By _____
Robert C. Wilke, WSBA No. 49937
rwilke@gth-law.com
Ian M. Leifer, WSBA No. 56670
ileifer@gth-law.com
Attorneys for Plaintiff

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

# DECLARATION OF SERVICE

I hereby declare that on April 22, 2026, in Tacoma, Washington, I caused the foregoing affixed document to be served on the following parties in the manner indicated herein:

| John R. Barhoum, WSBA #42776<br>Sarah Tuthill-Kveton, WSBA #51801<br>Hanna R. Lukes, WSBA #62610<br>Chock Barhoum LLP<br>121 SW Morrison Street, Suite 500<br>Portland, OR 97204<br>john.barhoum@chockbarhoum.com<br>sarah@chockbarhoum.com<br>hanna.lukes@chockbarhoum.com<br>michelle.heilbrun@chockbarhoum.com<br>devon.haggart@chockbarhoum.com<br>e-service@chockbarhoum.com | ☐ Via Legal Messenger<br>☐ Via U.S. Mail<br>☒ Via CM/ECF E-Filing<br>☒ Via Email |
|---|---|
| Francis S. Floyd, WSBA No. 10642<br>Skyler P. Urban, WSBA No. 58761<br>Floyd, Pflueger, Kearns, Nedderman, & Gress, P.S.<br>3101 Western Avenue, Suite 400<br>Seattle, WA 98121<br>ffloyd@nwtrialattorneys.com<br>surban@nwtrialattorneys.com<br>ecampbell@nwtrialattorneys.com<br>skatinas@nwtrialattorneys.com | ☐ Via Legal Messenger<br>☐ Via U.S. Mail<br>☒ Via CM/ECF E-Filing<br>☒ Via Email |

I DECLARE UNDER THE PENALTY OF PERJURY OF THE LAWS OF THE STATE OF WASHINGTON THAT THE FOREGOING IS TRUE AND CORRECT.

_____
Sarah M. Weger, Legal Assistant
sweger@gth-law.com

[4871-5472-8598]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565