UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LINDA LAROCQUE,

Plaintiff,

v.

THE KROGER CO., a foreign corporation doing business in Washington state; and FRED MEYER STORES, INC., a foreign corporation doing business in Washington state, a/k/a TACOMA-STEVENS FRED MEYER; GATEKEEPER SYSTEMS, INC., a foreign corporation doing business in Washington state,

Defendants.

NO. 3:25-cv-05380-MJP

GATEKEEPER SYSTEM, INC.'S
MOTION FOR SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
MONDAY, JULY 6, 2026

ORAL ARGUMENT REQUESTED

## I.    INTRODUCTION

Defendant Gatekeeper Systems, Inc. ("Gatekeeper"), by and through undersigned counsel, respectfully submits this Motion for Summary Judgment pursuant to FRCP 56. Gatekeeper seeks summary judgment dismissing all claims asserted against it in Plaintiff's Complaint.

Plaintiff alleges two causes of action against Gatekeeper: negligence and product liability under RCW 7.72.010. As an initial matter, Plaintiff's standard common law negligence claim must be dismissed because it is legally preempted and subsumed by the Washington Product

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY
JUDGMENT- 1

3:25-CV-05380-MJP

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

Liability Act ("WPLA"), RCW 7.72. The WPLA supplants all common law remedies for product-related harms, creating a single statutory cause of action. Because Plaintiff's negligence claim revolves entirely around the function and deployment of the Purcheck system, it cannot be maintained independently and must be dismissed as a matter of law.

Furthermore, summary judgment is proper because Plaintiff cannot prove the essential elements required to sustain her remaining WPLA claims. To survive summary judgment on her design defect claim, Plaintiff must satisfy either the risk-utility test or the consumer expectation test. However, Plaintiff's sole expert witness who opined on the product, Mr. Dixon, explicitly testified that he did not conduct a risk-utility analysis, was unfamiliar with the test, and did not evaluate alternative designs. Mr. Dixon also testified that he did not perform a consumer expectation analysis and reviewed no market research or literature regarding consumer expectations of anti-theft systems. Plaintiff's claims are entirely speculative.

Plaintiff's failure-to-warn and manufacturing defect claims suffer from the same lack of evidence. For the failure-to-warn claim, Plaintiff cannot establish proximate cause or show what an adequate warning would look like, as Mr. Dixon repeatedly conceded he did not formulate or recommend alternative warning language. For the manufacturing defect claim, Mr. Dixon explicitly testified that he holds no opinion that the subject Purcheck system deviated from Gatekeeper's design specifications, performance standards, or identical product units. Because Plaintiff has failed to produce more than a "mere scintilla" of evidence to support these essential elements, Gatekeeper respectfully requests that this Court grant its motion and dismiss this matter with prejudice.

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 2

3:25-CV-05380-MJP

## II.    STATEMENT OF FACTS

**A.    The Gatekeeper PurCheck System is an Anti-Shoplifting System Deployed in Stores Across the World, including throughout Washington**

This matter involves systems deployed by Gatekeeper Systems, Inc. ("Gatekeeper") in stores across the world designed to minimize the impact of retail theft at the contracted retail stores. Gatekeeper is a global provider of retail loss prevention technology systems. Stores around the world have contracted with Gatekeeper to have its systems installed in stores. Gatekeeper systems are currently deployed in the United States, Canada, Europe, the UK, and Australia with the systems also deployed by third parties in South America. **Exhibit 1** (Harter Dep.) of Declaration of Skyler P. Urban in Support of Motion for Summary Judgment, at 8:16–25.

There is no dispute between parties regarding what system was in effect at the time of the subject incident, and how it operates. The Gatekeeper system at issue in this case is Gatekeeper's Purcheck system. *Id*., **Ex. 1** (Harter Dep.), at 26:14-18. The Purcheck system operates using a combination of digital radio frequency ("RF") technology and locking mechanical wheels. *See Id*. In a store that has contracted for the Purcheck systems, when a cart equipped with the Purcheck wheels crosses an invisible RF signal boundary without receiving "permission" from the central transmitter, the wheel's internal receiver detects the signal and triggers an internal braking mechanism. *Id*., **Ex. 1** (Harter Dep.), at 50:20–23, 64:14–20. This locks the wheel, preventing the cart from being pushed further. *Id*., **Ex. 1** (Harter Dep.), at 50:24–51:2. The wheel remains locked until it is released by an authorized store employee using an electronic key. *Id*., **Ex. 1** (Harter Dep.), at 64:21–24. In the configuration utilized at the subject Fred Meyer store, the system perimeter was set to the store exit. *Id*., **Ex. 1** (Harter Dep.), at 26:14–18. Under this

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 3

3:25-CV-05380-MJP

**FLOYD | PFLUEGER**
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

configuration, a shopping cart is required to pass through a designated checkout lane or the self-checkout area to receive the "permission" to exit the store. *Id*., **Ex. 1** (Harter Dep.), at 26:14–18. This permission is granted via an electronic signal installed at the checkout locations; if a cart attempts to bypass the checkout lanes or exits without this electronic authorization, the wheel will automatically lock upon reaching the exit threshold. *Id*. The purpose of this configuration is to prevent what are known in the retail grocery industry as "push out" theft. *Id.*  A push out theft is when an individual loads up a shopping cart with merchandise with the intent of stealing the items. The individual will then "push out" the cart without checking out and paying for the items.

The Purcheck System was installed at the subject Fred Meyer store in 2017. Urban Decl., **Ex. 1 (**Harter Dep.), at 57:6. In 2019, the system was supplemented with a Video Classification system. *Id.* **Ex. 1** (Harter Dep.), at 57:1-3; 66:13-16. The Video Classification system utilized a video to classify instances of the carts locking – identifying instances where the locked cart was empty or when the carts are filled with merchandise, in which case the videos would be retained and used by law enforcement or asset protection. *Id.* **Ex. 1** (Harter Dep.), at 27:1-7; 58:17-24.

More recently, Gatekeeper has deployed a SmartExit system at a few select Kroger Stores in trial and proof of concept testing. *Id.* **Ex. 1** (Harter Dep.), at 35:4-10. The SmartExit system utilizes an overhead sensor to allow carts classified as empty to pass through a store's exit doors even if it did not pass through a checkout lane to receive "permission" to exit the store without locking. *Id.* **Ex. 1** (Harter Dep.), at 32:20-25; 33:1-3. The SmartExit system does not currently exist as a product available for purchase by Gatekeeper's customers, including Kroger/Fred Meyer, as none have been put in production. *Id.* **Ex. 1** (Harter Dep.), at 35:4-6. The SmartExit system is not available to the subject Fred Meyer store now, nor was it available on the day of

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 4

3:25-CV-05380-MJP

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

the subject incident as it was offered more recently than the time of installation. *Id.* **Ex. 1** (Harter Dep.), at 35:23-24.

**B.    Installation and Deployment of the Purcheck System at the Subject Fred Meyer.**

As noted above, the Purcheck System was installed at the Fred Meyers in October 2017. The installation process involved outfitting every store cart with a "paired wheel" system consisting of two locking wheels, one on the front wheels and one on the rear wheels, on opposite sides. *Id.,* **Ex. 1** (Harter Dep.), at 51:9-25; 56:13–16. With this "paired wheel" install, the carts lock with a slowed controlled stop at the exist:

> Q.    With the paired wheels, does the cart stop more abruptly compared to the one wheel?
>
> A.    It doesn't stop more abruptly, but it has a - - it can't be moved after that because it has more it can't be moved after that because it has more friction points. But by having the primary/secondary, it actually gives a more slowed, controlled stop, because the one wheel locks and then the other one locks up momentarily afterwards. So they don't lock at the same time. There's a delay between.

Id., **Ex. 1** (Harter Dep.), at 57:20–25; 58: 1–3.

In addition to the system components, Gatekeeper also designs and manufactures warning signs that are installed on *all carts with the locking wheels* at the time of locking wheel installation. *Id.,* **Ex. 1** (Harter Dep.), at 24:5–8. The warning signs are affixed to the carts using Gatekeeper's M-8033B kit. *Id.,* **Ex. 1** (Harter Dep.) at 62:13–15. The M-8033B cart warning has the following language:

//

//

//

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 5

3:25-CV-05380-MJP

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

*Id.,* **Ex. 4**.

The verbiage on the signs has remained the same for at least the last ten years and was the same at the time of the subject incident. *Id.,* **Ex. 1** (Harter Dep.), at 24:9–11. In addition to the signs on the carts, Gatekeeper also provides warning decals for the store's exit doors advising that an anti-theft system is deployed on the carts. *Id.,* **Ex. 1** (Harter Dep.), at 23:24-25; 24:1–4. Although Gatekeeper advises that these door signs be placed "in the line of sight" with a primary focus on alerting exiting customers as they approach the system's "lock loop", the ultimate placement location is dictated by the store manager to ensure the warnings are not subsequently removed or obscured *Id.,* **Ex. 1** (Harter Dep.), at 39:7–9, 20–25; 40:1; 44:6–15.

Gatekeeper advises its clients upon installation that damaged or missing signs need to be replaced. *Id.,* **Ex. 1** (Harter Dep.), at 70:9–13, 20–23. To facilitate repairs, Gatekeeper maintains a service relationship with the Fred Meyer store on a "break-fix" basis, meaning that the store must notify Gatekeeper if there is an item malfunctioning or needs to be replaced, such as missing or damaged warning signs. *Id.,* **Ex. 1** (Harter Dep.), at 44:25–45:1. Because of this, Gatekeeper relies on the store to first notify them that service is required. *Id.,* **Ex. 1** (Harter Dep.), at 45:3–5.

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 6

3:25-CV-05380-MJP

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

To initiate a replacement of a warning sign for example, the store must request the service by generating a work order through their internal service app, such as KroGo, which then alerts Gatekeeper to quote and schedule the repair. *Id.,* **Ex. 1** (Harter Dep.), 45:8–10; 68:1–10. Alternatively, the store's internal maintenance department can choose to perform the repair themselves by directly ordering the replacement sign parts from Gatekeeper. *Id.,* **Ex. 1** (Harter Dep.), at 46:13–16. The subject Fred Meyer has never contacted Gatekeeper requesting or notifying it that a warning sign that was installed on a cart at install was damaged or missing and needed to be replaced. *Id.,* **Ex. 1** (Harter Dep.), at 45:14–16.

### C.    May 6, 2024 Subject Incident

Plaintiff Ms. Larocque had extensive experience with this specific Fred Meyer location, having shopped there frequently. Ms. LaRocque testified that she had shopped at the store at least once or twice a week for approximately twenty years before the accident, including after the 2017 installation of the PurCheck system. *See Id.*, **Ex. 2** (L. LaRocque Dep.), at 44:17-21. At her deposition, Ms. LaRocque noted that she had become "uncomfortable" shopping at the store due to "homeless people were coming in there, you know, taking over," "criminals" in the area, harassment in the parking lot, and what she perceived as a lack of adequate security. *Id*., **Ex. 2** (L. LaRocque Dep.), at 54:20-25; 55:1-2; 56:25; 57:1-14. On the day of the subject incident, which occurred on May 6, 2024, she arrived at the store and initially parked in a disability spot to access the BECU ATM outside the store before entering the store. *Id*., **Ex. 2** (L. LaRocque Dep.), at 45:11-12; 46:6-9.

At the time of this visit, Ms. Larocque was still in a recovery period following a total knee replacement surgery performed on February 9, 2024. *Id*., **Ex. 2** (L. LaRocque Dep.), at 36:17-18; 50:23-25. Due to her post-surgical status, she was wearing a brace that extended from her thigh

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 7

3:25-CV-05380-MJP

to her ankle and utilized a full-sized shopping cart specifically as a mobility aid for balance and stability. *Id*., **Ex. 2** (L. LaRocque Dep.), at 50:8-22. Ms. LaRocque testified that the only reason she grabbed a cart was for "balance." *Id*., **Ex. 2** (L. LaRocque Dep.), at 50:22. Ms. LaRocque did not look for a motorized sit-down scooter and did not choose to use one upon entering. *Id*., **Ex. 2** (L. LaRocque Dep.), at 63:16-23.

Ms. LaRocque and her husband spent approximately 15 minutes unsuccessfully searching for a supplement. Because they were unable to locate the item, they did not purchase any merchandise and proceeded to the exit with the cart. Id**., Ex. 2** (L. LaRocque Dep.), at 48:14-22; 50:18-20; 53:11-12. Consequently, they attempted to exit the premises without passing through the checkout registers to deactivate the cart's PurCheck wheels. *Id*., **Ex. 2** (L. LaRocque Dep.), at 48:23-24; 51:24-25; 53:11-15. As she pushed the cart toward the exit, the locking mechanism engaged, allegedly causing her knee to strike the cart. *Id*., **Ex. 2** (L. LaRocque Dep.), at 52:5-10; 64:11-14.

**D.**     **Plaintiff's Causes of Action Against Defendant Gatekeeper.**

Plaintiff asserts two causes of action against Gatekeeper, a standard negligence claim, and a product liability claim under RCW 7.72. Under her product liability cause of action Plaintiff lists a range of possible claims: strict liability, negligence, breach of express and implied warranty, failure to warn, failure to properly instruct as to use, misrepresentation, concealment, non-disclosure, negligent and defective design, assembly and manufacture. Plaintiff's Amended Complaint, at ¶37.

//

//

//

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 8

3:25-CV-05380-MJP

### III.    ISSUES PRESENTED

1.    Is Plaintiff's standard negligence claim subsumed by the Washington Product Liability Act because all allegations against Gatekeeper revolve around the Purcheck product, and therefore must be dismissed? **Yes**.

2.    Does Plaintiff have sufficient evidence to prove all essential elements of her design defect claim under the Washington Product Liability Act? **No**.

3.    Does Plaintiff have sufficient evidence to prove all essential elements of her manufacturing defect claim under the Washington Product Liability Act? **No**.

4.    Does Plaintiff have sufficient evidence to prove all essential elements of her strict liability claims under the Washington Product Liability Act? **No**.

### IV.    EVIDENCE RELIED UPON

This Motion relies upon the Declaration of Skyler P. Urban, and the pleadings on file with the Court.

### V.    ARGUMENT AND AUTHORITY

**A.    Summary Judgment is Proper if Plaintiff Fails to "Prove an Essential Element" of her Claims, and There are no Issues of Material Fact.**

"A district court must grant summary judgment 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Vandervert Constr., Inc. v. Allied World Specialty Ins. Co.*, 650 F. Supp. 3d 1132, 1137 (E.D. Wash. 2023). "A moving party who does not bear the burden of persuasion at trial will succeed by producing evidence that negates an essential element of the non-moving party's claim or defense or showing that the non-moving party does not have enough evidence to prove an essential element." *Id.* "After the moving party has satisfied its burden, to survive summary

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 9

3:25-CV-05380-MJP

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

judgment, the non-moving party must demonstrate with evidence on the record, 'specific facts' showing that there is a genuine dispute of material fact for trial." *Id.* This requires more than showing the "mere existence of a scintilla of evidence in support of the plaintiff's position." *Id.* Here, there is no issue of material fact. The only unknown fact is whether the cart Plaintiff was using had a warning sign installed at the time of the incident. However, as explained herein, such a fact is immaterial to Gatekeeper's Motion. Plaintiff fails to prove "essential elements" of her product liability claims against Gatekeeper and fails to show anything more than a "scintilla of "evidence" in supports of those claims.

**B.      Plaintiff's Negligence Claim Is Subsumed by the Washington Product Liability Act and Must Be Dismissed**

Plaintiff brings her product liability claim under the Washington Product Liability Act ("WPLA"), RCW 7.72.  "The WPLA 'creates a single cause of action for product-related harms that supplants previously existing common law remedies." *Wash. Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 860, 774 P.2d 1207, (1989). The Washington Supreme Court has made clear that the WPLA was intended to eliminate common-law product remedies and replace them with a single statutory cause of action; even though the Act lacks an express preemption clause, "clear statutory language and corroborative legislative history leave no doubt about the WPLA's preemptive purpose," and the Legislature's purpose was "to eliminate common law remedies and provide a single cause of action." *Id.* The Supreme Court has specifically held that where a plaintiff's theory is product-based (including failure-to-warn), "any negligence cause of action therefor is now preempted by the [WPLA]" and "cannot be maintained on a common law negligence theory." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 323, 858 P.2d 1054 (1993).

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 10

3:25-CV-05380-MJP

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

Plaintiff's claim of common law negligence is clearly product-based. When a plaintiff's negligence claim is predicated on the product and an injury caused by that product, it is preempted by the WPLA. But for the existence of the Purcheck product, Plaintiff would not have a claim. Plaintiff's negligence claim directly asserts negligence as it pertains to the Gatekeeper Purcheck system. Because this claim is strictly "product-based," it cannot be maintained alongside Plaintiff's asserted WPLA claim. Therefore, Plaintiff's negligence claim against Gatekeeper is preempted by the WPLA and must be dismissed.

**C.    Plaintiff Fails to Present Sufficient Evidence to Prove Essential Elements of Each of Her Product Liability Claims.**

As noted herein, Plaintiff has asserted a plethora of possible WPLA-based claims, including strict liability, negligence, breach of express and implied warranty, failure to warn, failure to properly instruct as to use, misrepresentation, concealment, non-disclosure, negligent and defective design, assembly and manufacture. Regardless of which manner Plaintiff opts to proceed with, there is insufficient evidence to support Plaintiff's claim, and her second cause of action must be dismissed.

**D.    Plaintiff Fails to Present Sufficient Evidence to Prove Essential Elements of her Design Defect Claim Under the Washington Product Liability Act – RCW 7.72.030(1)**

1.    *Plaintiff cannot show that the Purcheck System was "not reasonably safe as designed" under the risk utility test or a consumer expectation analysis.*

There are two ways to pursue manufacturer liability under the WPLA. RCW 7.72.030(1). First, under RCW 7.72.030(1)(a), product manufacturer is subject to liability if a plaintiff's harm was proximately caused by the "negligence of the manufacturer in that the product was not reasonably safe as designed" Under the WPLA, the PurCheck system would not be "reasonably safe as designed" if:

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 11

3:25-CV-05380-MJP

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

(a) [ ]at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, outweighed the burden on the manufacturer to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product[…]

RCW 7.72.030(1)(a)

"Most any product can be made more safe." *Branham v. Ford Motor Co.*, 701 S.E.2d 5, 16 (S.C. 2010). But, again, "a manufacturer is not expected to produce an accident free product, it is not an insurer of the users of its product and it need not adopt every possible safety device." Baumgardner *v. Am. Motors Corp.*, 522 P.2d 829, 832 (Wash. banc 1974) "It is one thing to show that the defendant might have designed a safer product; quite another to show that the product he did design was unreasonably dangerous. The defendant is not obliged to design the safest possible product, or one as safe as others make or a safer product than the one he has designed, so long as the design he has adopted is reasonably safe." *Weakley v. Fischbach & Moore, Inc.*, 515 F.2d 1260, 1267 (5th Cir. 1975).

In order to show that a product was not reasonably safe because of its design or lack of warnings (to be discussed below), a plaintiff may rely on the "risk-utility" weighing test outlined in the WPLA provision above, which holds that a product is not reasonably safe as designed if, at the time of manufacture, the likelihood and seriousness of harm outweighed the burden on the manufacturer to design a safer product and the adverse effect on the product's utility. *Id*. The risk-utility test "require[s] a balancing test." *Ayers by & through Ayers v. Johnson & Johnson Baby Prods. Co.*, 818 P.2d 1337, 1345 (Wash. banc 1991). "On one side of the balance … are the likelihood that the product would cause the claimant's harm or similar harms and the

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 12

3:25-CV-05380-MJP

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

seriousness of those harms." *Id.* "On the other side of [the] balance are the burden on the manufacturer to design a product that would have prevented those harms, and the adverse effect that a feasible alternative design would have on the usefulness of the product." *Id.* Likelihood is the "probability[] that an event would occur." *Ayers*, 818 P.2d at 1346. A showing of likelihood thus contemplates statistical evidence on probability. *See, e.g., Paul v. Henri-Line Mach. Tools, Inc.*, 938 F. Supp. 2d 691, 699 (E.D. Mich. 2013); *Monahan v. Toro Co.*, 856 F. Supp. 955, 959 (E.D. Pa. 1994).

In the alternative, a plaintiff may utilize the "consumer expectation test." *O'Connell v. MacNeil Wash Sys. Ltd.*, 2 Wn. App. 2d 238, 250, 409 P.3d 1107, (2017). The consumer-expectations test provides that a product is "not reasonably safe" when "the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer." *Id.;* RCW 7.72.030(3). "Under the 'consumer expectations' test, [a plaintiff] must show that the [product] was more dangerous than the ordinary consumer would expect." *Anderson v. Weslo, Inc.*, 906 P.2d 336, 340 (Wash. App. 1995). Under either test, the risk-utility or consumer expectation, evidence of industry custom and technological feasibility is relevant, but not dispositive. *O'Connell*, 2 Wn. App. 2d at 251.

Here, the record is devoid of the evidence or analysis required to satisfy a risk-utility test. There is no evidence in the record relating to any other design of the Purcheck system that would have "prevented [plaintiff's] harm" and there is also no evidence relating in any way to the necessary showing that "the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product." RCW 7.72.030(1)(a).

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 13

3:25-CV-05380-MJP

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

Beyond the complete lack of evidence in the record, Plaintiff's expert, Mr. Dixon, the only expert who has opined on the actual product, confirmed that he is not opining on risk-utility, and that he was not familiar with the test:

> Q.    Okay. We've addressed these - - I think we've addressed these, but I want to put a fine point on it. Did you conduct any risk utility analysis through your process?
>
> A.    I am not familiar with a risk utility analysis so I did not conduct that.

Urban Decl., **Ex. 3** (Dixon Dep.), at 91: 5–9

He further confirmed that opining on an alternative design was outside the scope of his opinions:

> Q.    Okay. You're not offering an alternative system engineering design of the system. Right?
>
> A.    I am not intending to offer an alternative engineering design, that's correct.

*Id.* **Ex. 3** (Dixon Dep.), at 91: 10–13.

Mr. Dixon confirmed he did not consider whether any other design was "feasible":

> Q.    Did you perform any analysis or create any opinions regarding whether alternative designs were technically feasible for Gatekeeper when they manufactured the system?
>
> A.    I haven't done a specific analysis of alternative designs other than I am aware that the Smart Exit system is a measure that can reduce the empty cart activations.
>
> […]
>
> Q.    Did you perform any cost analysis regarding the Gatekeeper product?
>
> A.    That was beyond the scope of my analysis, so no.

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 14

3:25-CV-05380-MJP

*Id.* **Ex. 3** (Dixon Dep.), at 24:21-25,26:5–8.

It is important to note that it is undisputed that one alternative Mr. Dixon passingly references, the SmartExit system, is still not even commercially available for stores to utilize. It is still in the testing phase at a few select stores. The system was not an option for the subject Fred Meyer store on the date of the accident. Urban Decl., **Ex. 1** (Harter Dep.), at 35:23-24; 55:19-20.

Plaintiff cannot establish that the product was "not reasonably safe as designed" under the risk utility test. Plaintiff has not conducted any analysis regarding the likelihood that the Purcheck system would result in the harm to Plaintiff, did not conduct the required weighing of the harms with the burden on Gatekeeper to design an alternative product that would have prevented those harms, and finally, failed to conduct any analysis on any adverse effect a proposed alternative design would have on the usefulness of the Purcheck system.

Likewise, the record is devoid of any consumer expectation test or analysis. The record contains no objective evidence demonstrating that Purcheck was more dangerous than an ordinary consumer would expect. Like the risk-utility test, there is no evidence in the record purporting to show what an ordinary consumer would expect in relation to shopping carts with a Purcheck, or similar system installed. To that end, Mr. Dixon testified that he did not conduct any consumer expectation test:

> Q.  Did you conduct a consumer expectation analysis?
>
> A.  I wouldn't say that I conducted a specific consumer expectation analysis but I certainly, from a safety and human factors perspective, analyzed the expectation of shoppers based on our previous experience using shopping carts, things of that nature.

*Id.* **Ex. 3** (Dixon Dep.), at 91:14–21.

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY
JUDGMENT- 15

3:25-CV-05380-MJP

**FLOYD | PFLUEGER**
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

Mr. Dixon did not review any literature or data concerning consumer knowledge or expectations regarding shopping carts with anti-theft systems:

> Q.    Have you reviewed any consumer research, market research, or literature addressing a consumer's awareness of anti-theft cart systems?
>
> A.    I don't recall anything specifically off the top of my head.

*Id.,* **Ex. 3** (Dixon Dep.), at 25: 25; 26:1-4.

Without reviewing any literature or market research addressing consumer awareness, Mr. Dixon's assertions regarding the expectations of an ordinary consumer are entirely speculative. Plaintiff cannot present any analysis regarding the expectations of the ordinary consumer and because Mr. Dixon failed to conduct any consumer expectation analysis, Plaintiff has no evidence on the record to satisfy the consumer expectations standard as a matter of law. By failing to perform either the risk utility test or a consumer expectation analysis, Plaintiff has failed to show an essential element needed to prove her design defect claim.

> 2.    *Plaintiff cannot show that the Purcheck System was "not reasonably safe as designed" due to a lack of adequate warnings or instructions.*

The WPLA similarly imposes liability if a product is not reasonably safe due to a lack of adequate warnings or instructions in two different situations. The first method is:

> (b) A product is not reasonably safe because adequate warnings or instructions were not provided with the product, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate.

RCW 7.72.030(1)(b).

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 16

3:25-CV-05380-MJP

**FLOYD | PFLUEGER**
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

The second manner in which a plaintiff can show inadequate warning is

> (c) A product is not reasonably safe because adequate warnings or instructions were not provided after the product was manufactured where a manufacturer learned or where a reasonably prudent manufacturer should have learned about a danger connected with the product after it was manufactured. In such a case, the manufacturer is under a duty to act with regard to issuing warnings or instructions concerning the danger in the manner that a reasonably prudent manufacturer would act in the same or similar circumstances. This duty is satisfied if the manufacturer exercises reasonable care to inform product users.

RCW 7.72.030(1)(c).

In order to recover under the WPLA for failure to warn or instruct, a plaintiff must show that defendant's inadequate warnings were the proximate cause of their injuries. *Kirkland v. Emhart Glass S.A.*, 805 F. Supp. 2d 1072, 1077 (9 Cir. 2011). To meet the requirements of proximate causation, a plaintiff must put forth evidence of both cause in fact and legal causation. *Id*. Cause in fact refers to the "but for" consequences of an act, meaning the physical connection between an act and an injury. *Id*. Legal causation, on the other hand, involves the determination of whether liability should attach as a matter of law given the existence of cause in fact. *Id*. Plaintiff cannot show that any alleged lack or inadequacy of warnings was the proximate cause of Plaintiff's alleged injury.

To survive summary judgment on her failure to warn claim, Plaintiff must show more than a "scintilla of evidence" that the alleged inadequate warnings, lack of warning, or lack of instruction, was the proximate cause of her alleged injury. Here, there is no such evidence. The only witness to testify regarding the impact of the warnings, Mr. Dixon, did not conduct an analysis as to whether the warning issue specifically caused the injury. Rather, the only thing he

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 17

3:25-CV-05380-MJP

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

looked at was the cart system in its entirety, not the warnings *Id.,* **Ex. 3** (Dixon Dep.), at 100: 4–23.

There, again, is no evidence in the records concerning the required analysis by statute regarding warning under either method. Further, Mr. Dixon did not conduct any analysis on the likelihood of harm at the time of manufacture, explicitly refused to draft or propose alternative warnings, and failed to evaluate whether his conceptual warning modifications would be practical or effective.

Even ignoring the lack of any proximate cause analysis or evidence regarding the actual warnings, Plaintiff fails to show the remaining essential elements required under the statue. Like RCW 7.72.030(1)(a), a failure to warn claim under RCW 7.72.030(1)(b) can be shown using the risk utility test, or the consumer expectations test discussed *supra,* which requires "the plaintiff to show that the product was 'unsafe to an extent beyond that which would be contemplated by the ordinary consumer.'" *Kirkland,* 805 F. Supp. 2d at 1076.

As noted above, Mr. Dixon explicitly confirmed he did not conduct any risk utility or consumer expectation analysis regarding the system or warnings. Further, the risk utility balanced test under RCW 7.72.030(1)(b) requires a baseline calculation of the "likelihood" and "seriousness" of the harm measured *at the time of manufacture* to determine if the original warnings were deficient.

Mr. Dixon admitted that he performed no analysis regarding consumer exposure rates and lacks any data regarding the actual frequency or probability of the alleged harm to shopping carts similar to the one involved with Plaintiff's injury, *i.e.*, a cart with an anti-theft wheel. In fact, he explicitly dismissed the necessity of establishing a statistical likelihood of injury entirely.

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 18

3:25-CV-05380-MJP

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

When asked about the rate of injuries involving carts (that did not have an anti-theft wheel), Mr. Dixon testified comparing the rate of injury to total number of shoppers/cart users was irrelevant:

Q. Have you reviewed or seen any data specifically addressing injuries - the rate of injuries to individuals hitting carts when they lock because they're going through a shoplifting system?

A. Other than reviewing the incident reports that were provided in this case, I believe there was more than 70 of them, I haven't reviewed specific incident rates documentation.

Q. And you don't have any idea how many shoppers in total passed through those stores that provided those incident reports on a daily basis, do you?

A. Not specifically. And it's really irrelevant to my analysis on whether this creates a potential danger.

*Id.,* **Ex. 3** (Dixon Dep.), at 58:6–21.

A jury cannot determine whether a risk "rendered the warnings or instructions of the manufacturer inadequate" when the only expert on the record refuses to quantify the likelihood of that risk occurring. RCW 7.72.030(1)(b) also requires affirmative proof that the manufacturer "could have provided the warnings or instructions which the claimant alleges would have been adequate." Mr. Dixon repeatedly conceded under oath that he did not formulate language that would have been adequate, did not opine on a replacement warning system, and purposely structuralized his analysis away from providing adequate warning recommendations:

Q. So do you have any - -do you have proposed alternative language that should have been used?

A. I haven't been asked to recreate the warning system, so no.

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 19

3:25-CV-05380-MJP

**FLOYD | PFLUEGER**
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

> Q.    Okay. Do you have a recommendation or opinion on how those warning signs that are on the glass should have been presented?
>
> A.    Again, it's really beyond the scope of my analysis to redesign the warning system. I'm really just doing an analysis of what was in place. […]

*Id.,* **Ex. 3** (Dixon Dep.), at 81:17–22

Without an expert-approved text or layout for what an "adequate" warning would look like, Plaintiff cannot present an essential element of her failure to warn claim. The jury is left with nothing but speculation as to what specific instructions the claimant alleges the manufacturer should have provided. When pressed on the impact of utility of alternative warnings, Ms. Dixon also confirmed he did not conduct any such analysis:

> Q.    So should the warning sign have laid out specifically what would cause the cart to lock, so you don't have to go through checkout, should it have listed that on the sign?
>
> A.    I would say it's a basic component of a warning that needs to alert the user what the hazard is, what the consequences are, how you avoid exposure to that hazard. So what you're describing would be consistent with that last component of how you avoid this.
>
> Q.    Did you do any analysis on the impact that that would have on the utility of preventing shoplifting?
>
> A.    Not specifically, no.

*Id.* **Ex. 3** (Dixon Dep.), at 44:19-25; 45: 4–7.

Under RCW 7.72.030(1)(b), a product is not reasonably safe if a manufacturer fails to provide adequate instructions after it learned, or should have learned, about a post-manufacture danger connected with the product. Plaintiff cannot sustain her claim under this method either. Mr. Dixon testified that he lacked specific information on if or when prior incidents were

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 20

3:25-CV-05380-MJP

**FLOYD | PFLUEGER**
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

communicated to Gatekeeper. *Id.* **Ex. 3** (Dixon Dep.), at 82:19–21. Furthermore, Mr. Dixon conceded that Gatekeeper would not know if an individual cart was missing a warning placard unless notified by the store, explicitly agreeing that this maintenance criticism would be directed to the individual stores rather than Gatekeeper. *Id.* (Dixon Dep.), at 80:5–16; 92:6–8. Without any expert or factual evidence establishing how a reasonably prudent manufacturer would have acted differently under the circumstances, Plaintiff's failure to warn claim fails as a matter of law.

### E. Plaintiff Fails to Present Sufficient Evidence to Prove Essential Elements of her Strict Manufacturing / Construction Liability Claim Under the Washington Product Liability Act – RCW 7.72.030(2)

A "product manufacturer is subject to strict liability to a claimant if the claimant's harm was proximately caused by the fact that the product was not reasonably safe in construction" or if the product "did not conform to the manufacturer's express warranty or to the implied warranties under Title 62A RCW." RCW 7.72.030(2). "A product is not reasonably safe in construction if, when the product left the control of the manufacturer, the product deviated in some material way from the design specifications or performance standards of the manufacturer, or deviated in some material way from otherwise identical units of the same product line." RCW 7.72.030(2)(a).

Here, there is no evidence or argument presented by Plaintiff that the Purcheck system, or the Purcheck wheels that were installed on the cart, deviated in any way from Gatekeeper's design specifications or performance standards. Nor is there any evidence or argument that there was any deviation from otherwise identical units. The only witness who has opined on the product in any way, Mr. Dixon, testified that he is not offering opinions on the matter:

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 21

3:25-CV-05380-MJP

Q.    Okay. Great. Are you offering any opinion that the Gatekeeper system deviated from their design specifications?

A.    I am not offering that opinion, no.

*Id*. **Ex. 3** (Dixon Dep.), at 14:20–23.

He further testified he has no opinion on whether the subject system deviated from other similar units:

Q.    Okay. Are you offering any opinion that the unit at issue, so the one that was involved in Ms. Larocque's injury, was somehow different than the other units manufactured by Gatekeeper?

A.    I am not offering that opinion either.

*Id.* **Ex. 3** (Dixon Dep.), at 14:24 – 25; 15:1-3.

Plaintiff cannot establish a strict liability claim under RCW 7.72.030(2) because there is no evidence that the Purcheck system or cart deviated from Gatekeeper's design specifications, performance standards, or identical or similar units. Summary judgment is warranted on this issue on Plaintiff's strict liability manufacturing / construction defect claim.

## VI.    CONCLUSION

Plaintiff's common law negligence claim is product-based and therefore subsumed into the single cause of action for product related claims, her WPLA cause of action. Further, Plaintiff has failed to present sufficient evidence to show an essential element of her product liability claims under RCW 7.72.030(1)(a), (b), (c), and (2), and therefore must be dismissed.

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 22

3:25-CV-05380-MJP

**FLOYD | PFLUEGER**
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

Dated this 8th day of June, 2026.

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS, P.S.

By: _____
Francis S. Floyd, WSBA No. 10642
Skyler P. Urban, WSBA No. 58761
3101 Western Ave, Suite 400
Seattle, WA  98121
206-441-4455
ffloyd@nwtrialattorneys.com
surban@nwtrialattorneys.com
*Attorneys for Defendant Gatekeeper
Systems, Inc.*

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY
JUDGMENT- 23

3:25-CV-05380-MJP

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

DECLARATION OF SERVICE

Pursuant to RCW 9A.72.085, I declare under penalty of perjury and the laws of the State of Washington that on the below date, I delivered a true and correct copy of the foregoing via the method indicated below to the following parties:

| | | |
|---|---|---|
| Robert C. Wilke<br>Ian M. Leifer<br>Gordon Thomas Honeywell, LLP<br>1201 Pacific Avenue, Ste. 2100<br>Tacoma, WA  98401<br>rwilke@gth-law.com<br>ileifer@gth-law.com | *Counsel for Plaintiff* | ☒ Via Email/E-Service<br>☐ Via U.S. Mail |
| John R. Barhoum<br>Sarah Tuthill-Kveton<br>Hanna R. Lukes<br>Samuel ben Behar<br>Chock Barhoum, LLP<br>121 SW Morrison St, Suite 500<br>Portland, OR  97204<br>john.barhoum@chockbarhoum.com<br>sarah@chockbarhoum.com<br>hanna.lukes@chockbarhoum.com<br>sam.behar@chockbarhoum.com | *Counsel for Defendants The Kroger Company and Fred Meyer Stores, Inc.* | ☒ Via Email/E-Service<br>☐ Via U.S. Mail |

DATED this 8th day of June, 2026.

*s/ Sophia E. S. Katinas*
Sophia E. S. Katinas, Legal Assistant

GATEKEEPER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT- 24

3:25-CV-05380-MJP