HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LINDA LAROCQUE,<br><br>                          Plaintiff,<br><br>v.<br><br>THE KROGER CO., a foreign corporation doing business in Washington state; and, FRED MEYER STORES, INC., a foreign corporation doing business in Washington state, a/k/a TACOMA-STEVENS FRED MEYER; GATEKEEPER SYSTEMS, INC., a foreign corporation doing business in Washington state<br><br>                          Defendants. | NO.  3:25-cv-05380<br><br>DECLARATION OF LEVI DIXON IN SUPPORT OF PLATINTIFF LINDA LAROCQUE'S OPPOSITION TO GATEKEEPER SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT<br><br><br>NOTED: JULY 6, 2026 |

I, Levi Dixon, declare and state as follows under the penalty of perjury of the laws of the State of Washington:

1.      I am over 18 years of age and competent to testify to the matters in this declaration.  I make the following statements based upon personal knowledge.

2.      Attached as **Exhibit 1** is a true and correct copy of my CV setting forth my qualifications and credentials.

DIXON DECL ISO PLTF'S OPP TO GATEKEEPER'S MSJ - 1 of 8
[4871-5472-8598]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

3.      Attached as **Exhibit 2** is a true and correct copy of my February 25, 2026 report in this matter. The opinions set forth in my report are made on a more probable than not basis and are based on my education, training, and experience.

4.      Attached as **Exhibit 3** is a true and correct copy of my May 7, 2026 supplemental report in this matter. The opinions set forth in my supplemental report are made on a more probable than not basis and are based on my education, training, and experience.

5.      As discussed in greater detail in my February 25, 2026 report and May 7, 2026 supplemental report, Gatekeeper's shopping cart locking mechanism product was unsafe and posed a serious risk of harm to customers due to unexpected contact with the cart, especially because the warning signs Gatekeeper provided to Fred Meyer as part of its sale of the product to Fred Meyer were inadequate as they are unreliable and inconsistent with basic principles for warnings, thereby compromising their effectiveness at communicating the basic components of a warning to users. The actual message of the warning placards and signage is misleading, ambiguous, and contradictory in nature. For example, the signage on the glass doors states that the shopping cart wheels **may** lock unexpectedly "if removed from the store", whereas the placards inside the carts state that they **may** stop unexpectedly "at exit doors." In other words, the signage and placards provide conflicting information regarding the location of where the wheel **may** lock (i.e., at the exit doors or only if they are removed from the store). That is, "if removed from the store" suggests the wheels will lock only if the cart is removed from the building itself, whereas "at exit doors" suggests that the wheels will lock at the threshold itself. In addition, it is unclear whether the exit doors refer to the interior foyer doors, the exterior set of doors, or both, which creates ambiguity. Notably, people routinely take their shopping cart outside

DIXON DECL ISO PLTF'S OPP TO GATEKEEPER'S MSJ - 2 of 8
[4871-5472-8598]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

of the facility (such as to go to their vehicle to unload it). A warning stating that the wheels may lock if removed from the store and/or at the exit doors conflicts with our everyday experience and expectations, which can compromise the credibility of the warning and the uncertainty of when the wheels will actually lock versus when they "may" lock (if at all).

6.      Additionally, both the placards and signage repeatedly describe that the wheels "may" lock/stop unexpectedly. While this illustrates appreciation and awareness that the carts were at risk of unexpectedly stopping (which poses a risk of harm to patrons, as discussed in more detail in my reports), the wording that the carts "may" stop/lock unexpectedly is ambiguous and does not clearly communicate to the user when the cart is actually going to stop/lock and put them at risk of harm.

7.      In other words, even if a patron knows that the carts "may" unexpectedly lock, they are still at risk of contacting the cart (as discussed above) since it may happen unexpectedly, such that they do not have time to prepare for and/or avoid striking the cart. Furthermore, the ambiguous language stating that the wheels "may" lock/stop increases the risk of a patron being uncertain on various information, such as where the wheels **will** lock (if at all), if the cart is actually equipped with the locking wheels and/or if the system is active, the nature of the stop (will it be abrupt versus gradual), and the like. Even if a customer does receive the message contained within the warnings, they will still be put at risk of contacting the cart if the wheels unexpectedly stop, given that the cart is at risk of unexpectedly stopping at a time and place that is unknown and not clearly defined to the user, along with the unknown nature of the wheels locking (i.e., abrupt vs. gradual) and the lack of information provided to the user regarding what needs to be done in the event of the wheels locking to avoid contacting/striking the cart.

DIXON DECL ISO PLTF'S OPP TO GATEKEEPER'S MSJ - 3 of 8
[4871-5472-8598]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

8.      In other words, Gatekeeper's shopping cart locking mechanism was unsafe and posed a serious risk of harm to customers, especially because adequate warnings were not provided to communicate the information necessary to reliably warn a customer of the hazard, the consequence, and how to avoid the hazard. I understand Defendants assert that Ms. LaRocque must have seen the warning signs at the Fred Meyer store because she had been a customer there for several years prior to the incident. However, even if Ms. LaRocque had seen the warning signs, the warning signs failed to provide sufficient information regarding what needs to be done in the event of the wheels locking to avoid contacting/striking the cart, or sufficient information of what behavior, such as taking an empty cart through the exits, would cause the cart to lock up to avoid the cart locking up in the first place.  Based on my education, training, and experience in Safety and Human Factors Engineering, along with my review of the evidence in this case, it is my opinion on a more probable than not basis that the interaction of the unsafe design and failure to provide adequate warnings were a cause of Ms. LaRocque's injury incident.

9.      As discussed in my reports, the warning signs were installed in a location that puts them at risk of being of being concealed or partially obscured. I understand Gatekeeper testified its employee Tim Wright installed the warning signs when it installed the anti-theft shopping cart locking mechanism at the Tacoma Fred Meyer store. (40:2-23). Installing the warning signs in a location that renders them concealed and/or partially obscured compromises the reliability of the warnings, because such an action increases the risk of a customer not perceiving the warning in the first place; hence, a warning that is not perceived by the user is not capable of changing behavior to reduce the risk of an incident occurring. Consistent with this discussion, Ms. LaRocque had not observed the concealed and/or partially obscured warnings, which is not surprising given their

DIXON DECL ISO PLTF'S OPP TO GATEKEEPER'S MSJ - 4 of 8
[4871-5472-8598]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

placement and the environmental conditions that exist in the general area. In light of this conversation, it is my opinion on a more probable than not basis that the presence of concealed and/or partially obscured warnings were unreliable and a cause of Ms. LaRocque's injury incident.

10.     As discussed generally in my reports, and as I testified to in my May 20, 2026 deposition (22:7:16), Gatekeeper has designed an engineering control, the Smart Exit system, to eliminate and/or reduce the risk of empty cart activations occurring in the first place, thereby protecting customers from the risk of harm posed by the shopping cart abruptly/unexpectedly stopping when taking an empty cart back out of the facility. Despite an appreciation of the need to eliminate and/or reduce empty cart activations, it is my understanding that the system is an option required to be purchased, rather than a standard feature, despite being a safety feature that protects customers from empty cart activations and the risk of harm they pose.

11.     I reviewed the May 6, 2022, Gatekeeper YouTube video in which Gatekeeper acknowledges the empty cart scenario was problematic because that scenario mimicked a cart push-out scenario and accounted for potentially over half of cart activations. In that video Gatekeeper also acknowledges that it developed the Smart Exit system that identifies empty carts and prevents the locking wheels from activating when customers with empty carts exit the store, thereby protecting them from the risk of harm posed by the shopping cart unexpectedly stopping and "provide a better shopper experience."

12.     Based on my education, training, and experience, such actions illustrate that Gatekeeper appreciated that the Purchek system is flawed due to the likelihood of empty cart activations that put non-stealing/innocent customers at risk of harm due to the

DIXON DECL ISO PLTF'S OPP TO GATEKEEPER'S MSJ - 5 of 8
[4871-5472-8598]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

unexpected and abrupt lock-up of a shopping cart. Gatekeeper designed a system to eliminate and/or reduce the risk of empty cart activations and the risk they pose to customers, but requires customers to pay extra for this safety feature. This was unfortunate for Ms. LaRocque, who was severely injured when her shopping cart locked up when she attempted to exit the store with an empty cart. If the Smart Exit system had been implemented and was functioning properly (I understand Fred Meyer in its tender letter to Gatekeeper asserts Gatekeeper was supposed to include the Smart Exit upgrade but failed to do so), that would have prevented harm to customers exiting the stores with empty carts due to empty cart activations, with no or minimal effect on the usefulness of the product. If Gatekeeper had equipped its system with Smart Exit as a standard safety featured instead of an option, it is more likely than not that Ms. LaRocque's empty shopping cart would not have abruptly/unexpectedly stopped and her incident would not have occurred.

13.     Based upon the above as well as the 70 other incidents at Washington Fred Meyer stores involving injuries caused by the shopping cart locking mechanism, the warnings are inadequate. The significant number of customers injured by Gatekeeper's product supports this conclusion. The inadequate warnings are more likely than not a cause of Ms. LaRocque's incident because the empty shopping carts unexpectedly locking catch customers off guard, resulting in the customer being put at risk of harm due to running into and/or making contact with the shopping cart that abruptly and unexpectedly stopped. Accordingly, it is my opinion on a more probable than not basis that the interaction of the unsafe design and failure to provide adequate warnings were a cause of Ms. LaRocque's injury incident.

14.     Moreover, Gatekeeper's 2022 introduction of the Smart Exit product confirms Gatekeeper appreciated that there was a risk of empty cart activations with the

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

potential to harm customers when an empty cart unexpectedly stopped. In addition to implementing an engineering control like the Smart Exit system on all of its Purcheck systems (instead of it being an option), Gatekeeper could have reduced the risk of empty cart activations by providing warnings that were consistent with basic principles for warnings, rather than ambiguous warnings that were at risk of being concealed and/or partially obscured. It is my opinion on a more probable than not basis that the failure of Gatekeeper to implement engineering controls and/or warnings that were consistent with basic principles for warnings was a cause of Ms. LaRocque's injury incident.

       Dated this 24th day of June, 2026 in Spokane, Washington.

_____
Levi Dixon, M.S., CXLT, CSP, CHFP

DIXON DECL ISO PLTF'S OPP TO GATEKEEPER'S MSJ - 7 of 8
[4871-5472-8598]

# DECLARATION OF SERVICE

I hereby declare that on June 29, 2026, in Tacoma, Washington, I caused the foregoing affixed document to be served on the following parties in the manner indicated herein:

John R. Barhoum, WSBA #42776
Sarah Tuthill-Kveton, WSBA #51801
Hanna R. Lukes, WSBA #62610
Chock Barhoum LLP
121 SW Morrison Street, Suite 500
Portland, OR 97204
john.barhoum@chockbarhoum.com
sarah@chockbarhoum.com
hanna.lukes@chockbarhoum.com
michelle.heilbrun@chockbarhoum.com
devon.haggart@chockbarhoum.com
e-service@chockbarhoum.com

☐ Via Legal Messenger
☐ Via U.S. Mail
☒ Via CM/ECF E-Filing
☒ Via Email

Francis S. Floyd, WSBA No. 10642
Skyler P. Urban, WSBA No. 58761
Floyd, Pflueger, Kearns, Nedderman, & Gress, P.S.
3101 Western Avenue, Suite 400
Seattle, WA  98121
ffloyd@nwtrialattorneys.com
surban@nwtrialattorneys.com
ecampbell@nwtrialattorneys.com
skatinas@nwtrialattorneys.com

☐ Via Legal Messenger
☐ Via U.S. Mail
☒ Via CM/ECF E-Filing
☒ Via Email

I DECLARE UNDER THE PENALTY OF PERJURY OF THE LAWS OF THE STATE OF WASHINGTON THAT THE FOREGOING IS TRUE AND CORRECT.

Sarah M. Weger, Legal Assistant
sweger@gth-law.com

DIXON DECL ISO PLTF'S OPP TO GATEKEEPER'S MSJ - 8 of 8
[4871-5472-8598]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565