KRO224.0010

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| LINDA LAROCQUE,<br><br>          Plaintiffs,<br><br>      v.<br><br>THE KROGER CO., a foreign corporation doing business in Washington state; and, FRED MEYER STORES, INC., a foreign corporation doing business in Washington state, a/k/a TACOMA-STEVENS FRED MEYER, GATEKEEPER SYSTEMS, INC., a foreign corporation doing business in Washington state<br><br>          Defendants. | Civil Case No. 3:25-cv-05380-TMC<br><br>**DECLARATION OF ALAN BROWN, M.D., J.D.** |

I, Alan Brown, declare as follows:

1. I am a board-certified orthopedic surgeon.

2. I have been retained by Defendants to evaluate Plaintiff's physical injuries alleged in this case.

3. I have been practicing orthopedic surgery for over 30 years and after finishing an extra year of fellowship training at the San Francisco Spine Institute, have specialized in spine surgery for over 20 years.

DECLARATION OF ALAN BROWN - 1

4. I have a medical degree from the University of Michigan and have been Board certified in orthopedics since 2002.

5. All of my opinions herein are on a more probable than not basis and to a reasonable degree of medical certainty.

6. I reviewed the Plaintiff's medical records and based on the Plaintiff's records and the facts surrounding this incident, I have reached several opinions:

7. Prior to her alleged shopping cart injury, the Plaintiff had a total knee replacement and then over time developed a patellar tendon rupture which is a known complication for knee replacement surgery.

8. The medical record from May 9, 2023 document that there is an "avulsion fracture" of her patella. The radiologist reading of the imaging study notes ..."Small avulsion fracture at inferior tip of patella with satisfactory patella position, recommend clinical correlation regarding extensor mechanism competence." The radiologists reading confirms that there needs to be clinical correlation regarding extensor mechanism competence, and does not confirm (as Dr. Rolfe suggests) that the avulsion fracture was caused by the shopping cart incident.

9. Based on the records, the Plaintiff's patellar tendon was already failing at the time of the shopping cart incident and the patellar tendon disruption was not caused by the shopping cart incident.

10. On a more probable than not basis, there was no fracture of the Plaintiff's patella from the incident itself as a patellar fracture would have caused severe immediate pain and would have caused the Plaintiff to be unable to ambulate without significant pain and difficulty immediately.

DECLARATION OF ALAN BROWN - 2

**CHOCK BARHOUM LLP**
121 SW Morrison St., Suite 500
Portland, OR 97204
t: 503.223.3000 | f: 503.954.3321

KRO224.0010

11. Although the Plaintiff's medical records reflect ongoing complaints of left knee pain after the shopping cart incident, when she was seen for follow up of her knee by her orthopedic providers on June 1, 2023, Plaintiff was able to "demonstrate straight leg raise." If her patellar tendon was disrupted from an acute traumatic patellar tendon disruption, she would not be able to "demonstrate" a straight leg raise.

12. I opine that from an orthopedic stance, there is no mechanism of injury which could have caused any of the Plaintiff's claimed injuries and that her patellar avulsion fracture and subsequent failure of the patellar tendon was more likely than not a complication of her previous total knee replacement and was unrelated to the shopping cart incident.

13. I have also reviewed the report and Declaration of Dr. Bruce Rolfe and based on the information in the medical records and in the testimony have found several troubling issues with Dr. Rolfe's conclusions.

14. Dr. Rolfe does not reconcile the fact that there is no reasonable mechanism of injury for a patellar fracture and patellar tendon disruption. Dr. Rolfe's report appears to be based solely on the Plaintiff's retelling of events and the Plaintiff's own conclusion that her patellar tendon disruption was from the shopping cart.

15. Dr. Rolfe's declaration states he bases his opinions, in part, on PA-C Alexandria Bones' May 9, 2023 clinic note that the patellar tendon disruption was "confirmed" to have been caused by the incident. The note from Ms. Bones on May 9, 2023 does not confirm anything of the sort.

16. Dr. Rolfe also bases his conclusions, in part, on the imaging studies from May 9, 2023. The radiologist reading specifically notes that there is a need for clinical

DECLARATION OF ALAN BROWN - 3

**CHOCK BARHOUM LLP**
121 SW Morrison St., Suite 500
Portland, OR 97204
t: 503.223.3000 | f: 503.954.3321

KRO224.0010

correlation between the radiographic findings and her complaints. This is not a "confirmation" of her injuries being related to the incident in question.

17. Dr. Rolfe also states that the Plaintiff's patella shifted as a result of the incident but Plaintiff herself stated that she had fallen on April 19, 2023 and heard a "pop" and she "took a knee." Plaintiff also reported on April 19, 2023 "that it felt like a shift in her knee and she had difficulty initially [weight bearing]."

18. Dr. Rolfe's statement that the Plaintiff's pre-operative evaluation for her patellar tendon repair showed that Plaintiff was healing "uneventfully" and that the patellar tendon was ruptured from the incident. This statement is incorrect as Plaintiff had "eventfully" injured herself before the shopping cart on April 19, 2023 when she fell, "heard a pop....[and] took a knee." I would also point out that Plaintiff testified in her deposition (page 73) that at the time of the shopping cart incident she was still wearing a knee brace.

19. Also, on June 1, 2023, the post-operative note from PA-C Bones states nothing about a patellar tendon rupture and the Plaintiff is told to continue her physical therapy. If there was a suspicion of a patellar tendon disruption, continued therapy would not have been recommended.

20. On June 8, 2023 the records document that Plaintiff is still performing therapy and there is no note about the Plaintiff being unable to walk and she is continuing to make progress with more "good than bad" issues.

21. On June 20, 2023 The Plaintiff's physical therapy findings are not consistent with a complete patellar tendon rupture, it is consistent with a slowly developing complication.

**CHOCK BARHOUM** LLP
121 SW Morrison St., Suite 500
Portland, OR 97204
t: 503.223.3000 | f: 503.954.3321

KRO224.0010

22. On June 22, 2023 Plaintiff was complaining of not being able to lift her leg in the past 2 weeks and her pain was increasing and it was on this date that a patellar tendon disruption was diagnosed.

23. As such, it is my opinion the Plaintiff's complete tendon rupture occurred between June 20 and June 22, 2023 and that it was not caused by the incident in question.

24. I agree that the treatment provided for Plaintiff was reasonable and necessary for her disease. However, on a more probable than not basis and to a reasonable degree of medical certainty none of her treatment was causally related to the incident on May 6, 2023.

1. Ultimately, based on the totality of the circumstances including the records, the testimony, and the circumstances surrounding the incident, my opinion is that the Plaintiff was not injured in any significant way as a result of this incident.

2. I also believe that on a on a more probable than not basis and to a reasonable degree of medical certainty that the patellar tendon rupture was a complication of her previous surgery and was not a result of this incident.

**I HEREBY DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF WASHINGTON THAT THE FOREGOING IS TRUE AND CORRECT**.

DATED this 26 day of June, 2026.

DECLARATION OF ALAN BROWN - 5

**CHOCK BARHOUM** LLP
121 SW Morrison St., Suite 500
Portland, OR  97204
t: 503.223.3000 | f: 503.954.3321

KRO224.0010

*alan brown*

Alan Brown, M.D., J.D.

DECLARATION OF ALAN BROWN - 6

**CHOCK BARHOUM** LLP
121 SW Morrison St., Suite 500
Portland, OR 97204
t: 503.223.3000 | f: 503.954.3321

KRO224.0010