# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

| | |
|---|---|
| LINDA LAROCQUE,<br><br>    Plaintiff,<br><br> v.<br><br>THE KROGER CO., a foreign corporation doing business in Washington state; and FRED MEYER STORES, INC., a foreign corporation doing business in Washington state, a/k/a TACOMA-STEVENS FRED MEYER; GATEKEEPER SYSTEMS, INC., a foreign corporation doing business in Washington state,<br><br>    Defendants. | NO. 3:25-cv-05380-MJP<br><br>GATEKEEPER SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>NOTE ON MOTION CALENDAR: MONDAY, JULY 6, 2026<br><br>ORAL ARGUMENT REQUESTED |

## I.  INTRODUCTION

Defendant Gatekeeper Systems, Inc. ("Gatekeeper"), by and through its undersigned counsel, respectfully submits this Response in Opposition to Plaintiff's Motion for Partial Summary Judgment relating to Plaintiff Linda LaRocque's claimed damages. Plaintiff seeks partial summary judgment establishing as a matter of law that medical treatment she received following the May 6, 2023 shopping cart incident was necessary due to the cart incident, and that all related medical expenses totaling $316,858.49 were reasonable.

GATEKEEPER SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

3:25-CV-05380-MJP

As a preliminary matter, Defendant Gatekeeper does not argue that the amounts charged by Ms. LaRocque's providers for any treatment following the date of May 6, 2023, were unreasonable for the services provided. However, given Plaintiff's extensive prior health issues, specifically regarding her knees, hips, and back, Gatekeeper strongly disputes that there are no issues of material fact regarding whether the injuries claimed and treatment sought by Plaintiff following the May 6, 2023 incident were caused by the subject incident.

The medical records alone create genuine factual disputes regarding whether the rupture resulted from the cart contact, from the underlying surgical complications and the healing process, or from Plaintiff's multiple risk factors, including her longstanding degenerative joint disease, chronic pain syndrome requiring daily opioid use, morbid obesity, or a complex history of falls and injuries spanning years before the cart incident.

The allocation of damages between a defendant's conduct and a plaintiff's preexisting conditions typically presents factual questions requiring jury determination. This case is no different. A reasonable jury could find that a substantial portion of Plaintiff's claimed damages, including post-incident treatment for right knee arthritis, bilateral hip pain, lumbar spinal stenosis, and left ankle injury following the incident bear no plausible causal relationship to striking her left knee against the shopping cart. As such, Defendant Gatekeeper respectfully requests that his Court deny Plaintiff's Motion for Partial Summary Judgment.

## II.    STATEMENT OF FACTS

The Court is familiar with the facts of the subject accident in this case. On May 6, 2023, Plaintiff was at the Tacoma Stevens Fred Meyer store when her shopping cart, equipped with an anti-theft wheel, locked as she exited the store because she did not make a purchase or cross

GATEKEEPER SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

3:25-CV-05380-MJP

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

through a checkout lane before exiting. Plaintiff alleges that this caused her to strike her left knee against the cart.

**A.      Plaintiff's Extensive Preexisting Medical Conditions**

Plaintiff's medical history includes years of chronic health problems affecting the very same areas that were treated following the subject incident. As of May 6, 2023, Plaintiff had been diagnosed with and treated for numerous conditions including several orthopedic related conditions:

**Patient Active Problem List**
Diagnosis
- Essential hypertension, benign
- Chondromalacia of patella
- Plantar fascial fibromatosis
- Lesion of plantar nerve
- Osteoarthritis
- NASH (nonalcoholic steatohepatitis)
- Diabetes mellitus without complication (CMS/HCC)
- Unspecified vitamin D deficiency
- Degeneration of lumbar or lumbosacral intervertebral disc
- Major depressive disorder, recurrent episode, moderate (CMS/HCC)
- Unspecified disorder of lipoid metabolism
- Other constipation
- Myofacial muscle pain
- Chronic pain
- Obstructive sleep apnea (adult) (pediatric)
- Type 2 diabetes mellitus without complication (CMS/HCC)
- Essential hypertension
- Hammer toes, bilateral
- Bilateral carpal tunnel syndrome

**Exhibit 1** to Declaration of Skyler P. Urban in Support of Defendant Gatekeeper's opposition to Plaintiff's Motion for Partial Summary Judgment (Urban Decl.), at MLC 2395-2399. Relevant to Plaintiff's complaints post-cart incident, Plaintiff had chondromalacia patella, the softening and breakdown of the cartilage on the underside of the kneecap, osteoarthritis lumbar deterioration, myofascial lumbar pain, and general chronic pain. *Id.* In addition to the above categories of diagnoses, Plaintiff also had diagnoses of major depressive disorder, sleep apnea, hoarding disorder, diabetic neuropathy, and morbid obesity. *Id.*, **Ex. 1**, at MLC_001448-1454.

**FLOYD | PFLUEGER**
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

**B.    Progressive Deterioration of Plaintiff's Left Knee and Decision to Undergo Total Knee Replacement**

By May 2019, Plaintiff's orthopedic surgeon Dr. William Thompson documented "left knee advanced DJD grade 4, predominant involvement in the patellofemoral > medial compartments, tricompartmental disease pattern." *Id.,* **Ex. 2**, at MCO&SMM_000534. X-rays showed "moderately advanced to advanced degenerative joint disease" with "predominant medial and patellofemoral compartment involvement." *Id.,* **Ex. 2**, at MCO&SMM_000538.

Despite recommendations for weight loss and conservative treatment, Plaintiff's left knee condition progressively worsened. By June 2021, Dr. Thompson noted "advanced tricompartmental degenerative joint disease, grade 4 severity, predominantly medial and patellofemoral compartment involvement" and again recommended total knee replacement but first required Plaintiff to achieve weight loss and reduce opioid dependence. *Id.,* **Ex. 2**, at MCO&SMM_000493-000497.

By December 2022, imaging showed "advanced osteoarthritis" in her left knee. *Id.,* **Ex. 2**, at MCO&SMM_000389. Plaintiff ultimately met the surgical criteria with documented disability and at least three months of conservative therapy. Plaintiff underwent left total knee replacement surgery on February 8, 2023, for primary osteoarthritis of the left knee. *Id.,* **Ex. 3**, at MHS_003171-003174.

**C.    Plaintiff's Post-Operative Treatment and Condition Before the Cart Incident**

Following her February 8, 2023 total knee replacement, Plaintiff was discharged on February 9, 2023 with instructions to start physical therapy within two days. *Id.,* **Ex. 3,** at MHS_003174-003179. Plaintiff did not begin physical therapy until February 20, 2023. *Id.,* **Ex. 4,** at APT_000137-000139. Physical therapy records from February through early May 2023

GATEKEEPER SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

3:25-CV-05380-MJP

**FLOYD | PFLUEGER**
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

document ongoing post operation challenges including left knee swelling, right knee pain, weakness, limited range of motion, balance deficits, and Plaintiffs' fear of falling. *E.g., Id.,* **Ex. 4**, at APT_000137–000141, 000154-000155; 000164-000165, 000186-000188, 000189 – 000191, 000221 –000223. On March 23, 2023, prior to the cart incident, physical therapy notes indicate Plaintiff "self-progressed too quickly and has developed right knee irritation." *Id.,* **Ex. 4**, at APT_000164.

On April 25, 2023, Plaintiff specifically noted to right side pain, noting "R hip sore today, and still has L knee and glute pain. Still has trouble with stairs, limited by L knee and glute." *Id.,* **Ex. 4**, at APT_000186. By May 2, 2023, Plaintiff reported "top of L knee is bothering her" and continued to use a cane because "she doesn't have full confidence in the knee and her balance is not great." *Id.,* **Ex. 4**, at APT_000221. In this same entry, it was noted that Plaintiff was "also having some issues with her R knee." *Id.,* **Ex. 4**, at APT_000221. As outlined in the pre-incident records noted here, Plaintiff was having clear issues with right side pain, and mobility prior to the alleged cart incident. *E.g., Id.*

### D. Post-Incident Medical Treatment and Diagnoses

In addition to Plaintiff having pre-cart incident orthopedic complaints, including right sided knee issues, Plaintiff's complaints following the alleged cart incident outline additional issues relating to causation. On May 9, 2023, Plaintiff was seen by Alexandria Bones, PA-C, with noted increased knee pain and swelling. *Id.,* **Ex. 2**, at MCO&SMM_000219-000221. At that time, x-rays revealed "a possible small patellar tip avulsion fracture inferiorly, not present on previous x-rays" from February 8, 2023, though the radiologist noted the patella position was "unchanged from 2/8, without patella alta, suggesting intact extensor mechanism." *Id.,* **Ex. 2**, at MCO&SMM_000209. Despite the radiologist's finding of intact extensor mechanism,

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

subsequent imaging on June 22, 2023 showed "patella alta, with significant change from x-rays on 5/9" and findings "consistent with patellar tendon rupture." *Id.,* **Ex. 2**, at MCO&SMM_000150.

Plaintiff underwent a second surgery on June 26, 2023 for "left knee repair of infrapatellar tendon—primary, without graft." *Id.,* **Ex. 3**, at MHS_002347-002349. Following this second surgery, x-rays on August 31, 2023 again showed "severe patella alta with complete disruption of the extensor mechanism," suggesting the repair had failed. *Id.,* **Ex. 3**, at MHS_002057. Plaintiff ultimately underwent a third surgery on December 4, 2023, consisting of "left revision hinged total knee arthroplasty," "left knee extensor mechanism reconstruction," and "left knee patellectomy" (removal of the kneecap). *Id.,* **Ex. 3**, at MHS_001261-001265. This extensive revision surgery was noted to have "increased level of technical difficulty due to morbid obesity with BMI 40.92." *Id.,* **Ex. 3**, at MHS_001262.

E. **Claimed Post-Incident Damages**

Plaintiff's claimed medical expenses of $316,858.49 include substantial treatment for conditions a jury could reasonably find had no causal relationship to the cart incident, or could be attributed to pre-incident orthopedic issues and diagnoses:

*Right knee complaints and treatment*: Throughout 2024 and 2025, Plaintiff received ongoing treatment, physical therapy, and injections for progressively severe right knee arthritis, including Kellgren Lawrence Grade 4 knee arthritis diagnosed in July 2024. *Id.,* **Ex. 3**, at MHS_000636-000642. As noted above, Plaintiff had preexisting arthritis diagnoses and complained of right sided knee pain post-first surgery, but before the cart incident. *Id.,* **Ex. 2**, at MCO&SMM_000528; **Ex. 4**, at APT_000162, 000221.

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

*Bilateral hip pain and treatment:* Plaintiff received treatment for left hip pain beginning in 2023, before the cart incident, and continuing through 2025, including hip x-rays showing degenerative joint disease and receiving hip injections. *Id.,* **Ex. 5**, at A&IC_000080 (09/16/20 visit concerning hip issues); **Ex. 1**, at MLC_001449 (02/23/21 visit concerning hip issues); **Ex. 6**, at MC_003741, MC_003717-003719.

*Lumbar spine treatment:* Plaintiff underwent lumbar spine MRI in May 2025 showing "advanced degenerative disc at L1-L2 with obliteration of disc space," "moderate spinal canal narrowing and moderate bilateral neural foraminal stenoses at L4-L5 and L5-S1," and chronic degenerative listhesis. *Id.,* **Ex. 3,** at MHS_000265-000267. Prior to the incident, Plaintiff had a well-documented history of chronic low back pain, lumbago, and lumbosacral disc degeneration dating back to 2018. *Id.,* **Ex. 1,** at MLC_002395-002399 (05/15/18 treatment), MLC_002105-002113 (05/01/19 treatment), MLC_001448-001454 (02/23/21 treatment).

*Left ankle injury*: In November 2025, Plaintiff sustained a completely separate left ankle injury going up stairs, with MRI showing "severe peroneus longus tendinopathy with high-grade partial-thickness to near full thickness tearing." *Id.,* **Ex. 6,** at MC_003662-003664.

**III.  ISSUES PRESENTED**

1.  Whether genuine disputes of material fact exist regarding the legal causation and medical necessity of Plaintiff's claimed injuries as it relates to the subject cart incident? **Yes.**

**IV.  EVIDENCE RELIED UPON**

This Pleading relies upon the declaration of Skyler P. Urban in Support of Defendant Gatekeeper's Response in Opposition, supporting exhibits, and the documents already submitted on the record in this matter.

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

## V. ARGUMENT AND AUTHORITY

### A. Summary Judgment Standard

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56. "A district court must grant summary judgment 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Vandervert Constr., Inc. v. Allied World Specialty Ins. Co.*, 650 F. Supp. 3d 1132, 1137 (E.D. Wash. 2023). "A moving party who does not bear the burden of persuasion at trial will succeed by producing evidence that negates an essential element of the non-moving party's claim or defense or showing that the non-moving party does not have enough evidence to prove an essential element." *Id*. When the non-moving party presents competent evidence creating a factual dispute, summary judgment must be denied. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870 (9th Cir. 1982), *Bulthuis v. Rexall Corp.*, 789 F.2d 1315 (9th Cir. 1985).

In personal injury cases, causation is ordinarily a question of fact for the jury unless "the proof is insufficient to raise a reasonable inference that the act complained of was the proximate cause of the injury." *Lies v. Farrell Lines, Inc.*, 641 F.2d 765 (9th Cir. 1981). Similarly, the allocation of damages between a defendant's conduct and a plaintiff's preexisting conditions presents factual questions requiring jury determination. *Jordan v. Atchison, T. & S. F. R. Co.*, 934 F.2d 225 (9th Cir. 1991)

### B. Genuine Disputes of Material Fact Exist Regarding Causation of the Patellar Tendon Rupture

Plaintiff seeks to establish as a matter of law that the May 6, 2023 shopping cart incident caused her patellar tendon rupture and all subsequent treatment laid out in her motion. The

GATEKEEPER SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 8

3:25-CV-05380-MJP

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

medical records alone create genuine factual disputes regarding whether the rupture, subsequent surgeries, treatment, and pain complaints were caused by the cart contact, by surgical complications and the natural healing process, by Plaintiff's multiple risk factors, or by some combination thereof. For this very reason, the issue must be left to a jury.

On May 9, 2023, three days after the incident, x-rays showed only "a possible small patellar tip avulsion fracture" with the radiologist specifically noting the patella position was "unchanged from 2/8, without patella alta, suggesting intact extensor mechanism." Urban Decl., **Ex. 2,** at MCO&SMM_000209. The radiologist's assessment was that Plaintiff's extensor mechanism remained intact despite the alleged fracture. Yet by June 22, 2023, six weeks later, imaging showed "patella alta, with significant change from x-rays on 5/9" and findings "consistent with patellar tendon rupture." *Id.,* **Ex. 2,** at MCO&SMM_000150. Physical therapy notes document ongoing complaints, with reports of "constant, needling pain," inability to lift her leg without assistance, and episodes of the knee feeling like it would "give out." *Id.,* **Ex. 4,** at, APT_000229, APT_000241-000242; **Ex. 2**, at MCO&SMM_000146.

The question for the jury is whether this rupture resulted from the cart contact on May 6, or whether it developed during the subsequent six-week period due to other factors. A reasonable jury may find, based on records and testimony at trial, that this progression may be consistent with gradual failure of a compromised repair rather than immediate traumatic disruption and that Plaintiff's rupture resulted from the natural history of her complex surgical case rather than from external trauma. These competing inferences create genuine disputes of material fact that must be resolved by a jury, not by the court on summary judgment. *Lies v. Farrell Lines, Inc.*, 641 F.2d 765 (9th Cir. 1981).

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

**C.** **Plaintiff Cannot Establish Necessity and Reasonableness of Treatment Without Resolving Causation Disputes**

Even if Plaintiff could establish that the cart incident contributed to her patellar tendon rupture, she cannot demonstrate as a matter of law that her subsequent treatment was necessary and reasonable without first resolving the underlying causation disputes. The two additional surgeries Plaintiff underwent—the June 26, 2023 primary repair and the December 4, 2023 revision with patellectomy—may have been necessitated in part by Plaintiff's failure to comply with post-operative restrictions. Hospital records from December 2023 specifically document that Plaintiff was "non-compliant with being non-weight bearing." Urban Decl., **Ex. 3**, at MHS_001786. A reasonable jury could find that Plaintiff's non-compliance with weight-bearing restrictions caused or contributed to the failure of the June 2023 repair, necessitating the extensive December 2023 revision. Whether Plaintiff's own conduct intervened to cause additional surgeries presents a factual question for a jury.

**D.** **Substantial Portions of Plaintiff's Claimed Damages Bear No Causal Relationship to the Cart Incident**

Plaintiff seeks to establish the necessity of $316,858.49 in medical expenses as they relate to the alleged cart incident, yet the records reveal that substantial portions of this amount relate to conditions that bear no plausible causal connection to briefly striking her left knee against the shopping cart. The treatment includes treatment of:

*1.* *Right Knee Complaints and Treatment*

Plaintiff has received extensive treatment for right knee arthritis throughout 2024 and 2025, including multiple physical therapy visits, orthopedic consultations, x-rays, and intra-articular injections. In July 2024, Plaintiff was diagnosed with Kellgren Lawrence Grade 4 right knee arthritis, with "degenerative changes most severe in the patellofemoral and medial

GATEKEEPER SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 10

3:25-CV-05380-MJP

compartments." *Id.,* **Ex. 3,** at MHS_000639. Plaintiff's right knee condition is entirely unrelated to, and predates, the alleged incident affecting her left knee.

In October 2018, Plaintiff sought medical attention after falling directly onto her right knee, reporting a history of multiple falls onto that exact knee over the preceding two years. At that time, she presented with right knee erythema, localized swelling, shooting pains, and an active limp, which providers assessed as a right knee sprain or an acute flare of her underlying generalized osteoarthritis. *Id.,* **Ex. 1,** at MLC_002273-002280. Years later, but still prior to the cart incident, physical therapy records from March 23, 2023, note that Plaintiff "self-progressed too quickly and has developed right knee irritation" *Id.,* **Ex. 4,** at APT_000164-000165. On May 2, 2023, four days prior to the subject incident, clinical notes explicitly document that Plaintiff was "also having some issues with her R knee" *Id.,* **Ex. 4,** at APT_000221-000223.

Subsequent evaluations confirm that this pre-existing right knee pain had been steadily escalating since April 19, 2023, when Plaintiff was kneeling on the floor and felt a distinct pop and a "shift in her knee" upon standing, resulting in immediate weight-bearing difficulties and lateral joint line discomfort. *Id.,* **Ex. 2,** at, MCO&SMM_000219-000221.

*2. Spine and Back Orthopedic Complaint*

Plaintiff has undergone lumbar spine imaging and treatment for chronic low back pain and lumbar spinal stenosis. The May 2025 lumbar MRI showed "advanced degenerative disc at L1-L2 with obliteration of disc space" and "moderate spinal canal narrowing." These chronic degenerative findings preexisted the cart incident and cannot be attributed to it. *Id.,* **Ex. 3,** at MHS_000266. As early as May 2018, Plaintiff was actively treated for a formal chronic pain syndrome directly attributed to degenerative spine disease and structural degeneration of her lumbar or lumbosacral intervertebral discs. *Id.,* **Ex. 1,** at MLC_002395-002399. Her reliance on

GATEKEEPER SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 11

3:25-CV-05380-MJP

regular high-dose opioid medications (Norco) specifically to manage this severe "lumbosacral disc pain" and chronic lumbago was a constant fixture of her care throughout 2019, at which point her chiropractor noted that her vertebrae appeared "crushed from an old injury" *Id.,* **Ex. 1,** at MLC_002105-002113, MLC_001876-001884.

Between 2019 and 2022 alone, Plaintiff sought relief through well over 150 intensive chiropractic adjustments explicitly targeting cervical, thoracic, and lumbar segmental dysfunction *E.g., Id.,* **Ex. 5.** These chronic spinal episodes were frequently severe, causing acute bilateral leg weakness and radiating pain that traveled all the way down her legs. *Id.,* **Ex. 5,** at A&IC_000083. This long-standing lumbar condition routinely disrupted her gait stability and required external physical therapy interventions, where she was formally diagnosed with intervertebral lumbar disc degeneration. *Id.,* **Ex. 4,** at APT_000001-000003.

In the months directly leading up to the grocery store incident, Plaintiff's pre-existing back issues were documented as actively worsening. Clinical records note her lumbar pain was waking her up at night, severely limiting her ability to tolerate standing or walking, and radiating pain down her lower extremity that left her entirely unable to navigate stairs. *Id.,* **Ex. 1,** at MLC_000921-000928; **Ex. 4,** at APT_000082-000084, APT_000087-000088.

3.      *Left Hip Complaints and Treatment.*

Plaintiff received treatment for left hip pain including x-rays, orthopedic evaluation, and hip injections. X-rays showed "moderate degenerative joint disease with osteophyte formation, joint space narrowing, mild subluxation and deformity." *Id.,* **Ex. 6,** at MC_003741. As early as September 16, 2020, when Plaintiff sought chiropractic care for acute left hip discomfort. *Id.,* **Ex. 5,** at A&IC_000080. Right-sided hip trauma was also introduced into her medical history on April 15, 2021, when physical therapy logs recorded that Plaintiff fell over her dog and landed

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

heavily on her right hip, leaving both her right hip and knee severely sore. *Id.,* **Ex. 4,** at APT 31-33. By mid-2021, Plaintiff's baseline functional mobility was so compromised by these compounding complaints that clinical records show she was "able to walk only 50 feet due to knee/*hip pain,*" routinely required an ice pack when driving to reduce severe pain in her sitting bones, and presented with "intense left hip pain." *Id.,* **Ex. 3,** at MHS_005293-005301; **Ex. 4**, at APT_000057, APT_000060-000062.

In the consecutive months immediately leading up to her initial total knee replacement and the subsequent cart contact, Plaintiff's pre-existing hip pathology became aggressively symptomatic. Throughout late 2022, physical therapy evaluations continuously tracked severe back and hip pain radiating down her left lower extremity. *Id.,* **Ex. 4,** at APT_000082-000084, APT_000087-000088, APT_000102-000103. In early January 2023, providers formally diagnosed her with a structural "left knee and hip sprain." *Id.,* **Ex. 5,** at A&IC_000220. Plaintiff noted acute left hip pain and profound weakness with stepping or standing after attempting to walk at Costco. *Id.,* **Ex. 4,** at APT_000106-000107, APT_000109-000111.

Crucially, in the final weeks and days leading up to the subject incident, right-sided hip pathology re-emerged as a primary mobility constraint, with physical therapy logs from April 25, 2023, observing that her "R hip [was] sore today" and that her ability to climb stairs was heavily "limited by both her L knee and glute" *Id.,* **Ex. 4,** at APT_000186-000188. Plaintiff's hips were so unstable just prior to the cart contact that she required a formal clinical adjustment for a "left knee and left hip sprain" three days before the incident *Id.,* **Ex. 5,** at A&IC_000230. She continued to complain of ongoing left hip pain with lateral movements and stairs during her final physical therapy visit on May 4, 2023. *Id.,* **Ex. 4,** at APT_000224-000226.

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

*4.    Left ankle injury.*

In November 2025, more than two years after the cart incident, Plaintiff sustained a completely separate left ankle injury when "going up stairs and felt a pop." MRI showed "severe peroneus longus tendinopathy with high-grade partial-thickness to near full thickness tearing." *Id.,* **Ex. 6,** at MC_003662-003664.

A plaintiff cannot recover damages for medical treatment of conditions unrelated to the defendant's alleged conduct. Defendants is entitled to present evidence apportioning Plaintiff's claimed damages between those caused by the cart incident and those caused by preexisting conditions or subsequent unrelated injuries. This apportionment requires fact-intensive inquiry unsuitable for summary judgment. *Pac. Shores Props., Ltd. Liab. Co. v. City of Newport Beach*, 730 F.3d 1142 (9th Cir. 2013), *Jordan v. Atchison*, T. & S. F. R. Co., 934 F.2d 225 (9th Cir. 1991).

**E.    Plaintiff's Expert Testimony Does Not Eliminate Genuine Factual Disputes**

Plaintiff relies on declarations from Dr. Bruce Rolfe and Cloie Johnson to support her motion. However, the existence of Plaintiff's expert opinions does not eliminate genuine disputes of material fact where the underlying factual record supports competing inferences. Dr. Rolfe opines that the medical treatment Plaintiff received was necessitated by the May 6, 2023 incident. However, expert testimony "cannot create a genuine issue of material fact if it rests on assumptions that are not supported by evidence." *Stephens v. Union Pac. R.R. Co.,* 935 F.3d 852 (9th Cir. 2019).

The medical records themselves establish a narrative that could lead a reasonable jury to disagree with Dr. Rolfe's conclusions. Further, physician testimony at trial may also support an

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

alternative finding by the jury. The record also outlines that Plaintiff's extensive comorbidities may have played a significant role in her complications, and that her non-compliance with weight-bearing restrictions contributed directly to the need for revision surgery.

These competing facts raise genuine disputes that must be resolved through adversarial questioning at trial. Where reasonable minds could differ on medical causation, summary judgment is inappropriate. Messick v. Novartis Pharms. Corp., 747 F.3d 1193 (9th Cir. 2014), *Kennedy v. Collagen Corp.*, 161 F.3d 1226 (9th Cir. 1998), *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227 (9th Cir. 2017).

Here, the medical records themselves, independent of any expert opinion, create genuine disputes of material fact regarding causation, necessity, and apportionment. The factual record supports multiple reasonable inferences about what caused Plaintiff's complications and what treatment would have been necessary absent the cart incident. In viewing the evidence most favorably to the non-moving party, the medical records raise sufficient questions to preclude summary judgment and require jury determination.

## VI. CONCLUSION

While Plaintiff seeks to establish as a matter of law that all her medical treatment was necessary due to the alleged cart incident, a reasonable jury may reach a different conclusion. A reasonable jury, based on the records alone, could conclude that the patellar tendon rupture stemmed from Plaintiff's initial surgical complications or her non-compliance with medical restrictions post-surgery. A reasonable jury could also review the records and conclude that any post-incident complaints were not the result of the cart incident and subsequent surgeries, but rather the result of natural disease progression of Plaintiff's preexisting diagnoses.

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

A jury must determine exactly what portion of Plaintiff's extensive care was genuinely necessitated by the accident, if any, versus what was driven by her preexisting conditions and chronic comorbidities, particularly regarding her right knee, lumbar spine, hips, and ankle. Because reasonable minds can look at this medical history and arrive at vastly different conclusions regarding causation, necessity, and the proper apportionment of damages, these issues cannot be resolved on summary judgment. Accordingly, Defendants respectfully request that this Court deny Plaintiff's Motion for Partial Summary Judgment.

Dated this 29th day of June, 2026.

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS, P.S.

By: _____
Francis S. Floyd, WSBA No. 10642
Skyler P. Urban, WSBA No. 58761
3101 Western Ave, Suite 400
Seattle, WA 98121
206-441-4455
ffloyd@nwtrialattorneys.com
surban@nwtrialattorneys.com
*Attorneys for Defendant Gatekeeper Systems, Inc.*

GATEKEEPER SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 16

3:25-CV-05380-MJP

DECLARATION OF SERVICE

Pursuant to RCW 9A.72.085, I declare under penalty of perjury and the laws of the State of Washington that on the below date, I delivered a true and correct copy of the foregoing via the method indicated below to the following parties:

| | | |
|---|---|---|
| Robert C. Wilke<br>Ian M. Leifer<br>Gordon Thomas Honeywell, LLP<br>1201 Pacific Avenue, Ste. 2100<br>Tacoma, WA 98401<br>rwilke@gth-law.com<br>ileifer@gth-law.com | *Counsel for Plaintiff* | ☒ Via Email/E-Service<br>☐ Via U.S. Mail |
| John R. Barhoum<br>Sarah Tuthill-Kveton<br>Hanna R. Lukes<br>Samuel ben Behar<br>Chock Barhoum, LLP<br>121 SW Morrison St, Suite 500<br>Portland, OR 97204<br>john.barhoum@chockbarhoum.com<br>sarah@chockbarhoum.com<br>hanna.lukes@chockbarhoum.com<br>sam.behar@chockbarhoum.com | *Counsel for Defendants The Kroger Company and Fred Meyer Stores, Inc.* | ☒ Via Email/E-Service<br>☐ Via U.S. Mail |

DATED this 29th day of June, 2026.

*s/ Sophia E. S. Katinas*
Sophia E. S. Katinas, Legal Assistant

GATEKEEPER SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 17

3:25-CV-05380-MJP