HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LINDA LAROCQUE,<br><br>Plaintiff,<br><br>v.<br><br>THE KROGER CO., a foreign corporation doing business in Washington state; and, FRED MEYER STORES, INC., a foreign corporation doing business in Washington state, a/k/a TACOMA-STEVENS FRED MEYER; GATEKEEPER SYSTEMS, INC., a foreign corporation doing business in Washington state<br><br>Defendants. | NO. 3:25-cv-05380<br><br>PLAINTIFF LINDA LAROCQUE'S MOTIONS IN LIMINE |

## I. INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff Linda LaRocque moves for an order in limine instructing Defendants The Kroger Co., Fred Meyer Stores, Inc., Gatekeeper Systems, Inc., its attorneys, and witnesses not to directly or indirectly argue, mention, refer to, question concerning, or attempt to convey to the Court in any manner, any information regarding the matters addressed below without first obtaining the express permission of the Court after a full hearing; and instructing the Defendants' attorneys to instruct, warn and caution each and



LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

every one of the Defendants' witnesses to strictly follow the Order entered by this Court in connection with this motion.

This case arises out of injuries Plaintiff sustained at the Fred Meyer store located at 4505 S. 19th[h] Street, Tacoma, WA 98405.

Plaintiff asks the Court to exclude or limit all testimony, evidence, and/or inferences to specific topics and issues as outlined below.

## II. ARGUMENT

### A. Evidence of Collateral Source Applications and Benefits Should Be Excluded.

"The collateral source rule is a corollary to the mitigation doctrine which operates to deny an offset where a person, injured by the tortfeasor, receives compensation for the same injury from a source independent of the tortfeasor." *Wheeler v. Catholic Archdiocese*, 124 Wn.2d 634, 640 (Wash. 1994). Federal common law is in accord. Restatement (second) of Torts, § 924 cmt. c. Section 920A(2) of the Restatement explicitly addresses this issue, stating that "[p]ayments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." *Id.* § 920A(2); *see also McLean v. Runyon*, 222 F.3d 1150, 1155–56 (9th Cir. 2000).

In Washington, "the very essence of the collateral source rule requires exclusion of evidence of *other money received* by the claimant so the fact finder will not infer the claimant is receiving a windfall and nullify the defendant's responsibility." *Cox v. Spangler,* 141 Wn.2d 431, 440 (2000) (emphasis added) (citing *Johnson v. Weyerhaeuser,* 134 Wn.2d 795, 803 (1998)). "Thus, even when it is otherwise relevant, proof of such collateral payments is usually excluded, lest it be improperly used by the



LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

jury to reduce the plaintiff's damage award. . . . In this respect, courts generally follow a policy of strict exclusion." *Id.* Under Washington law, evidence of benefits from a collateral source, such as short term or long term disability insurance payments, and social security disability payments, are inadmissible. *Stone v. City of Seattle,* 64 Wn.2d 166, 172, 391 P.2d 179 (1964).

Defendants should not be allowed to reference applications for or receipt of benefits of any kind, including but not limited to Social Security or Medicare, during trial. *See* Fed. R. Evid. 401, 402, 403, 801, 602, 702.

### B. Fred Meyer Defendants Are Bound by the Testimony of their Rule 30(b)(6) Designee, Chad Peterson, and Testimony that Contradicts the Testimony of Mr. Peterson Should Not be Allowed.

Kroger and Fred Meyer Stores selected Chad Peterson to be their Fed. R. Civ. P. 30(b)(6) designee. Yet Peterson was unprepared to testify regarding more than half of the noticed topics. He repeatedly testified that he did not know, including with respect to:

- maintenance of the shopping carts,[1]
- the warning signs at this particular store, including when warning signs were placed, who installed the warning signs, or if missing warning signs were ever replaced;
- whether the warning signs are affixed to the outer door;
- whether the warning signs on the doors are obscured when open;
- whether unlocked carts lock after being unattended for a certain period of time;
- knowledge of all incidents occurring between January 1, 2020 to the present at the specific Fred Meyer Store at issue in which the antitheft mechanism locked

[1] Several minutes into the deposition and with the question pending on the designee's preparedness to testify about cart maintenance, Fred Meyer Defendants' counsel instructed the designee to turn off his camera and microphone so they could confer. (ECF 84:5 at p. 26:7 – 32:5).



LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

and caused injury to an employee or customer;

- Knowledge of all incidents occurring between January 1, 2020 to the present at all Washington state Fred Meyer Stores in which the antitheft mechanism locked and caused injury to an employee or customer;
- Knowledge of any facts surrounding the incidents that were identified in incident reports produced by Fred Meyer Defendants;
- Knowledge of what Fred Meyer Defendants did, or did not do, in response to any of the incidents that were identified in incident reports produced by Fred Meyer Defendants;
- Which wheels on the cart have the locking mechanism affixed;
- Whether the locking mechanism is installed on every shopping cart at the Fred Meyer store at issue in this lawsuit;
- The maintenance or service of shopping carts at the Fred Meyer store at issue,
- Knowledge of Ms. LaRocque's incident;
- Whether shopping carts that are missing a warning signs have the missing sign replaced;
- Whether a third party vendor removes carts from circulation that are missing warning signs;
- The identity of the security guard working at the time of the incident at issue in this lawsuit;
- When Fred Meyer first learned Ms. LaRocque was injured at Fred Meyer;
- Whether Fred Meyer created an incident report on the day Ms. LaRocque was injured;
- Whether Gatekeeper installed the Smart Wheel locking mechanisms on the carts;



LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

- The location of security guards at the store on the date of the incident;
- The knowledge of the Fred Meyer manager or managers working at the time of the incident at issue in this lawsuit;
- Why video surveillance footage was not maintained showing the incident at issue in this lawsuit;
- Whether Fred Meyer did anything to identify the actual shopping cart that injured Ms. LaRocque;
- Whether the specific shopping cart that injured Ms. LaRocque had a warning sign affixed or not;
- Whether a security guard notified any Fred Meyer employee that Ms. LaRocque was injured;
- The knowledge of any Fred Meyer employees who were responsible for completing an incident report at the time of the incident at issue in this lawsuit,
- Policies and procedures in place at the time of the incident regarding when a customer is injured by the antitheft shopping cart mechanism at any Washington Fred Meyer and/or Kroger store;
- Knowledge of any cost-benefit analysis of the cost of litigation for customers injured by the anti-theft shopping cart mechanism in comparison to the cost savings from preventing theft of items and/or theft of shopping carts from January 1, 2020 to present; and
- Fred Meyer Defendants' response to interrogatories and requests for production in this lawsuit and the factual basis for its responses to interrogatories.

(ECF 84-5, 30(b)(6) deposition transcripts excerpts at 24:15-47:11, 52:12-54:5; 55:21-21; 61:12-21; 62:1-7; 62:22–63:1; 63:2-24; 66:15-21; 66:22-25; 67:1-7;



LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

73:20-74:12; 74:13–75:2; 77:6-10; 77:11–78:7; 78:25–140:23). Fred Meyer Defendants' designee testified he did nothing to prepare for those topics and could not provide any information regarding those topics. (*Id.*).

"The purpose of a 30(b)(6) deposition is to gather information from a knowledgeable spokesperson of the defendant whose answers bind the corporation." *Arkema Inc. v. Asarco, Inc.*, No. C05-5087 RBL, 2007 WL 641847, at *2 (W.D. Wash., Feb. 23, 2007). The testimony of a Rule 30(b)(6) witness represents the collective knowledge of the corporation, not of the specific individual deponents. *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012). A Rule 30(b)(6) designee presents the corporation's position on the listed topics, and the corporation appears vicariously through its designees. *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996). A corporation has an affirmative duty to provide a witness who is able to provide binding answers on behalf of the corporation. *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1147 (10th Cir. 2007).

A corporation cannot and should not benefit by producing an unprepared witness. When a corporation's designee legitimately lacks the ability to answer relevant questions on listed topics and the corporation cannot better prepare that witness or obtain an adequate substitute, then the "we-don't-know" response is binding on the corporation and prohibits it from offering evidence at trial on those points – i.e., the lack of knowledge answer is itself an answer which will bind the corporation at trial. *QBE,* 277 F.R.D. at 690; *Fraser Yachts Fla., Inc. v. Milne*, No. 05-21168-CIV-JORDAN, 2007 WL 1113251, at *3 (S.D. Fla. Apr. 13, 2007); *Chick-Fil-A v. ExxonMobil Corp.*, No. 08-61422-CIV, 2009 WL 3763032, at *13 (S.D. Fla. Nov. 10, 2009).

The principle of unfair benefit from an unprepared 30(b)(6) witness applies here.



LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

Fred Meyer Defendants received advance notice of the subjects on which their corporate representative would be examined. They selected Peterson as their spokesperson. Peterson nevertheless admitted that he did nothing to prepare himself regarding numerous noticed topics and consequently could not provide Defendants' corporate knowledge. Defendants should not now be permitted to obtain at trial the very advantage that their Rule 30(b)(6) noncompliance denied Plaintiff during discovery—presenting previously undisclosed corporate knowledge after Plaintiff has lost the opportunity to examine Defendants' designated representative about it.

Accordingly, Fred Meyer Defendants should be precluded from offering testimony or other evidence that supplies corporate knowledge contrary to, or materially beyond, Peterson's Rule 30(b)(6) testimony on the noticed subjects for which he was admittedly unprepared. Permitting Fred Meyer Defendants to do otherwise would undermine Rule 30(b)(6), unfairly prejudice Plaintiff, and allow Fred Meyer Defendants to benefit from their failure to prepare their designated corporate representative. Such evidence should therefore be excluded under Rule 37(c), FRE 402, and 403.

### C. The Court Should Exclude Any Evidence Regarding Drug, Alcohol or Tobacco Use by Plaintiff or Her Friends and Family Members.

Ms. LaRocque anticipates Defendants may attempt to present evidence or argument related to a May 2019 chart note that Ms. LaRocque had opioid dependence in the past. No evidence exists that Ms. LaRocque was under the influence of any substance or medication at the time of the incident. Given its prejudicial nature and irrelevance, Defendants should be precluded from presenting any evidence regarding any substance abuse or dependence related to Ms. LaRocque, her friends, or family members. FRE 401, 403.



LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

D. Evidence Relating to Defenses not Alleged In Defendants' Answers or Never Produced in Discovery Responses Should be Excluded.

In addition to the initial disclosure of information required by Rule 26(a)(1), Ms. LaRocque has conducted discovery in this action in an effort to ascertain the basis, or bases, for Defendants' assertions of non-liability and defenses. It is unduly prejudicial at this time to allow Defendants to introduce any new defenses at the time of trial or to offer new information, which was not provided in the initial disclosures or in response to Ms. LaRocque's discovery requests. *See* Fed. R. Civ. P. 37(c)(1). To avoid an unjust result and undue prejudice, any evidence or testimony raising new defenses must be excluded from evidence at this trial.

Rule 37(c)(1) provides: "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."

E. Any Witnesses or Exhibits Not previously Disclosed During the Course of Discovery or Properly Identified Pursuant to the Pretrial Case Schedule, Unless Used Only for Impeachment Purposes.

Ms. LaRocque's has been following the Court ordered discovery schedule and the Court Rules with the attendant requirements of disclosure and supplementation of discovery responses. *See* Fed. R. Civ. P. 26(a) and 26(e). Defendants should not be permitted to call witnesses who were not disclosed and offered for deposition, or from presenting facts that were not disclosed during discovery or during deposition testimony. To do so would allow Defendants to obtain the advantage of withholding information supporting its claims, defenses and claimed damages and then to try the case by ambush



LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

without Ms. LaRocque being allowed to conduct related discovery or obtain information to counter the newly supplied evidence

**F. Defendants Should Not Be Permitted to Make Claims In Front of the Jury Without Evidence**

Ms. LaRocque anticipates Fred Meyer Defendants may attempt to make claims that are unsupported by foundational evidence, such as the total number of customers Fred Meyer Defendants service in Washington each year. Ms. LaRocque anticipates that Fred Meyer Defendants may argue that X millions of people visit Fred Meyer Defendants' stores and only a handful of customers are injured, thus making the shopping cart locking mechanism not unreasonably dangerous. However, that is in an incorrect framing of the issue because the vast majority of the patrons exit directly through the invisible pathway without a second thought. The real issue is how often patrons are injured when properly exiting the store and the shopping cart locks up. Fred Meyer Defendants have not offered any admissible evidence concerning this.

The Court should preclude such argument where no documentary or testimonial evidence has been produced in this case establishing the total number of customers. FRE 401, 402, 403. Nor is there evidence demonstrating what percentage of customers injured by the shopping cart mechanism actually report the injury.

Moreover, even if such evidence had been produced the argument that only a small proportion of customers being injured by the shopping cart mechanism renders it not an unreasonably dangerous condition is improper and prejudicial. Evidence of prior incidents under substantially similar circumstances is admissible for the purpose of proving that the shopping cart locking mechanism constitutes a dangerous condition. *Turner v. City of Tacoma*, 72 Wn.2d 1029, 1036, 435 P.2d 927 (1967). Fred Meyer



LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

Defendants should not be permitted to argue a large number of customers, who were never actually exposed to the hazard at issue, were not injured.

Here, the shopping cart locking mechanism only locks if: (1) the customer uses a shopping cart equipped with a shopping cart locking mechanism; (2) the customer attempts to steal items without paying by pushing out the shopping cart equipped with a shopping cart locking mechanism; (3) the customer does not purchase any items and attempts to exit the store with an empty cart equipped with a shopping cart locking mechanism; or (4) a customer uses a shopping cart equipped with a shopping cart locking mechanism and the device malfunctions.

Defendants, should not be permitted to argue that X millions of customers visit Fred Meyer Defendants' stores and are not injured without evidence of the percentage of those customers who use shopping carts outfitted with the locking mechanism, the percentage of those customers who attempt to steal items using a shopping cart outfitted with the locking mechanism, the percentage of those customers who attempt to exit the store with an empty cart equipped with a shopping cart locking mechanism, the percentage of those customers who use a shopping cart equipped with a shopping cart locking mechanism and the device malfunctions. Notably, Ms. LaRocque attempted to obtain this information during Fred Meyer Defendants' 30(b)(6) disposition, and as discussed above, Fred Meyer Defendants' designee was unprepared to testify about the related designated topics. Because Fred Meyer Defendants have not offered any admissible evidence concerning how often customers exposed to the locking device hazard exit the store and the shopping cart locks up, they should be precluded from arguing a large number of customers, who were never actually exposed to the hazard at issue, were not injured.



LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

### G. Defendants Should Be Precluded from Introducing or Referencing Their Excluded Experts' Opinions or Offering Expert Opinions Through Lay Witnesses or Attorney Argument

Defendants' expert witnesses were excluded. Defendants therefore should not be permitted to introduce, reference, summarize, or otherwise place before the jury any report, opinion, analysis, conclusion, or statement from their excluded experts. This includes the experts' written reports, curricula vitae, demonstrative materials, calculations, testing, measurements, photographs prepared for purposes of their analyses, or other late-disclosed opinions. FRE 402, 403, 701, 702.

Nor should Defendants be permitted to circumvent the exclusion of their experts by eliciting expert-level opinions from fact or lay witnesses. Under FRE 701, lay opinion testimony is permissible only when it is rationally based on the witness's perception, helpful to the jury, and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The distinction is particularly important here because Defendants retained experts to address specialized subjects, those experts were excluded, and Defendants should not be permitted to introduce the substance of those excluded opinions through another witness who was never disclosed or qualified as an expert.

This limitation is particularly important with respect to biomechanics and medical causation. Ms. LaRocque did not retain a biomechanical expert. Defendants retained a biomechanical expert who prepared a reconstruction and offered opinions concerning the mechanism of the incident and Ms. LaRocque's claimed injuries. That expert was excluded. Ms. LaRocque anticipates Defendants may nevertheless attempt to elicit testimony or argue that the incident could not have occurred as Ms. LaRocque describes, that the forces generated by the incident were insufficient to cause her knee injury, or that her knee could not have been injured by striking or interacting with the shopping cart in the manner she describes.



LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

Those are not matters of permissible lay opinion. They depend on scientific, technical, or specialized knowledge concerning biomechanics, including the forces generated during the incident, the movement and response of the human body, the dimensions and physical characteristics of the shopping cart, surface interaction, gait and walking dynamics, and the relationship between a particular mechanism and the resulting injury. FRE 701, 702. Defendants should therefore be precluded from presenting testimony or other evidence concerning such subjects through lay or fact witnesses.

For the same reason, Defendants should be precluded from using attorney argument to place excluded expert opinions before the jury. Counsel may argue reasonable inferences from admitted evidence, but counsel may not supply the jury with scientific or medical conclusions for which there is no admissible evidentiary foundation. Defendants therefore should not be permitted to argue, expressly or implicitly, that the physical forces involved were insufficient to cause Ms. LaRocque's injury, that her body could not have moved as she describes, that the shopping cart could not have caused the claimed mechanism of injury, or that the incident should have occurred differently based on principles of biomechanics or accident reconstruction.

Similarly, absent admissible expert testimony providing the necessary foundation, Defendants should be precluded from eliciting specialized medical opinions from lay witnesses or arguing that Ms. LaRocque's diagnosed knee injury could not have been caused by the incident. Although Defendants remain free to cross-examine admissible medical witnesses concerning their opinions and the factual bases for them, Defendants cannot fill an evidentiary gap created by the exclusion of their experts with counsel's own medical or biomechanical opinions.

Accordingly, the Court should order that Defendants may not: (1) introduce or reference any report, opinion, conclusion, or other material attributable to their excluded



LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

experts; (2) elicit scientific, technical, biomechanical, accident-reconstruction, or specialized medical opinions from lay or fact witnesses; (3) present a reconstruction of the incident based on scientific or technical principles; or (4) argue to the jury scientific, biomechanical, or medical conclusions that are unsupported by admissible expert testimony. FRE 402, 403, 701, 702.

### H. Defendant Gatekeeper Should Not Be Permitted to Argue Plaintiff's Human Factors Expert Does Not Meet the Reasonable Consumer Expectation Test Simply Because Levi Dixon Was Not Aware of the Term of Art for that Legal Standard

A plaintiff may employ the 'consumer expectations' test, which requires the plaintiff to show that the product was 'unsafe to an extent beyond that which would be contemplated by the ordinary consumer.'" *Id*. at 326-27 (*citing Falk v. Keen*, 113 Wn.2d 645, 654, 782 P.2d 974 (1989); RCW 7.72.030(3)).

The consumer expectations test recognizes that certain situations exist where the type of accident itself may establish a defect:

> In the type of case in which there is no evidence, direct or circumstantial, available to prove exactly what sort of manufacturing flaw existed, or exactly how the design was deficient, the plaintiff may nonetheless be able to establish his right to recover, by proving that the product did not perform in keeping with the reasonable expectations of the user.

*Pagnotta v. Beall Trailers of Or., Inc.*, 99 Wn. App. 28, 37, 991 P.2d 728 (2000).

Relevant considerations under the consumer expectations test include "[t]he relative cost of the product, the gravity of the potential harm from the claimed defect and the cost and feasibility of eliminating or minimizing the risk." *Falk*, 113 Wn.2d at 649. Additionally, "'[i]n other instances the nature of the product or the nature of the claimed defect may make other factors relevant to the issue.'" *Id.*

This Court denied Gatekeeper's motion for summary judgment finding that Ms. LaRocque presented sufficient evidence to create a question of fact on both her



LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

failure to warn and design defect product liability claims against Gatekeeper. The Court pointed to the fact that Mr. Dixon's analysis was, substantively, a consumer expectation theory, even if Mr. Dixon was not aware of the precise terminology of that legal test.

Gatekeeper should not be permitted to argue that Mr. Dixon's analysis fails to meet the consumer expectation test simply because he previously testified he was unaware of that term of art.

### I. All parties Should be Required to Provide Twenty-four Hours' Notice to Opposing Counsel of Their Intent to Call Witnesses at the Time of Trial.

Pursuant to FRE 615, Ms. LaRocque requests that the Court exclude non-party witnesses from the courtroom until after they have testified. Exclusion will prevent witnesses from tailoring their testimony based on the testimony of other witnesses and will promote the integrity of the fact-finding process. The parties should further be instructed not to disclose the substance of trial testimony to witnesses who have not yet testified.

### J. Exclusion of All Non-party Witnesses from the Courtroom During the Course of Trial.

To ensure compliance with the Court's evidentiary rulings and avoid inadmissible evidence being presented to the jury, each party should be required to advise its witnesses of all applicable orders in limine before the witnesses testify. The parties should further be instructed to ensure that their witnesses comply with those orders during direct and cross-examination.

### K. Prohibition of Witnesses Commenting on the Credibility of Other Witnesses.

Determining the credibility of witnesses is exclusively the province of the jury. Witnesses therefore should not be permitted to testify that another witness is truthful, untruthful, credible, mistaken, or lying. See Fed. R. Evid. 401, 403. Witnesses may testify



LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

concerning facts within their personal knowledge and, where otherwise admissible, offer appropriate opinion testimony, but they should not be permitted to tell the jury how it should assess another witness's credibility.

### L. Duty to Inform Witnesses of Motion in Limine Orders.

To ensure compliance with the Court's evidentiary rulings and avoid inadmissible evidence being presented to the jury, each party should be required to advise its witnesses of all applicable orders in limine before the witnesses testify. The parties should further be instructed to ensure that their witnesses comply with those orders during direct and cross-examination.

### M. Defendants Should Not be Permitted to Mislead the jury and Discuss Irrelevant Municipal Codes.

Fred Meyer Defendants should be precluded from referencing or mischaracterizing municipal ordinances from other jurisdictions concerning shopping-cart containment. In their summary judgment briefing and at oral argument, Defendants repeatedly represented that municipalities have made legislative determinations that the wheel-locking system at issue is safe. Defendants argued that municipalities have "legislatively recognized that wheel locking technology is a legitimate, safe, effective shopping cart containment," and that these legislative judgments establish that the system is not unreasonably dangerous.

The ordinances do not support that representation. As the Court recognized during oral argument, the cited ordinances concern keeping shopping carts on store property, not whether a retailer may configure a system to unexpectedly lock a cart as a customer exits the store. The Court specifically asked defense counsel whether any ordinance requires carts "to have them activated when they leave the store," observing that the



LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

ordinances "seem to go to keeping the carts on the store's property for the public safety concerns that you cited, not about retail theft at the store."

Defense counsel ultimately conceded both points. First, counsel acknowledged that Tacoma—the jurisdiction governing this Fred Meyer store—"does not have a municipal ordinance requiring" the system. Second, when questioned about the Shelton ordinance, counsel admitted that it merely requires a wheel-locking system and "doesn't say when those are activated." Indeed, counsel further acknowledged that the municipalities do not prescribe the location of the checkpoint and that "[i]t is up to the stores to determine where the checkpoints are."

That distinction is critical. Plaintiff does not contend that all electronic cart-containment systems are inherently dangerous. The issue is whether Defendants' particular configuration and operation of this system—causing a cart to abruptly lock at the store exit when a customer properly leaves without passing through a checkout lane—created an unreasonable risk of injury. The cited municipalities made no legislative determination approving that configuration. To the contrary, Defendants acknowledged that Gatekeeper offers a different configuration that locks carts at the perimeter of the property rather than at the store exit.

Allowing Defendants to tell the jury that municipalities have approved, encouraged, or mandated the system at issue would therefore be both irrelevant and misleading. It would falsely suggest that governmental entities evaluated and approved the safety of Defendants' decision to place the locking checkpoint at the store exit when the cited ordinances address a different concern and impose no such requirement. Defendants should be precluded from referencing these inapplicable ordinances or suggesting that they establish that Defendants' particular configuration was government-



LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

approved, compliant with an applicable legal requirement, reasonably safe, or evidence of due care. FRE 401, 402, 403.

## III. CONCLUSION

For the reasons set forth above, Ms. LaRocque respectfully requests that this Court grant her Motions in Limine. The Court should further order that Defense counsel provide a copy of the order granting these motions to all witnesses and ensure that they follow the Court's rulings.

I certify pursuant to LCR 7 I have attempted to confer in good faith with Defendants to resolve which matters are really in dispute.

DATED this 31st day of August 2026.

GORDON THOMAS HONEYWELL LLP

By: ______________________________

Robert C. Wilke, WSBA No. 49937
rwilke@gth-law.com
Ian M. Leifer, WSBA No. 56670
ileifer@gth-law.com
Attorneys for Plaintiff



LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

## DECLARATION OF SERVICE

I hereby declare that on August 31, 2026, in Tacoma, Washington, I caused the foregoing affixed document to be served on the following parties in the manner indicated herein:

| | |
|---|---|
| John R. Barhoum, WSBA #42776<br>Sarah Tuthill-Kveton, WSBA #51801<br>Hanna R. Lukes, WSBA #62610<br>Chock Barhoum LLP<br>121 SW Morrison Street, Suite 500<br>Portland, OR 97204<br>john.barhoum@chockbarhoum.com<br>sarah@chockbarhoum.com<br>hanna.lukes@chockbarhoum.com<br>michelle.heilbrun@chockbarhoum.com<br>devon.haggart@chockbarhoum.com<br>e-service@chockbarhoum.com | ☐ Via Legal Messenger<br>☐ Via U.S. Mail<br>☒ Via CM/ECF E-Filing<br>☒ Via Email |
| Francis S. Floyd, WSBA No. 10642<br>Skyler P. Urban, WSBA No. 58761<br>Floyd, Pflueger, Kearns, Nedderman, & Gress, P.S.<br>3101 Western Avenue, Suite 400<br>Seattle, WA 98121<br>ffloyd@nwtrialattorneys.com<br>surban@nwtrialattorneys.com<br>ecampbell@nwtrialattorneys.com<br>skatinas@nwtrialattorneys.com | ☐ Via Legal Messenger<br>☐ Via U.S. Mail<br>☒ Via CM/ECF E-Filing<br>☒ Via Email |

I DECLARE UNDER THE PENALTY OF PERJURY OF THE LAWS OF THE STATE OF WASHINGTON THAT THE FOREGOING IS TRUE AND CORRECT.

/s/ Christine L. Scheall
Christine L. Scheall
Paralegal
cscheall@gth-law.com



LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2200
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565