IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| LINDA LAROCQUE,<br><br>Plaintiff,<br><br>v.<br><br>THE KROGER CO., a foreign corporation doing business in Washington state; and, FRED MEYER STORES, INC., a foreign corporation doing business in Washington state, a/k/a TACOMA-STEVENS FRED MEYER, GATEKEEPER SYSTEMS, INC., a foreign corporation doing business in Washington state<br><br>Defendants. | Civil Case No. 3:25-cv-05380-TMC<br><br>**DEFENDANTS FRED MEYER & THE KROGER CO.'S MOTIONS IN LIMINE**<br><br>Noting Date: Friday 10/2/2026<br><br>*Oral Argument Requested* |

**MOTION 1**

**(Any Evidence of Subsequent Incidents is Not Admissible)**

Evidence is relevant if it tends to make a fact more or less probable than it would be without evidence and is a fact of consequence in determining the action. FRE 401. Evidence must be relevant to be admissible. FRE 402.

Where the negligence of a storekeeper is predicated upon his failure to keep his premises in a reasonably safe condition, it must be shown that the condition has either been brought to his notice or has existed for such time as would have afforded him sufficient opportunity, in the exercise of

ordinary care, to have made a proper inspection of the premises and to have removed the danger. *Pimentel v. Roundup Co.,* 100 Wn.2d 39, 40, 666 P.2d 888, 888 (1983).

As such, in this context, Plaintiff must offer evidence that Defendant knew of the allegedly unreasonably dangerous condition **prior to the subject incident on May 6, 2023**. Therefore, any event occurring subsequent to the subject incident on May 6, 2023 is irrelevant as to whether or not, at the time of the event, that Defendant had notice. As such, incident reports, testimony, or other evidence for alleged incidents subsequent to the May 6, 2023 incident are inadmissible under FRE 401 and FRE 402. The are irrelevant, have zero probative value as to any material fact, would confuse the jury, and would substantially prejudice Defendant because they do not tend to prove or disprove whether or not Defendant had notice of the alleged dangerous condition on the date of Plaintiff's alleged injury. As such, Defendant respectfully requests this Court exclude any evidence of subsequent incidents.

## MOTION 2

### (Any Evidence of Prior Incidents is Not Admissible)

Plaintiff should not be permitted to introduce evidence of incidents occurring prior to the subject-incident because, pursuant to FRE 401, FRE 402, and FRE 403, the incidents should be excluded as they are irrelevant or minimally probative as they did not occur under the same or similar circumstances of the subject-incident, and inject highly prejudicial, confusing, and unresolvable collateral issues, and because Plaintiff cannot lay a proper foundation.

Evidence is relevant only if it has a tendency to make a fact more or less probable and that fact is of consequence in determining the action. FRE 401. Irrelevant evidence is not admissible. FRE 402. Relevant evidence may be excluded if its probative value is substantially outweighed by dangers including unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needless cumulation. FRE 403.

Evidence of other accidents is usually not admissible to establish notice of a dangerous condition because collateral issues are thereby interjected into the case. However, evidence of a prior accident that occurred under the same or substantially similar circumstances is admissible for the purpose of showing a dangerous condition and the defendant's notice of such

condition. *Davis v. Globe Machine Manufacturing Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984); *Blood v. Allied Stores Corp.*, 62 Wn.2d 187, 189, 381 P.2d 742 (1963); *Turner v. City of Tacoma*, 72 Wn.2d 1029, 1036, 435 P.2d 927 (1967); *Toftoy v. Ocean Shores Properties, Inc.*, 71 Wn.2d 833, 835, 431 P.2d 212 (1967); *Tonning v. Northern Pacific Railway Co.*, 180 Wash. 374, 378, 39 P.2d 1002 (1935). Substantial similarity is required because evidence of dissimilar accidents lacks the relevance required for admissibility under Fed. R. Evid. 401 and 402. *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1104 (9th Cir. 1991).

Substantial similarity is a high bar requiring exacting specificity, and lack of information bars admissibility. *Blood v. Allied Stores Corp.*, 62 Wn.2d at 189. For example, In *Blood,* a plaintiff was injured by an escalator after she was unable to extricate herself from the escalator. *Id.* at 188. Plaintiff attempted to introduce records of prior similar incidents where fingers or clothes were caught in the same escalator that injured plaintiff, but they were excluded as the Court lacked enough information to conclude whether or not the incidents were substantially similar. *Id.*

In contrast, in *Toftoy v. Ocean Shores Properties, Inc.*, 71 Wn.2d 833 (1967), a plaintiff sued for injuries sustained when he fell dancing on a dance floor due to a crack, which plaintiff alleged was a known defect. The prior incidents were admitted because they were deemed substantially similar in location, mechanism of injury, and proximity. *Id*. at 835. Further, plaintiff provided the trial court with myriad evidence to address and dispel any collateral issues that arose due to the introduction of prior incidents. *Id.* Plaintiff was able to demonstrate that they were substantially similar by authenticating photographs of the crack in the floor, offering evidence that two months prior, the floor was cracked and separating in the exact same spot, offering testimony of several witnesses present for both accidents, and offering testimony from multiple witnesses who testified that the floor's condition occasionally separated and left cracks in that area, that one person suffered serious injury on the dance floor two months earlier from tripping on the same crack, and others had caught heels in the crack and had stumbled. *Id.* at 835-36. *Toftoy* suggests prior incidents can only be considered substantially similar if they are not too remote in time or circumstance, involve the same location, and result from the same mechanism of injury. *Id.*

In other words, to establish a proper foundation for admitting prior incidents, the proponent must offer enough evidence to show that the material facts are substantially similar, or that specific physical, environmental, and situational conditions during the prior events were substantially similar to those prevailing at the time of the subject-accident. Plaintiff cannot do so here, so the evidence of prior incidents must be excluded.

a. *Any Evidence of Prior Incidents at Other Fred Meyer Locations is Inadmissible as they are not Substantially Similar*.

Any incident report for incidents occurring at another premises cannot be considered to be substantially similar as they do not involve the same location, and there is not enough information to determine whether or not the specific physical, environmental, and situational conditions are sufficiently similar to the subject-incident. Defendant is unable to find any case in Washington where a party was permitted to present evidence of incidents occurring in a separate location to support that a premises was on notice of a dangerous condition at the subject-premises. Indeed, all cases Defendant could locate where a party sought to introduce evidence of prior similar incidents to prove notice of negligence suggested that the same location is necessary to be considered "substantially similar.". *See, e.g., Blood v. Allied Stores Corp.*, 62 Wn.2d 187 (1963) (The court considered whether or not prior incidents on the same escalator were admissible); *Turner v. City of Tacoma*, 72 Wn.2d 1029, 1036, 435 P.2d 927 (1967)(The court considered whether or not prior incidents involving people walking on the same sidewalk and striking the same fire escape were admissible) *Toftoy v. Ocean Shores Properties, Inc.*, 71 Wn.2d 833, 835, 431 P.2d 212 (1967) (The court considered whether or not prior incidents involving the same crack in the same spot of a dance floor were admissible); *O'Dell v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 6 Wn. App. 817, 496 P.2d 519 (1972) (The court determined whether or not prior incidents at the same railroad crossing for travelers going in the same direction were admissible); and *Boeing Co. v. State*, 89 Wn.2d 443, 572 P.2d 8 (1978) (The court considered whether or not prior incidents occurring at the same underpass were admissible).

Here, any incident report or testimony regarding incidents occurring at other Fred Meyer locations are irrelevant and inadmissible because they do not tend to prove or disprove the events

at the subject premises, and are not substantially similar enough to be admitted as they did not occur at the subject premises. This exclusion makes sense, as it is Plaintiff's burden to prove that Defendant had notice of a dangerous condition at the subject-premises, and Defendant cannot be considered to have actual or constructive notice of a dangerous condition on their premises due to alleged unsafe conditions on a separate premises. Similarly, the *Pimental* exception applies only to the existence of unsafe conditions on the premises that are reasonably foreseeable. *Tavai v. Walmart Stores, Inc.*, 176 Wn. App. 122, 125, 307 P.3d 811, 813 (2013). As such, evidence tending to prove or disprove whether or not a condition at a specific premises was unsafe, or whether or not a landowner of a specific premises was on notice must come from the subject premises to be admissible, and must involve substantially similar circumstances.

The admission of such incidents would inject countless numbers of collateral issues for evidence with zero relevance to determining whether or not Defendant was on notice of a dangerous condition at the subject-location. For example, it is unknown what kind of shopping carts the other locations use, whether the material of the cart is the same, if the measurements of the cart is the same, if the other location uses the same wheel lock system, or if they follow different policies or procedures. Therefore, the incidents from other locations has zero probative value as to any material fact at issue in this case, would undoubtedly confuse the jury, and would severely prejudice Defendant. As such, Defendant respectfully requests that pursuant to rule 401 and 402, this Court disallow any evidence of prior incidents occurring at any property other than the subject-incident.

b. <u>*Any Evidence of Prior Incidents Involving Wheel Lock Malfunctions are Inadmissible as they are not Substantially Similar*</u>.

Any incident report for incidents occurring due to the wheel lock device malfunctioning cannot be considered to be substantially similar, and are irrelevant to this subject-incident. Here, Plaintiff alleges she was injured after she bypassed the self-check out lanes and attempted to exit the store. *See* Pltfs 1st Am. Compl. ¶ 8. The cartwheel locked at the exit, allegedly causing injury. *Id.*at 13. All parties agree that the wheel lock system functioned exactly as intended, and any injury caused by a malfunction cannot be considered substantially similar in the context of premises

liability as Plaintiff is required, at minimum, to demonstrate that Fred Meyer was on notice that the cart could function exactly as intended and cause injury.[1] As such, any incident or witness testimony pertaining to injuries allegedly incurred due to a malfunction of the wheel lock system would inject irrelevant, collateral issues, and has zero probative purpose as to whether or not Fred Meyer was on notice of the alleged dangerous condition. It would confuse the jury and severely prejudice Defendant. As such, Defendant respectfully requests this Court exclude any evidence of prior incidents involving scenarios where the cart system malfunctioned as it is irrelevant and inadmissible under FRE 401 and FRE 402.

c. *<u>Any Evidence of Linda Creamer-Duncan's Incident is Inadmissible Because it is Not Substantially Similar</u>*.

As explained above, to be substantially similar, the accident must occur at the same location. But, merely occurring at the same location is not sufficient enough information to conclude the incident was substantially similar. It can be inferred from Washington law that substantial similarity, in a premises liability context, requires the incident to occur at the same location, but standing alone, is insufficient to conclude that a prior incident is substantially similar.

There is only one incident involving injuries allegedly incurred by the wheel lock system at the subject premises that occurred prior to Plaintiff's incident, but because it is not substantially similar, it must be excluded. Linda Creamer-Duncan alleges she was injured at the subject-location after she twisted her knee attempting to move a cart after the wheels had locked up, but there is zero evidence that this occurrence is substantially similar enough to be admitted. STK Decl. ¶ 2, Ex. 1; ¶3, Ex.2.

The incident report alleges that the patron was injured because she tried to move a cart once it had locked. Indeed, the patron reported that she injured her knee not because the cart she was pushing unexpectedly locked up, but because she attempted to push the stationary cart after it had stopped with her momentum, which twisted her knee. *Id.* There is no evidence to determine whether or not the injury occurred due to a malfunction of the wheel lock device, or whether the

[1] Defendant's position is that Plaintiff must demonstrate that the store was on notice that a patron would utilize the cart as a mobility device, not simply that the cart caused injury when it functioned as designed.

wheel lock system functioned as designed, so it should not be admitted as the probative value does not outweigh the prejudice to Defendant.

Further, the mechanism of injury described in the incident report is not the substantially similar, and the incident occurred approximately three years prior to the subject-incident. Plaintiff Larocque alleges she was injured due to the cart suddenly and abruptly stopping, causing her to run her knee into the cart, causing injury. *See* Pltf's 1st Am.Compl. ¶ 13. Ms. Creamer-Duncan was *not* injured by the cart abruptly or suddenly stopping, but rather by attempting to move the cart *after* it came to a stop. STK Decl. ¶ 3, Ex. 2, As explained in *Toftoy*, because the mechanism of injury in Ms. Creamer-Duncan's incident report differs from the mechanism of injury in subject-incident, and because the report was from 3 years prior, it is inadmissible.

The information before the Court unequivocally establishes that Ms. Creamer-Duncan's alleged incident is not substantially similar to the subject-incident. However, even if the scant evidence contained in the incident report was favorable to Plaintiff, it still cannot be admitted because there is not enough evidence to determine whether or not the incident was sufficiently similar. **This is a fact intensive inquiry, and the Supreme Court made it clear that the paucity of information regarding other similar incidents disables the court from assessing substantial similarity, which forecloses any argument about admissibility.** *Blood v. Allied Stores Corp.*, 62 Wn.2d 187, 189, 381 P.2d 742 (1963). This is especially true when the party seeking to proffer the evidence was given every opportunity for thoroughly meeting collateral requirements from the prior incident reports. *Id.* at 189. In this instance, the Court has ordered broad and expansive discovery, permitting Plaintiff to leave no stone unturned.

Any incident report, standing alone, is insufficient to establish whether or not the prior incident is substantially similar enough to be admissible. Ms. Creamer-Duncan's incident report is especially insufficient because there is no evidence to determine whether or not the injury occurred due to a malfunction of the wheel lock device and because it establishes that the mechanism of injury was different. Plaintiff does not intend to offer any testimony from Ms. Creamer-Duncan at trial, so no attempt has been made to demonstrate that the significant collateral issues associated with admitting this report are outweighed by its probative value. STK Decl. ¶ 4,

Ex. 3; ¶5, Ex. 4. There is only minimal evidence about Ms. Creamer-Duncan's incident, and the meager evidence the Court may consider suggests it is *not* substantially similar. Therefore, it must not be admitted.

Here, Plaintiff has undoubtedly failed to offer evidence demonstrating that Ms. Creamer-Duncan's incident is substantially similar enough to be admissible to prove Defendant's negligence, and the admission of this report would inject numerous collateral issues, confuse the jury, and severely prejudice Defendant. As such, under FRE 401 and FRE 402, it must be excluded.

**MOTION 3**

**(The Limited Johnson/Pimental Exception Does Not Apply)**

There should be no jury instruction regarding the limited *Pimental* exception. The limited *Pimental* exception cannot apply here as there is no evidence that Defendant was on notice because the dangerous condition is continuous or foreseeably inherent in the nature of Defendant's business or mode of operation. *Galassi, 565 P.3d at 119* (quoting *Pimentel v. Roundup Co., 100 Wn.2d 39, 666 P.2d 888 (Wash. 1983)*) ("[W]e have recognized an exception" to the "traditional notice requirement" where "the nature of the proprietor's business and [its] methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable."). This is often referred to as the *Pimentel* exception.

The Washington Supreme Court has clarified, however, that "[d]etermining whether an unreasonably dangerous condition exist[s] is not automatic. *Johnson v. Liquor and Cannabis Board, 197 Wn.2d 605, 486 P.3d 125, 134 (Wash. 2021)*. The fact Plaintiff was allegedly injured by the shopping cart is not enough. Plaintiff must produce evidence that it may reasonably be inferred that the nature of Defendant's business and its methods of operation are such that the unsafe condition is reasonably foreseeable under the factual circumstances of this case. *see, e.g., Carlyle v. Safeway Stores, Inc.* 78 Wn. App. 272, 896 P.2d 750 (Wn. App. 1995), reviewed denied, 907 P.2d 297 (1995)

The reasonable foreseeability exception applies equally to falling merchandise, slip-and-falls, or other incidents where business invitees are injured by alleged unsafe conditions. The exception is not a per se rule, and there is no fact pattern to which it automatically applies. For the

exception to apply, the plaintiff must prove they were injured by specific unsafe conditions that are continuous or foreseeably inherent in the nature of the business or mode of operation. The exception is merely a way for the plaintiff to prove cause in fact. It does not shift the burden to the defendant to disprove negligence or otherwise relieve the plaintiff's burden to prove every element of their claim. *Galassi v. Lowe's Home Ctrs., LLC*, 4 Wn.3d 425, 427, 565 P.3d 116, 118 (2025).

To invoke the Pimentel exception in a premises liability action, a plaintiff must present some evidence that the unsafe condition in the particular location of the accident was reasonably foreseeable. *Tavai v. Walmart Stores, Inc.*, 176 Wn. App. 122, 125, 307 P.3d 811, 813 (2013). The Pimentel rule does not apply to the entire area of the store in which customers serve themselves. There must be a relation between the hazardous condition and the self-service mode of operation of the business. *Tavai v. Walmart Stores, Inc*., 176 Wn. App. 122, 125, 307 P.3d 811, 813 (2013).

*Tavai* demonstrates just how fact-specific the inquiry must be to determine that an alleged dangerous condition was reasonably foreseeable. In *Tavai*, a plaintiff argues that she presented sufficient evidence from which a jury could reasonably find the *Pimentel* exception satisfied. She relies primarily on the following evidence: Walmart sells bottled water and groceries, she fell about 15 feet from a check-out counter, and there were 51 other reported occurrences of slip-and-fall injuries at the store between 2005 and 2007. Concerning the 51 incidents, 23 were related to liquid on the floor. Seven of the complaints concerned slips on wet floors at a check-out lane. *Id.*

The problem with Tavai's evidence is that it does not show a relation between a self-service mode of operation at Walmart and the wet floor she slipped on. Tavai was 15 feet away from the check-out counter so the hazard that usually arises from customers unloading groceries was not present. *See O'Donnell*, 107 Wn. App. at 859 ("in the check-out area, [customers] handle and transfer grocery items from one place to another, presenting an inherent risk of items dropping on the floor and creating a hazard"). While Tavai presented evidence that other people slipped in the store in the past, she did not provide evidence that other people slipped in the particular area she slipped in. This is inadequate. "[T]o invoke the *Pimentel* exception; a plaintiff must present some evidence that the unsafe condition in *the particular location* of the accident was reasonably foreseeable." *Arment*, 79 Wn. App. at 698 (emphasis added). *Tavai v. Walmart Stores, Inc.*, 176

Wn. App. 122, 131-32, 307 P.3d 811, 816 (2013).

Here, the *Pimental* exception cannot be applied. First, there is no evidence that the nature of Fred Meyer's business is to provide customers carts to safely navigate their store in lieu of using canes or other mobility devices. Indeed, the nature of Fred Meyer's operating methods as it pertains to shopping carts is to provide shopping carts to patrons to put merchandise in. Fred Meyer does not provide carts to patrons to utilize as mobility devices. There is no evidence that it was reasonably foreseeable that a patron would utilize the shopping cart as opposed to other devices designed for mobility and balance, like Plaintiff's cane, to navigate the store. This is punctuated by the fact that even though Plaintiff had her cane available to her, Plaintiff elected to use the shopping cart to keep her balance. STK Decl. ¶6, Ex. 5, pg. 50, ln. 21-22. There is no defect to the cart at issue, and Defendant could not have known that Plaintiff would choose to abdicate her cane in favor of a shopping cart. Therefore, Defendant could not remedy this condition before it occurred, so Defendant had zero notice as required to prove foreseeability under the limited *Pimental* exception.

Further, as explained above, there are zero prior incidents substantially similar enough to be admissible to prove foreseeability. If this Court determines that the above incidents are inadmissible as they are not substantially similar, this Court must also determine that there is zero evidence of foreseeability as required under the limited *Pimental* exception.

Finally, it must be noted that the fact that Plaintiff bypassed the check stand with an empty cart is a highly unusual occurrence that cannot be reasonably foreseeable. Defendant provides patrons with a grocery cart to use when they expect to purchase multiple items they cannot carry. Completing their purchase necessitates that the patron travels with the cart through the check stand, thus disabling the anti-theft wheel lock system. Plaintiff was shopping for a singular small item, a magnesium supplement. *See* Pltfs 1st Am. Compl. ¶ 7. She testified that she did not intend to put merchandise in her cart, and her sole intention was to use it as a balance aid. She had her husband available to hold the supplement. There is zero reason for the store to anticipate that someone would grab a cart to use in lieu of her cane, which she also had with her, and would grab the cart without ever intending to put merchandise in it, and the fact that the system disables when the cart

passes through the checkout is evidence only of appropriate precautions for a well-maintained business.

**MOTION 4**

**(No Additional Reports, Media, or Other Evidence Offered to Inflame the Jury)**

Defendant requests an order excluding any evidence, testimony, questioning, argument, exhibit, or reference concerning media reports or other similar materials about shopping carts with the wheel lock system offered to demonstrate that Defendant prioritized profit over safety, including any reports about how effective or ineffective the wheel lock system is at stopping theft of merchandise and/or theft of the carts, themselves, and any other evidence offered primarily to inflame the jury rather than prove a fact of consequence. Such arguments would invite the jury to decide the case on an improper emotional basis rather than on admissible evidence about the incident, the condition of the premises, and the issues properly before the jury.

The jury does not need financial analysis about an anti-theft device to decide the facts of the alleged incident, and pursuant to FRE 401 and 402, it must be excluded as it is irrelevant as to any consequential fact that must be proven. Any testimony about the effectiveness of the device would not allow the jury to learn useful fact about the incident, and Plaintiff is only attempting to introduce such evidence to suggest that Defendant is blameworthy because it keeps metrics about theft, something any retailer does.

Defendant asserts that this evidence is not relevant and is inadmissible, but even if Plaintiff could show that it was minimally probative, which they cannot, the evidence still must be excluded. The Court may exclude relevant evidence when the danger of unfair prejudice, confusion, or misleading the jury substantially outweighs its probative value. FRE 403. Such inflammatory material offered only to demonstrate Defendant's alleged corporate greed is precisely the type of unfair prejudice Rule 403 is designed to prevent, as unfair prejudice includes an undue tendency to suggest decision on an improper emotional basis.

**MOTION 5**

**(Exclude Any Reference that Security Guard is an Employee)**

Defendant moves for an order excluding any testimony, evidence, argument, question, or suggestion that the security guard that allegedly unlocked Plaintiff's cart was an employee of Defendant or of the premises owner/operator. The guard was not employed by Defendant or the premises owner/operator. It is undisputed that the guard was employed by Off Duty Services. STK Decl. ¶ 7, Ex. 6.

Allowing Plaintiff to refer to the guard as Defendant's "employee," "staff," "personnel," or similar term would invite the jury to decide disputed issues on a false premise. The Court should require the parties and witnesses to use neutral, accurate terminology, stating that it is a security guard employed by Off Duty Services.

Evidence is relevant only if it has a tendency to make a fact more or less probable and that fact is of consequence in determining the action. FRE 401. Irrelevant evidence is not admissible. FRE 402. Relevant evidence may be excluded if its probative value is substantially outweighed by dangers including unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needless cumulation.

Calling the guard Defendant's "employee" is factually incorrect, and would create a substantial risk that the jury will attribute conduct, knowledge, or authority to Defendant based on an employment relationship that did not exist. That risk is not cured by allowing the parties to litigate the guard's employment status repeatedly in front of the jury. The cleaner course is to exclude the inaccurate characterization and require neutral terminology.

**MOTION 6**

**(Golden Rule Arguments)**

Defendants move for an order preventing statements suggesting the jury punish Defendants or send Defendants a message. Under FRE 403, Plaintiff should not be allowed to make any statement, question, reference, comment or argument to the jury suggesting that the jury should attempt to "send defendant a message," or to "take action to protect the public safety," or otherwise use language calculated to have the jury assess the damages based upon an emotional response and not upon the evidence and court's charge. *See e.g. Westbrook v.General Tire and Rubber Co.*, 754 F.2d 1233, 1238-38 (5th Cir 1985) ("Our condemnation of a 'community conscience' argument is

not limited to the use of those specific words; it extends to all impassioned and preputial pleas intended to evoke a sense of community loyalty, duty and expectation. Such appeals serve no proper purpose and carry the potential of substantial injustice when invoked against outsiders.").

Further, Defendants request the exclusion of any attempt that improperly seeks to appeal to jurors' subjective concerns about their own safety and the safety of the community at large rather than their impartial judgments based on the evidence. "The biblical 'golden rule' states a standard of conduct for individuals: do unto others as you would have them do unto you." *Adkins v. Aluminum Co. of America,* 110 Wn.2d 128, 139, 750 P.2d 1257, clarified, 756 P.2d 142 (1988); see also *A.C. ex rel. Cooper v. Bellingham Sch. Dist*., 125 Wn. App. 511, 523, 105 P.3d 400 (2004). Reference by Plaintiff's counsel to the "golden rule" or allusions to the rule, such as urging jurors to "place themselves in the positions of one of the parties to the litigation, or to grant a party the recovery they would wish themselves, if they were in the same position" is improper "because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Adkins*, 110 Wn.2d at 139 (internal citations omitted). Further, argument in a civil case is improper when it asks jurors to place themselves in the position of a litigant and to decide the case based on what they would want under the circumstances. *Adkins,* 110 Wn.2d at 139-140. By asking jurors to find liability and award damages based on their feelings about personal or community safety, Plaintiff's counsel is telling jurors to put themselves in Plaintiff's position. This improper tactic should be prohibited at the outset of trial.

**MOTION 7**

**(Exclude Undisclosed Witnesses or Testimony)**

Defendants move the court for an order excluding witnesses not disclosed to Defendants. All parties have made several discovery requests explicitly asking for the identity of all lay witnesses Plaintiff will use to support their case. No party should benefit from discovery violations.

**MOTION 8**

**(Human Factors Expert Levi Dixon's Testimony Should be Excluded)**

Defendant respectfully requests that this Court exclude the testimony of Plaintiffs' human factors expert, Levi Dixon, since his opinions and conclusions lack foundation and/or are not

based on reliable methodologies, and thus, do not satisfy the requirements of the Federal Rule of Evidence 702 and the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993). Defendant further requests that this Court exclude the testimony of Mr. Dixon because, as the Court stated in their August 8, 2026 oral ruling denying co -Defendant Gatekeeper's Motion for Summary Judgment, "This is the type of case that probably could be decided without any expert testimony because the product is very easy to understand. The setting in which the product is used is something that virtually every juror will have encountered and also understand." While the ruling pertained to the products liability case, the reasoning applies across both the negligence claims and product liability claims made by Plaintiff.

Plaintiff has disclosed Levi Dixon, M.S., CSP, CHFP, CXLT, ("Dixon") as an expert witness in this matter. Dixon states that he holds certifications as a Certified Safety Professional, Certified Human Factors Professional, and Certified XL Tribometrist. STK Decl. ¶ 9, Ex.8, pg. 1. He reports that he has degrees in Technology (Manufacturing option) and Human Factors & Ergonomics, and states that his work focuses on safety, human factors engineering, and risk management. *Id.*

Mr. Dixon offers the following conclusions, which he asserts are reasonably certain:

1. Prior to Ms. LaRocque's incident, the Defendants knew and/or should have known that the shopping cartwheels were at risk of locking up and/or unexpectedly stopping, even if someone was not "shoplifting."

2. The cartwheels unexpectedly locking and/or stopping the forward motion of the shopping cart poses a risk of harm to pedestrians due to putting them at risk of striking/contacting the shopping cart and/or a loss of balance.

3. The overall warning system that was utilized to attempt to alert pedestrians of the risk of the shopping cartwheels locking and/or the shopping cart unexpectedly stopping was unreliable and inconsistent with basic principles for warnings.

4. Despite relying on warnings placards placed on the shopping carts, the shopping cart that Ms. LaRocque was using at the time of this incident was devoid of the warning placard.

5. From a Safety and Human Factors Engineering perspective, Ms. LaRocque's overall behavior was predictable.

*Id.* at pg. 14-15.

Dixon's report cannot be admitted because the conclusions are drawn from general information that is inapplicable to the subject-incident, and is unhelpful to the trier of fact. The following is a non-exhaustive list of the issues with Dixon's Opinion:

- Dixon performed a site inspection nearly 3 years after the subject-accident. *Id.* at pg. 6.
- Mr. Dixon concedes he does not know the specific cart Plaintiff used. STK Decl. ¶ 10, Ex. 9. Pg. 29, ln. 20-23.
- He concedes he used a general shopping distance for calculating shopper reaction times, and states it is solely for illustrative purposes and not specific to Plaintiff. *Id.* at pg. 30-31 ln. 17-3.
- He did not specifically measure Plaintiff's arms to determine how far away she was standing form the cart. *Id.* at pg. 31, ln 24-25.
- He concedes that would affect the amount of reaction time Plaintiff would have had to stop before potentially striking her knee. *Id.* at pg. 32, ln. 9-12.
- He concedes that a walking speed of 4 to 5 feet per second is based off a fairly typical average walking speed for adults, but it is not based on any measurement of Plaintiff's walking speed. *Id.* at pg. 32, ln. 16-25.
- He reports he did not see that Plaintiff and her husband, the sole witness to this accident, testified that they were walking slowly, but then states shortly after that "…they described walking slowly, which would indicate potentially slower than four feet per second. *Id.* at pg. 33, ln. 7-15; pg. 34 ln 20-23.
- He concedes that although he knew that there were many factors that could affect Plaintiff's speed, and that Plaintiff was likely walking slower, he just used round numbers for an average person in his calculations. *Id.* at pg. 34, ln. 10-13.
- He concedes that he did not consult any data or surveys about whether or it is predictable that a customer would use a cart for stability or balance versus carrying of store goods. *Id.*

at pg. 85, ln 5-21. He concedes he did not conduct any analysis or data regarding injuries to do with shopping carts with anit-theft systems. *Id.* at pg. 91-92 ln. 22-3.

- He concedes the studies he references do not have the level of detail to allow him to discern whether or not the shopping cart incidents he cited were the same style as the cart Plaintiff was using, let alone whether or not they involved carts with a wheel lock system. *Id.* at pg. 95-96, ln. 17-14.
- He concedes that he did not perform any sort of kinematics analysis to determine how her knee could have made contact with the shopping cart. *Id.* at pg. 100 ln. 19-23.
- He concedes he has never seen or interviewed Ms. Larocque. *Id.* at pg. 113-114, ln. 19-3.

Further, his report is silent as to any measurements of the cart utilized by Plaintiff, or any measurements or cart geometry at all, which would provide information between distance between the user's knees and the rear of the cart basket during normal use. His report also fails to consider Plaintiff's specific anthropometry, which would allow information about the vertical relationship between Plaintiff's knee and the rear or lower portion of the shopping cart basket relative to her height. He did not engage in any pedestrian gait analysis, let alone analysis of Ms. Larocque's gait, specifically.

Critically, he did not engage in any testing to determine how abrupt the cart stopped if the wheel lock system activated. For example, he could have engaged in surrogate testing with accelerometers mounted to carts to document cart motion during a wheel-lock event with a cart being pushed at multiple speeds to determine the abruptness of the wheel lock system. At the very least, he could have engaged a "push-out" activation during his site inspection to see the mechanism function. In other words, his opinion is based on generalizations about shopping carts, themselves, and the lack of specificity makes the opinion unhelpful to the trier of fact, and must be excluded under FRE 702 for lack of foundation and reliable methodology. FRE 702 permits a person with "specialized knowledge" to testify as an expert if his knowledge will "assist the trier of fact to understand the evidence or to determine a fact is issue." *See e.g., Stilwell v. Smith & Nephew, Inc.*, 482 F. 3d 1187, 1191 (9th Cir. 2007).

The rule states: A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FRE 702. FRE 403 permits the court to exclude evidence, including an expert's opinion, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence. Fed. R. Evid. 403. Although expert testimony is liberally admissible under the Federal Rules of Evidence, district courts must be vigilant in demanding that the testimony meet the prerequisites under Fed. R. Evid. 702; *Daubert*, 509 U.S. at 588- 89. The proper exercise of that gatekeeping function is critically important "to ensure the reliability and relevancy of expert testimony." *Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1005 (9th Cir. 2001) (*citing Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 158,119 S. Ct. 1167, 1179, 143 L. Ed. 2d 238 (1999)).

This gatekeeping role is critically important for the court as expert witnesses come "before the jury cloaked with the mantle of an expert." *Jinro Am. Inc., supra*, 266 F.3d at 1004. This mantle allows a witness to "testify based on hearsay information, and to couch his observations as generalized 'opinions' rather than as firsthand knowledge." *Id.* Additionally, expert witness testimony is "likely to carry special weight with the jury." *Id.* "For these reasons, care must be taken to assure that a proffered witness truly qualifies as an expert, and that such testimony meets the requirements of Rule 702." *Id.* "The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

When evaluating the reliability of an expert's testimony, the Court must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Daubert I*, 509 U.S. at 592. It is proper for the Court to consider each expert's knowledge, skill, and experience as they are applied to the expert's conclusions *See,Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015–16 (9th Cir. 2004). In addition, "any step that renders [the expert's] analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879, 890 (D.C. Cal. 2004).

Further, the Court **"need not admit an expert opinion that is connected to the underlying data "only by the *ipse dixit* of the expert.'"** *Henricksen v. ConocoPhillips Co.*, 605 F.Supp.2d 1142, 1153 (E.D. Wash. 2009), *quoting, Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "The trial court's gate-keeping function requires more than simply taking the expert's word for it." *Henricksen*, 605 F.Supp.2d at 1154, *quoting, Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir.1995) ("Daubert II "). "[T]he expert's bald assurance of validity is not enough. Rather, the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology." *Daubert II*, 43 F.3d at 1316. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 Advisory Committee's Note.

Finally, as the proponent of these experts, plaintiff "has the burden of proving admissibility" which "must be established by a preponderance of the evidence." *Henricksen*, 605 F.Supp.2d at 1154. "The focus [of the inquiry] ... must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

a. <u>Dixon's Opinions About the Wheel Lock System Will Not Assist the Trier of Fact Because they Lack Specialized Knowledge</u>.

Dixon's opinion about whether or not Defendants knew or should have known that the shopping cartwheels were at risk of locking up or unexpectedly stopping, even when someone

was not shoplifting, that the wheels locking or stopping the forward motion of the cart puts pedestrians at risk of striking the cart or losing balance, and that Plaintiff's overall behavior was predictable must be stricken.

Dixon did not identify, inspect, or test the subject shopping cart or wheel lock system. He did not measure the shopping cart or engage in any analysis regarding Plaintiff's specific posture, walking speed, height, weight, distance from the cart, gait patterns, or any other quantifiable study of the condition at issue.

He does not provide any literature or basis to support the type of "expected" human behavior in his report, and concludes, without facts, data, or analysis, that Plaintiff's use of the shopping cart as a mobility device is predictable based solely on his personal experiences of shopping as well as his review of the evidence in this case. STK Decl. ¶ 10, Ex. 9, Pg. 84, ln. 19-21. This conclusion is the quintessential *ipse dixit* expert conclusion.

Dixon's generalized observations about shopping cart injuries coupled with a staggeringly misleading analogy that being struck by a shopping cart is akin to Plaintiff running into a cart after it allegedly abruptly stopped is a sweeping attempt to transform an individual and highly factual specific incident into strict liability. His failure to engage in any quantitative analysis or testing, and failure to, at minimum, actually engage the wheel lock mechanism during his site visit to determine how abrupt the stop actually was, renders his opinion devoid of useful knowledge and rife with misleading and confusing information.

Mr. Dixon offers no specialized knowledge relevant to the facts of this case. FRE 702(a). In the absence of any testing, the literature he relies upon is both misleading and inapplicable to the circumstances at issue. Having highlighted these flaws which render his report inadmissible under FRE 702 and FRE 403, his opinions reduce to nothing more than general observations that patrons may use a cart, which being struck by something might cause injury, and that it may, generally, affect balance. For these reasons, the Court should exclude Mr. Dixon's report and testimony.

b. <u>Dixon's Opinions Lack Sufficient Facts or Data, and His Methods are Unreliable.</u>

Dixon did not engage the wheel lock system, did not engage in any analysis of Plaintiff's anatomy, any measurement or analysis of the shopping cart, or any analysis of Plaintiff's gait to explain how Plaintiff's knee could possibly come into contact with the shopping cart. He further fails to quantify the speed of the deceleration of the shopping cart upon activation of the wheel lock system, engage in any friction analysis between the wheel and the floor, gather any information of the weight of the empty cart, or even interview Plaintiff to better understand the mechanics of her alleged incident. He simply failed to engage in any other exemplar to support his conclusory opinions that Defendants knew or should have known that the shopping cartwheels were at risk of locking up or unexpectedly stopping, even when someone was not shoplifting, that the wheels locking or stopping the forward motion of the cart puts pedestrians at risk of striking the cart or losing balance, and that Plaintiff's overall behavior was predictable. As such, his opinions lack foundation. FRE 702(b).

Courts need not admit an expert opinion connected to underlying data simply because of Dixon's assertions or word. In this case, there is no scientific validation of Dixon's conclusions, which rest on a clear leap in logic. There is no demonstrated nexus between Dixon's opinion, Defendant's conduct, and Plaintiff's alleged injury and his interpretation is not supported by testing, measurement, or other scientific analysis. As *Daubert II* makes clear, an expert's "bald assurance of validity is not enough"; the proponent must demonstrate that the expert's findings are grounded in sound science and validated methodology. *Id*., 43 F.3d at 1316.

In essence, Dixon has merely inferred how the wheel lock system puts pedestrians at risk. These are classic conclusory assertions unsupported by testing or validated modeling. This is it is advocacy for a plaintiff-favorable outcome disguised as expert testimony.

Dixon's claims that his opinions are based on his experience are equally deficient. When an expert relies primarily on experience, Rule 702 requires the expert to explain how that experience leads to the conclusion reached, why it provides a sufficient basis for the opinion, and how it is reliably applied to the case-specific facts. *See* Fed. R. Evid. 702 advisory committee's note. Dixon does none of this. He neither articulates a replicable analytical process nor

demonstrates how his personal experiences shopping bridge the gap between the facts at bar and a definitive causation opinion. For these reasons, his opinions fails under FRE 702.

c. Any Marginal Probative Value of Dixon's Opinions are Substantially Outweighed by Risk of Confusion and Misleading the Jury.

If the Court finds that Dixon's opinions satisfy FRE 702, the Court should still exclude his report and testimony because presenting generalized literature without any testing, measurements, analysis of the cart, analysis of Plaintiff, or even mere confirmation of the type of shopping cart Plaintiff used at the time of the subject-incident invites the jury to treat unverified generalities as case-specific proof.

This is further supported by the Court's oral ruling on co-Defendant's Motion for Summary Judgment. The Court reasoned that the wheel lock system is likely simple enough for a jury to understand without expert testimony, and involves something almost every juror has come into contact with and understands. STK Decl. ¶ 8, Ex. 7, pg. 78, ln. 9-11. As such, there is no need for expert testimony, making even reliable expert testimony minimally probative. Here, the testimony is undoubtedly unreliable and confusing, and exponentially less probative. The risk of prejudice to Defendant, however, is sky-high, because Dixon's testimony as an expert will likely carry special weight with the jury. It must also be excluded under FRE 403.

**MOTION 9**

**(Prohibit Cumulative Testimony by Plaintiff's Witnesses)**

FRE 403 provides that relevant evidence may be excluded if it is "needlessly presenting cumulative evidence." Here, Plaintiff has listed countless potential witnesses to testify about how this injury has affected Plaintiff, or witnesses who experienced allegedly similar incidents at other Fred Meyer locations across the state of Washington. To the extent that their testimony will be cumulative, it should be excluded. STK Decl. ¶ 4, Ex. 3. This Court should prohibit cumulative additional testimony on the same points, as it would add little probative value while consuming time better reserved for disputed issues.

Federal Rule of Evidence 403 provides that the Court may exclude relevant evidence if its probative value is substantially outweighed by a danger including unfair prejudice, confusing the

issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Here, cumulative evidence replicates other admitted evidence, and when multiple witnesses are offered to testify about the same subject based on substantially similar observations, the evidence becomes cumulative after the jury has heard from a reasonable number of witnesses. To the extent that the evidence fails to offer independent or materially different testimony, it should be excluded as the probative value or additional witnesses diminishes sharply, while the potential prejudice to Defendant grows. The Jury will hear the same or similar facts multiple times, consuming valuable court time, causing jury fatigue, and communicating a false sense of importance to a jury through sheer repetition. As such, this Court should limit Plaintiff's witness testimony.

**MOTION 10**

**(Prohibit Introduction of Tender Letters)**

Defendant moves this Court for an Order excluding any evidence, testimony, questioning, or argument concerning tender letters pertaining to this subject-incident, or tender letters between Defendant, co-Defendant Gatekeeper, or any other tender letter pertaining to named parties.

Defendant has tendered this claim to Defendant Gatekeeper, alleging that they must indemnify, defend, and hold Defendant harmless. Both Defendant and co-Defendant remain in trial, so there is no purpose of offering this evidence to demonstrate notice, knowledge, witness bias, or explanation of a party's absence from litigation. As such, the only purpose it would be offered would be to show that Defendant is liable.

This is unfairly prejudicial to Defendant, and any minimal probative value is outweighed significantly by the risk of such prejudice. Indeed, a jury will be confused by the tender letters, and may believe that Defendant is admitting liability by invoking co-Defendant to defend, indemnify, and hold Defendant harmless. They may improperly assume that Defendant would only tender defense of legitimate claims, or make other unfair and prejudicial assumptions. The evidence of tender letters does not serve to establish any material or disputed fact, so their probative value is not outweighed by their prejudicial effect, and must be excluded under FRE

403.

**MOTION 11**

**(Exclude Evidence or Discussion of Counsel's Location)**

Defendants move the Court for an Order prohibiting Plaintiff from arguing or making mention to the jury that defense counsel is from Oregon. Chock Barhoum LLP, the law firm that represents Defendants, practices law in Oregon, Washington, Idaho, and Arizona, with their headquarters in Portland, Oregon. As the Court is aware, it is not unusual for defense firms to have a presence in multiple states. The location of the defense counsel's headquarters or the residential addresses of counsel are irrelevant under FRE 401. This information does not make any fact of this case more probable or less probable.

Plaintiff's use of this information would only cause unnecessary prejudice in the mind of the jurors. Arguments or statements surrounding the headquarters of Chock Barhoum or the primary residence of the attorneys are prejudicial with no probative value. FRE 403. Pleadings submitted by Defendants do have Chock Barhoum's address on their face. Defendants do not object to the admission of documents where the address is displayed, but any explicit mention by counsel to create prejudice should not be allowed.

**MOTION 12**

**(Sequester Lay Witnesses)**

The parties in this case include Linda Larocque, The Kroger Co., Fred Meyer, and Gatekeeper. Defendants move the Court for an order excluding lay witnesses, absent the four parties, from attending trial, except during his or her testimony, until final argument. Defendant anticipates that lay witnesses may testify about their experiences with Plaintiff and how the injuries have affected her life. Further, Plaintiff appears inclined to call witnesses who may have been injured by the wheel-lock system at different store locations across Washington. STK Decl. ¶ 4, Ex. 3. Defendant, therefore, seeks sequestration of lay witnesses so that each lay witness testifies based on that witness's own recollection and not based on testimony heard from other witnesses.

FRE 615 provides that, at a party's request, the Court must order witnesses excluded from

the courtroom so they cannot hear other witnesses' testimony. The rule carries a presumption favoring sequestration, and its exemptions are construed narrowly in favor of the party requesting sequestration. *United States v. Farnham*, 791 F.2d 331, 335 (4th Cir. 1986).

This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be reasonably necessary to the presentation of the party's cause. FRE 615. None of the three exceptions are at issue in this matter as it pertains to lay witnesses, so Plaintiff's lay witnesses, including her husband, Stephen Larocque, should be excluded from attending trial, except during his or her testimony, until final argument.

Dated this 31st day of August, 2026.

**CHOCK BARHOUM LLP**

Sarah Tuthill-Kveton

Sarah Tuthill-Kveton, WSBA #51801
Email: sarah@chockbarhoum.com
121 SW Morrison Street, Suite 500
Portland, OR 97204
(503) 223-3000
Attorney for Defendants The Kroger Co. and Fred Meyer Stores, Inc. dba Tacoma-Stevens Fred Meyer

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT TACOMA

LINDA LAROCQUE,

Plaintiff,

V.

THE KROGER CO., a foreign corporation doing business in Washington state; and, FRED MEYER STORES, INC., a foreign corporation doing business in Washington state, a/k/a TACOMA-STEVENS FRED MEYER, GATEKEEPER SYSTEMS, INC., a foreign corporation doing business in Washington state

Defendants.

Civil Case No. 3:25-cv-05380-TMC

**CERTIFICATE OF SERVICE**

---

I hereby certify that on this 31st day of August, 2026, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to all registered individuals.

Additionally, I hereby certify that a true copy of the foregoing **DEFENDANTS FRED MEYER & THE KROGER CO.'S MOTIONS IN LIMINE** was served as stated below on:

Robert C. Wilke
Gordon Thomas Honeywell, LLP
1201 Pacific Avenue, Suite 2100
Tacoma, WA 98402
*Attorneys for Plaintiff*

☐ By hand delivery
☐ By first-class mail*
☐ By facsimile transmission
Fax #: (253) 620-6565
☐
☒ By e-mail:
rwilke@gth-law.com

ileifer@gth-law.com
sishii-huffer@gth-law.com
sweger@gth-law.com
☒ By court eFiling Application

Francis S. Floyd
Skyler P. Urban
Floyd Pflueger, P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121
*Attorneys for Defendant Gatekeeper Systems, Inc.*

☐ By hand delivery
☐ By first-class mail*
☐ By facsimile transmission
☐ Fax #:
☒ By e-mail:
ffloyd@nwtrialattorneys.com
surban@nwtrialattorneys.com
ecampbell@nwtrialattorneys.com
skatinas@nwtrialattorneys.com
☒ By court eFiling Application

*With first-class postage prepaid and deposited in Portland, Oregon.

Dated this 31st day of August, 2026.

**CHOCK BARHOUM LLP**

Sarah Tuthill-Kveton, WSBA #51801
Email: sarah@chockbarhoum.com
121 SW Morrison Street, Suite 500, Portland, OR
(503) 223-3000
Attorneys for Defendants The Kroger Co. and Fred Meyer Stores, Inc. dba Tacoma-Stevens Fred Meyer