UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LINDA LAROCQUE,<br>Plaintiff,<br>v.<br>THE KROGER CO., a foreign corporation doing business in Washington state; and FRED MEYER STORES, INC., a foreign corporation doing business in Washington state, a/k/a TACOMA-STEVENS FRED MEYER; GATEKEEPER SYSTEMS, INC., a foreign corporation doing business in Washington state,<br>Defendants. | NO. 3:25-cv-05380-TMC<br><br>DEFENDANT GATEKEEPER SYSTEMS, INC.'S MOTIONS *IN LIMINE*<br><br>Noting Date: Friday, 10/02/2026<br><br>*Oral Argument Requested* |

Gatekeeper Systems, Inc. ("Gatekeeper") moves the Court in limine to exclude the following matters that are improper, irrelevant, and unfairly prejudicial. "A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area ... so that admissibility is settled before attempted use of the evidence before the jury." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Motions in limine are part of a district court's "inherent authority to manage the course of trials[,]" and the Court has broad discretion as to evidentiary issues, including motions in limine. *Luce v. United States*, 469 U.S. 38, 41 (1984).



FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

**1. Reference to the SmartExit System**

Gatekeeper moves to exclude all evidence, testimony, argument, or reference to the "SmartExit" system. This Court ruled that Plaintiff cannot proceed under the risk-utility test on her design defect claim under RCW 7.72.030. Because Plaintiff is precluded from pursuing a risk-utility theory, evidence of an alternative design, specifically SmartExit, is irrelevant to the remaining issues for trial.

Introducing evidence or argument regarding a system that was not installed at the subject store, was not commercially available at the time of manufacture or the subject incident and is not at issue would serve only to confuse the jury, mislead the trier of fact, and unfairly prejudice Gatekeeper under Rules 401, 402, and 403.

**2. Broad and Vague References to the Purported "Benefits" of SmartExit or Optional Features when Compared to PurCheck.**

To the extent any reference to SmartExit is allowed, Plaintiff and her experts should be precluded from introducing broad, speculative, or generalized assertions regarding the purported safety "benefits" of the SmartExit system. SmartExit was not commercially available to the subject Fred Meyer store at the time of installation and remained in limited proof-of-concept testing. Dkt. 127-1, at 55:19-20; Dkt. 115-1, at 35:3 – 24.

Plaintiff and her expert, Mr. Dixon, have performed no analysis, study or testing of the SmartExit system when compared to PurCheck. *See* Dkt. 115-3; Dkt. 120; Dkt. 120-2. Allowing Plaintiff to make broad assertions regarding the alleged or hypothetical benefits of an uninstalled technology, that they have not compared to PurCheck, would present an inaccurate and misleading portrayal of the technology to the jury.



FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

Furthermore, as laid out in Gatekeeper's Motion for Summary Judgment pleadings, a manufacturer cannot be held liable for failing to equip a product with an optional or developmental feature that a commercial customer did not purchase. Dkt. 126, 11. When "a customer exercises an option to purchase a product without a safety feature, it is axiomatic that the manufacturer should not be held liable for damages which that safety feature may have prevented." *Austin v. Clark Equip. Co.*, 48 F.3d 833, 837 (4th Cir. 1995). "It makes no practical sense to impose liability on" the manufacturer "for failing to equip" a product "with an optional [safety] device that [the purchaser] knowingly rejected." *Scallan v. Duriron Co., Inc.*, 11 F.3d 1249, 1254 (5th Cir. 1994). Numerous authorities are in accord. *See, e.g., Babin v. Yale Mats. Handling Corp.*, No. 94-1537, 1995 WL 115857, at *3 (4th Cir. 1995); *Curtis*, 649 F.2d at 811; *Anderson v. P.A. Radocy & Sons, Inc.*, 865 F. Supp. 522, 531 (N.D. Ind. 1994); *Butler v. Navistar Int'l Transp. Corp.*, 809 F. Supp. 1202, 1209 (W.D. Va. 1991); *Brewer v. PACCAR, Inc.*, 124 N.E.3d 616, 625 (Ind. 2019); *Loredo v. Solvay Am., Inc.*, 212 P.3d 614, 631 (Wyo. 2009); *Banzhaf*, 28 S.W.3d at 187; *Rotzoll*, 681 N.E.2d at 161; *Morrison v. Kubota Tractor Corp.*, 891 S.W.2d 422, 428 (Mo. App. 1994); *Davis v. Caterpillar Tractor Co.*, 719 P.2d 324, 327 (Colo. App. 1985).

Any argument suggesting Gatekeeper acted improperly by offering PurCheck without SmartExit, or by not mandating that Kroger purchase and install SmartExit, is misleading, highly prejudicial, and inadmissible under Rules 401 and 403.

**3. Argument that Carts Equipped with Gatekeeper Wheels Pose an Inherent or Greater Risk than Standard Carts**

Plaintiff should be precluded from arguing or suggesting that shopping carts equipped with Gatekeeper's PurCheck wheel system pose an inherent, generalized, or greater danger to the



FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

public than standard shopping carts. Plaintiff and her expert have conducted no testing, comparative analysis between the two, or statistical evaluation comparing injury rates between standard shopping carts and carts equipped with PurCheck systems. *See* Dkt. 115-3; Dkt. 120; Dkt. 120-2.

This case involves a low-speed incident where Plaintiff was pushing a cart through an exit. Plaintiff's expert admitted he reviewed no data addressing injury rates of individuals contacting carts during anti-theft activations and considered such data "irrelevant" to his analysis. See Dixon Dep., attached as Dkt. 115-3 at 58:6-21. In the absence of this foundational data, any rhetoric attempting to compare PurCheck-equipped carts as more dangerous or hazardous than standard carts is baseless, speculative, and designed solely to inflame the jury. Such arguments must be excluded under Rules 401, 402, 403, and 702.

**4. Statements or References to Component or Hardware Costs of Gatekeeper Systems**

Plaintiff and her witnesses should be precluded from offering testimony, evidence, or argument regarding the component costs, hardware prices, or manufacturing costs of Gatekeeper's PurCheck (or SmartExit if allowed in) systems. First, Plaintiff's expert agreed that he has not conducted any analysis of costs concerning the system.

Further, presenting isolated hardware or component figures creates a misleading impression that ignores the extensive research, development, engineering, software programming, field testing, and maintenance infrastructure required for commercial loss-prevention systems. Plaintiff has presented no competent economic or accounting analysis quantifying the total cost of designing, implementing, or deploying these systems.



FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

Introducing partial, isolated component costs would confuse the issues and mislead the jury regarding the true economic and technical feasibility of the system. Therefore, statements or references regarding component or hardware costs should be excluded under Rules 401, 402, and 403.

**5. Argument that Gatekeeper Put "Profits Over Customer Safety" or Similar Arguments**

Plaintiff should be precluded from arguing, eliciting testimony, or suggesting that Gatekeeper prioritized corporate profits over consumer or shopper safety. Plaintiff and her expert have performed no financial analysis, profit-margin study, or cost-accounting analysis regarding Gatekeeper's business operations.

Furthermore, Gatekeeper's customers are retail store operators, such as Kroger and Fred Meyer, who contract for loss-prevention systems, rather than individual retail shoppers. Permitting Plaintiff to advance an unsubstantiated "profits over safety" narrative without an evidentiary foundation is inflammatory and intended to bias the jury against a corporate defendant. Such arguments must be excluded under Rules 401 and 403.

**6. Other Lawsuits, Claims, Incidents, including Unrelated Incident Reports and Activation Logs**

The parties should be prohibited from introducing evidence, testimony, or argument regarding other lawsuits, customer claims, prior incidents, or trial outcomes involving Gatekeeper or its anti-theft systems, including the "70 other incidents" referenced in Plaintiff's expert materials.

Under Washington law and federal evidentiary standards, evidence of other incidents is admissible only if the proponent establishes that they occurred under "substantially similar" circumstances.



FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

**A. Other Incident Reports**

Plaintiff should be limited to introducing prior incident reports that are substantially similar to the incident at issue, *i.e.,* an empty cart locking when exiting the store causing injury.

Evidence of alleged similar instances involving design defect or negligence are admissible only if the proponent establishes the other incident shares "**substantial similarity**" with the products and circumstances of the present case. *White v. Ford Motor Co.*, 312 F.3d 998, 1009 (9th Cir. 2002). In assessing similarity, trial courts should consider "the extent of the similarity … and the absence or presence of the same essential conditions." *Breimon v. GMC*, 8 Wn. App. 747, 755, 509 P.2d 398 (1973). Accidents that do not adequately portray substantially the same deceptive or dangerous conditions alleged to have existed must be excluded because they are irrelevant. *See*, *e.g., Myers v. Ford Motor Co.*, No. CV-06-2332PHXGMS, 2009 WL 2913851, at *2 (D. Ariz. Sept. 3, 2009) (excluding evidence of other alleged similar incidents, holding that plaintiff must "establish a foundation showing sufficient similarity to the facts and issues" in the present case).

It is anticipated that Plaintiff will attempt to introduce approximately 70 other incident reports that reference a cart locking in one manner or another. Of the other incident reports in this case, five reports appear to explicitly concern an empty cart locking when exiting the store causing injury. **Exhibit A,** to the Declaration of Skyler P. Urban in Support of Motions in Limine, at (DEF FRED MEYER_000221 – 000223; 000293 – 000298; 000431 – 000433; 000247 – 000253).

A majority of the incident reports concern factual situations that are not remotely similar to the current allegations. Many of the incidents concern the cart locking when the customer has purchased goods in the cart. This situation arises when the PurCheck system malfunctions.



FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

Plaintiff does not allege that the PurCheck system malfunctioned. Rather, Plaintiff acknowledges that the system worked as intended (locking when not passing through a checkout lane).

- Amy Macbeth (April 24, 2024): Security had scanned her items prior to the cart locking at the grocery exit doors. *Id.,* **Ex. A,** (DEF FRED MEYER_000133–000137)
- Floripina Akana (April 6, 2024): Exiting with groceries after checking out at the grocery entrance/exit. *Id.,* **Ex. A,** (DEF FRED MEYER_000125–000132)
- Anne Le Cocq (April 27, 2024): Stated she was exiting the store after checking out from a cashier. *Id.,* **Ex. A,** (DEF FRED MEYER_000282–000284)
- Travis Bevan (May 9, 2024): Stated he was pushing a small grocery cart out after shopping; the witness states groceries spilled out of the cart after stopping *Id.,* **Ex. A,** (DEF FRED MEYER_000270–000279)
- Lori Hardman (June 9, 2024): Checked out at a register and was trying to leave with her items when the cart locked. *Id.,* **Ex. A,** (DEF FRED MEYER_000285–000292)
- Angelina Corona (September 5, 2024): Checked out with a cashier before pushing the cart toward the exit door. *Id.,* **Ex. A,** (DEF FRED MEYER_000258–000261)
- Cindy Grewell (October 15, 2024): Taking her cart to her vehicle in the parking lot after shopping. *Id.,* **Ex. A,** (DEF FRED MEYER_000233–000240)
- Maria Bivian (October 15, 2024): Pushing a cart of groceries out after shopping. *Id.,* **Ex. A,** (DEF FRED MEYER_000138–000142)
- Maximo Cortez (November 10, 2024): Family was leaving the store with groceries when the cart locked up in the lobby. *Id.,* **Ex. A,** (DEF FRED MEYER_000228–000232)
- Allison Cleman (November 28, 2024): Purchased grocery items and drinks prior to exiting through the north door. *Id.,* **Ex. A,** (DEF FRED MEYER_000143–000148)
- Rick Conrad (March 29, 2024): Purchased groceries and items from the Liquor Department before exiting through Lobby A. *Id.,* **Ex. A,** (DEF FRED MEYER_000342–000347)
- Kim Paulson (July 20, 2025): Exiting the store after going through the checkstand. *Id.,* **Ex. A,** (DEF FRED MEYER_000157–000160)
- Amy Craig (October 6, 2025): Checked out through checkstand 3 or 4 and was exiting with paid food. *Id.,* **Ex. A,** (DEF FRED MEYER_000185–000189)
- Brenda Alston (October 25, 2025): Checked out at register 201 before heading out the apparel exit. *Id.,* **Ex. A,** (DEF FRED MEYER_000177–000184)
- Jake Stapley (August 18, 2021): Pushing a cart loaded with groceries up a parking lot ramp to his truck. *Id.,* **Ex. A,** (DEF FRED MEYER_000457–000462)
- Norman P. Smith (August 2, 2022): Pushing a heavily loaded cart with groceries and canned goods. *Id.,* **Ex. A,** (DEF FRED MEYER_000419–000422)



FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

- Simon Zivians (December 3, 2022): Had just paid at checkout with his family before moving to the exit. *Id.,* **Ex. A,** (DEF FRED MEYER_000442–000447)
- Kay Matteson (April 28, 2023): Was exiting the store with purchased items when the cart locked. *Id.,* **Ex. A,** (DEF FRED MEYER_000477–000479)
- Stephanie Tisby (February 6, 2023): Had a receipt and purchased items when exiting at Lobby A. *Id.,* **Ex. A,** (DEF FRED MEYER_000468–000472)
- Erika Trifiro (February 24, 2020): Had checked out at self-checkout register #4 before passing through the produce exit. *Id.,* **Ex. A,** (DEF FRED MEYER_000358–000366)
- Richard Willerton (March 14, 2022): Purchased items through self-checkout before walking out the Home exit. *Id.,* **Ex. A,** (DEF FRED MEYER_000408–000415)
- Alicia Cottrell (July 26, 2020): Pushing a cart of groceries out to the loading zone/curb. *Id.,* **Ex. A,** (DEF FRED MEYER_000377–000384)

In addition, many of the incidents concern carts locking while shopping *in* the store. This is likewise a different situation and concerns a malfunction of the product, which is not what Plaintiff is alleging.

- Tina Martin (January 10, 2024): Incident occurred while entering and walking past the deli and produce departments. *Id.,* **Ex. A,** (DEF FRED MEYER_000326–000329)
- Rachael Redmond (July 5, 2025): Incident occurred while walking between aisles 19 and 25 inside the grocery department. *Id.,* **Ex. A,** (DEF FRED MEYER_000193–000200)
- Carmen Hoffman (November 26, 2024): Incident occurred while selecting and switching between carts inside the entrance area. *Id.,* **Ex. A,** (DEF FRED MEYER_000149–000156)
- Peter Ava Oceupo (August 29, 2025): Incident occurred at the self-checkout area. *Id.,* **Ex. A,** (DEF FRED MEYER_000190–000192)

Some incidents occurred before the shoppers entered the store with a cart:

- Jacob Jorgensen (January 9, 2026): Occurred outside when grabbing an empty cart from the exterior sidewalk cart bay upon arrival. *Id.,* **Ex. A,** (DEF FRED MEYER_000241–000246)
- David Firth (April 5, 2025): Occurred in the parking lot upon arrival, then again in the parking lot after shopping. *Id.,* **Ex. A,** (DEF FRED MEYER_000215–000217)
- Tamara Simon (August 10, 2021): Occurred after entering the lobby, when turning back to get a phone from her car. *Id.,* **Ex. A,** (DEF FRED MEYER_000367–000372)



FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

- Alyce Larson (February 3, 2022): Occurred in the parking lot at the perimeter boundary after unloading grocery bags. *Id.,* **Ex. A,** (DEF FRED MEYER_000402–000407)
- Javier Lopez Clavijo (April 13, 2021): Occurred while grabbing a cart to enter the store after an interaction regarding his bicycle. *Id.,* **Ex. A,** (DEF FRED MEYER_000391–000395)

Plaintiff has established no substantial similarity between this incident and other alleged occurrences. Plaintiff's expert admitted he did not know what specific anti-theft systems, store layouts, cart models, or warning signs were present in those other alleged incidents, nor did he calculate user exposure or injury rates. *See* Dkt. 115-3; Dkt. 120; Dkt. 120-2.

Even if the Court were to find some minimal similarity, the probative value of the prior incidents is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Admission of dissimilar prior incidents would invite the jury to infer that a defect caused the present injury without requiring Plaintiff to prove those essential elements with evidence tied to the actual circumstances of this case.

Such an inference would be unfairly prejudicial and would consume substantial trial time litigating the distinct circumstances of each prior incident, issues that have little bearing on the present case. The Court has broad discretion to exclude evidence under Rule 403 even when some substantial similarity is established, and that discretion should be exercised here to prevent unfair prejudice and jury confusion. *Johnson v. Ford Motor Co*., 988 F.2d 573, *United States v. Kadir*, 718 F.3d 115. Because Plaintiff cannot demonstrate that the prior incidents are substantially similar to the present incident in time, place, circumstances, mechanism, or alleged defect, the evidence should be excluded.

//

//



FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

**B. Cart Activation Log**

For the same reasons, Plaintiff should not be permitted to offer the cart activation log for the day of the subject incident. While the log reflects 12 alleged empty-cart activations out of 21 total activations that day, it likewise lacks any information concerning substantial similarity to Plaintiff's incident. The log provides zero context regarding the triggers, exact locations, user actions, or operational conditions surrounding each empty cart event. The log also does not address whether these entries involve any customer error or false positives.

Furthermore, any minimal probative value the log might possess is substantially outweighed by the danger of unfair prejudice and jury confusion under Rule 403. Presenting an unexplained log of 21 activations manufactures the appearance of a pervasive, daily hazard without requiring Plaintiff to show that any single logged event occurred under circumstances substantially similar to the incident at issue. Because the log fails the substantial similarity test, and creates an acute risk of misleading the jury, it must be excluded.

**7. Reptile Theory and Golden Rule Arguments**

Any evidence or argument related to the "reptile theory" and "golden rule argument" should be excluded. *Mooney v. Roller Bearing Company of America, Inc.*, 601 F.Supp.3d 881, 889 (W.D. Wash. 2022). The "reptile theory" is a litigation strategy used by attorneys to appeal to jurors' "reptilian brains," or the portion of the human brain that triggers survival instincts. See *Allison v. Smoot Enterprises, Inc.*, 2019 WL 5095779, at *3-4 (D. Or. 2019). The idea is to argue that the defendant (here Gatekeeper) manufactures a product (here, an anti-theft shopping cart system) that threatens the community or society at large, and jurors - through their verdict - should protect society against such dangerous products.



FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

Relatedly, golden rule arguments are employed when counsel or witnesses encourage jurors to put themselves in Plaintiff's position and render a verdict jurors would want for themselves if they were in Plaintiff's shoes. See id. Both arguments are improper and any minor probative value is substantially outweighed by the risk of unfair prejudice under Rule 403. This case is about a single, specific incident. The jury's role in this case is not to ensure societal welfare or to protect the community from retail anti-theft devices. For these reasons, the Court should prohibit Reptilian or Golden Rule arguments or suggestions.

**8. Statements or Offers Made During Settlement Negotiations**

Evidence or argument regarding settlement discussions or offers made during settlement negotiations should be excluded. See Rule 408. The Parties have engaged in settlement negotiations, and any evidence or statements regarding the Parties' settlement discussions or offers is inadmissible under Rule 408(a).

**9. Statements or References to Discovery Disputes**

Statements or references to any discovery dispute that creates an inaccurate impression that Gatekeeper did not comply with discovery requirements or spoliated evidence is inaccurate, prejudicial, and should be excluded. In short, any discovery disputes between Plaintiff, Co-Defendants, and Gatekeeper are properly reserved for the Court and not the jury to resolve. See *Kinsel v. BMW of North America LLC*, 2023 WL 11899597, at *7 (granting BMW's motion in limine to exclude evidence of all pre-trial discovery disputes). If such commentary is permitted, the implication may be that Gatekeeper engaged in some form of misconduct, and such implications are unfairly prejudicial to Gatekeeper.

//

//



FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

**10. References to the Size, Wealth, or Counsel of Gatekeeper and Co-Defendants**

Statements or references about: (1) the corporate size, financial condition, or wealth of Gatekeeper (including as compared to Plaintiff or Co-Defendants) should all be excluded under Rules 401 and 403. Any minor relevancy regarding the mention of these topics is substantially outweighed by the danger of unfairly prejudicing Gatekeeper, confusing the issues, and misleading the jury under Rule 403.

**11. Evidence or Statements Regarding Gatekeeper's Insurance Coverage or Indemnity**

Any evidence or statements regarding Gatekeeper's insurance coverage or third-party indemnity arrangements should be excluded under Rules 401, 403, and 411. *See also Larez v. Holcomb*, 16 F.3d 1513, 1518-19 (9th Cir. 1994) ("It has long been the rule in our courts that evidence of insurance or other indemnification is not admissible on the issue of damages, and should any such information reach the ears of jurors, the court should issue a curative instruction.").

**12. Departure or Absence of Parties or Representatives From Trial**

Gatekeeper's Corporate Representative, Ryan Harter, intends to attend trial and will testify in Gatekeeper's defense. However, due to previously scheduled business or travel conflicts, he may need to depart trial for a period of time. If that occurs, no party should be allowed to comment, including in closing argument, regarding Mr. Harter's departure or absence.

**13. Equal Allocation of Trial Time**

Gatekeeper requests this Court equally allocate the trial time between Plaintiff's and Defendants' cases. District courts have broad discretion to impose reasonable time limits on a



FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455

trial. *Gen. Signal Corp. v. MCI Telecomm'ns Corp.,* 66 F.3d 1500, 1508 (9th Cir. 1995). Equal allocation of trial time proactively ensures there will be no unnecessary waste of time during Plaintiff's case-in-chief and avoids incentive for Plaintiff to leave Gatekeeper and Co-Defendants with insufficient time for their defense. Courts generally reject that a plaintiff is entitled to a greater allocation of time merely because the plaintiff has the burden of proof. *See, e.g., Id.,* at 1509; *Trepel v. Roadway Express, Inc.,* 40 Fed. App'x 104, 108 (6th Cir. 2002); *Maloney v. Brassfield,* 251 P.3d 1097, 1103 (Colo. App. 2010). Gatekeeper respectfully requests this Court equally allocate the same amount of trial time for Plaintiff's and Defendants' cases.

**Local Rule Certification**

Pursuant to Local Civil Rule 7(d)(4), Gatekeeper states that the Parties have scheduled a conference and confer regarding agreed to Motions. Gatekeeper will withdraw agreed to Motions following the Parties' conference.

DATED this 31st day of August, 2026.

FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS, P.S.

By: ______________________
Francis S. Floyd, WSBA No. 10642
Skyler P. Urban, WSBA No. 58761
3101 Western Ave, Suite 400
Seattle, WA 98121
206-441-4455
ffloyd@nwtrialattorneys.com
surban@nwtrialattorneys.com
*Attorneys for Defendant Gatekeeper Systems, Inc.*

DECLARATION OF SERVICE

I declare under penalty of perjury and the laws of the State of Washington that on the below date, I delivered a true and correct copy of the foregoing via the method indicated below to the following parties:

| | | |
|---|---|---|
| Robert C. Wilke<br>Ian M. Leifer<br>Gordon Thomas Honeywell, LLP<br>1201 Pacific Avenue, Ste. 2100<br>Tacoma, WA 98401<br>rwilke@gth-law.com<br>ileifer@gth-law.com | *Counsel for Plaintiff* | ☒ Via Email/E-Service<br>☐ Via U.S. Mail |
| John R. Barhoum<br>Sarah Tuthill-Kveton<br>Hanna R. Lukes<br>Samuel ben Behar<br>Chock Barhoum, LLP<br>121 SW Morrison St, Suite 500<br>Portland, OR 97204<br>john.barhoum@chockbarhoum.com<br>sarah@chockbarhoum.com<br>hanna.lukes@chockbarhoum.com<br>sam.behar@chockbarhoum.com | *Counsel for Defendants The Kroger Company and Fred Meyer Stores, Inc.* | ☒ Via Email/E-Service<br>☐ Via U.S. Mail |

DATED this 31st day of August, 2026.

*s/ Sophia E. S. Katinas*
Sophia E. S. Katinas, Legal Assistant



FLOYD | PFLUEGER
KEARNS, NEDDERMAN & GRESS P.S.
3101 Western Avenue, Suite 400
Seattle, WA 98121-3017
206-441-4455